# EXHIBIT 1

# EXHIBIT 1

1   David E. Rosen (State Bar No. 155385)
    *drosen@murphyrosen.com*
2   Nicole Ambrosetti (State Bar No. 295972)
    *nambrosetti@murphyrosen.com*
3   MURPHY ROSEN LLP
    100 Wilshire Boulevard, Suite 1300
4   Santa Monica, California 90401-1142
    Telephone:  (310) 899-3300
5   Facsimile:   (310) 399-7201

6   Attorneys for Plaintiffs Brigham Field and
    Colette Pelissier

7

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF VENTURA, HALL OF JUSTICE**

10

11  BRIGHAM FIELD, COLETTE              Case No.
    PELISSIER,
12
                                        **COMPLAINT FOR:**
13              Plaintiff,
                                        **1.  RELIEF PURSUANT TO CAL.**
14       v.                                 **CIV. CODE SECTION 2924 et**
                                            **seq.**
15
    GENOVA CAPITAL, INC., a California  **2.  DECLARATORY RELIEF**
16  Corporation; CALIFORNIA TD
    SPECIALISTS, a California Corporation; and  **3.  BREACH OF COVENANT OF**
17  DOES 1- 20, INCLUSIVE,                  **GOOD FAITH AND FAIR**
                                            **DEALING**
18              Defendants.

19

20

21

22

23

24

25

26

27

28

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

***PRINTED ON RECYCLED PAPER***

Plaintiffs Brigham Field and Colette Pelissier ("Plaintiffs") hereby allege as follows.

### GENERAL ALLEGATIONS

1.    Plaintiffs Colette Pelissier, Brigham Field are husband and wife, and are individuals residing in Ventura County, California.

2.    Plaintiffs are informed and believe, and based thereon allege, that defendant, Genova Capital Inc. ("Genova"), is a California corporation, is now and at all times mentioned in this complaint, a corporation organized under the laws of the State of California, with its principal place of business at 555 Corporate Drive, Suite 120, Ladera Ranch, California 92694, Orange County, California.  Genova is a lender and the beneficiary of the deed of trust described below which Genova is now using to initiate and complete a foreclosure upon the Plaintiffs' home.

3.    Plaintiffs are informed and believe, and based thereon allege, that defendant, California TD Specialists, is a California corporation, is now and at all times mentioned in this complaint, a corporation organized under the laws of the State of California, with its principal place of business at 8190 and 8180 East Kaiser Blvd., Anaheim Hills, California 92808, Orange County, California.  California TD Specialists is the trustee named in the deed of trust described below.  California TD Specialists is the Trustee that has been appointed by Genova to initiate and complete the foreclosure on the Plaintiffs' home.

4.    The true names, capacities, and fault, whether individual, corporate or otherwise, of the defendants named herein as DOES 1 through 20 are unknown to plaintiffs, who therefore sue such defendants by their fictitious names.  Plaintiffs will seek leave of this court to amend this complaint to insert the true names and capacities of such defendants when their true names, capacities and/or fault become known to plaintiffs.

5.    Plaintiffs are informed and believe, and based thereon allege, that each fictitiously named defendant is responsible in some manner, and therefore liable to

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

PRINTED ON RECYCLED PAPER

1  plaintiffs, for the acts and omissions alleged and/or acted in concert with, was an aider

2  and abettor of, and/or conspired with the other defendants to perform the acts, or

3  omitted to perform the acts, as alleged herein.

4      6.    Plaintiffs are informed and believe, and based thereon allege, that at all

5  times relevant hereto, each of the defendants, in doing or omitting to do acts hereinafter

6  alleged, was the agent, employee, subcontractor, and/or co-conspirator of the remaining

7  defendants and were at all times acting within the course and scope of such agency,

8  employment and/or conspiracy and that such defendant ratified and approved the

9  conduct of each other defendant.

10  ## FACTUAL BACKGROUND

11      7.    This action concerns the efforts of defendant Genova Capital, Inc.

12  ("Genova") to foreclose on Plaintiffs' beach-front home located at 11802 Ellice St.,

13  Malibu (the "Property"), APN: 700-0-260-065.  Attached as Exhibit 1 is a true and

14  correct copy of the Legal Description.  Plaintiffs are residents of the Property.

15  **A.    The Property and the Deeds of Trust.**

16      8.    Plaintiffs purchased the Property as their primary residence in 2013.  In

17  2020, Plaintiffs also began renting a house in Henderson, Nevada.  However, Plaintiffs

18  consider both houses to be their residences, and if not for the Covid-19 pandemic and

19  all of the litigation over the Property, Plaintiffs would be spending a lot more time at

20  the Property.

21      9.    Over the years, there have been various deeds of trust on the Property.

22  (Ex. 1.)  Genova recorded two separate deeds of trust against the Property.  Genova

23  first recorded a deed of trust against the Property on December 1, 2016 ("the 2016

24  DOT").  That deed of trust "secure[s] the full and timely payment of the Indebtedness."

25  (Ex. 2, p. 1.)  "Indebtedness" is defined as "the principal of, interest on, and all other

26  amounts and payments" due under the "Note."  (*Id*. at p. 3, §1.2.)  "Note" is defined as

27  "[t]he Promissory Note payable by Borrower to the order of Lender in the principal

28  amount of ***Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000),***

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

1    *which matures on January 1, 2018*." (*Id*. at p. 6, §1.20, emphasis in original.)

2        10.    Genova recorded another deed of trust against the Property on March 25,

3    2019 ("the 2019 DOT").  But the 2019 DOT secures payment of the identical

4    indebtedness.  That deed of trust also "secure[s] the full and timely payment of the

5    Indebtedness," and the indebtedness is the exact same "Promissory Note payable by

6    Borrower to the order of Lender in the principal amount of *Two Million Five Hundred*

7    *Thousand and 00/100 Dollars ($2,500,000), which matures on January 1, 2018*."

8    (Ex. 3, p. 6, §1.20, emphasis in original.)

9        11.    Notably, as demonstrated on the Title Report for the Property (Ex. 1), no

10   deeds of trust were recorded on the Property between the 2016 DOT and the 2019

11   DOT.

12   **B.    Genova Forecloses on the 2019 DOT.**

13       12.    Genova foreclosed on the Property on August 14, 2019 pursuant to the

14   2019 DOT.  (Ex. 4.)  Genova purports to have been the highest bidder on the Property

15   at the sale and, on August 14, 2019, a Trustee's Deed Upon Sale was conveyed to

16   Genova.  The document was recorded on August 16, 2019.  (Ex. 5.)

17       13.    On August 23, 2019, Plaintiffs filed an action against Genova for, among

18   other things, quiet title and wrongful foreclosure.  (Ventura County Superior Court

19   Case No. 56-2019-00532393.)  On August 28, 2019, Genova filed the UD action

20   against Plaintiffs (Case No. 2019-00532526).

21       14.    The UD action was tried to this Court (the Hon. Kevin G. DeNoce

22   presiding) over five days in September and November 2019.  The Court determined

23   that the foreclosure suffered from procedural irregularities, including that Mr. Field and

24   Ms. Pelissier were led to believe that the sale was being postponed and otherwise

25   would have paid the amount due.  (Ex. 6.)  As a result, the Court found that the

26   foreclosure was invalid and that "upholding the foreclosure sale would be unfair and

27   unjust."  But because that action was simply a UD case, the Court noted that the issue

28   of title would ultimately need to be determined in the quiet title action.  Genova

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

1  thereafter appealed the Judgment.  The appeal is still pending, as is Plaintiffs' quiet title

2  action.

3  **C.    The Attempted Foreclosure on the 2016 DOT and the Bankruptcy.**

4      15.    In April 2020, with the appeal of the UD Judgment and the quiet title

5  action unresolved, Genova recorded a notice of foreclosure sale pursuant to the 2016

6  DOT.  This ultimately resulted in Brigham Field filing for bankruptcy in the United

7  States Bankruptcy Court for the Central District of California, Case No. 9:20-bk-

8  10622-DS ("the Bankruptcy Action").

9      16.    On September 15, 2020, Genova filed a motion for relief from stay to

10  pursue its foreclosure under the 2016 DOT.  (Ex. 8.)  As is made clear in Genova's

11  memorandum of points and authorities, the sole factual basis for the motion is that

12  "Genova owns the Subject Property and it is not 'property of the Estate.'"  (Ex. 7.)

13  According to Genova, Plaintiffs have "no ownership interest in the Subject Property at

14  all whatsoever, whether legal or equitable, since it was previously sold at a non-judicial

15  foreclosure sale to Genova."  (*Id*. at p. 1.)  The motion is supported by a declaration in

16  which Genova swears that Plaintiffs "are the FORMER owners of the Subject Property.

17  It was sold to [Genova] at a pre-petition foreclosure sale."  (Ex. 8.)

18      17.    On October 7, 2020, based on these arguments and evidence presented by

19  Genova, the Bankruptcy Court granted Genova's motion and gave Genova leave to

20  attempt to foreclose on the 2016 DOT.  (Ex. 9.)  (Notably, the Bankruptcy Court did

21  not rule on the validity or enforceability of the 2016 DOT.)

22  **D.    The Current Foreclosure Sale.**

23      18.    Having obtained leave from the Bankruptcy Court, Genova, with

24  California TD Specialists as Trustee, is now seeking to foreclose on the 2016 DOT.

25  Neither Genova nor California TD Specialists provided noticed to Plaintiffs of the sale.

26  Instead, Plaintiffs learned of the sale on Friday, October 16, 2020, when counsel for

27  Plaintiffs emailed counsel for Genova inquiring whether Genova has set a sale date.

28  (Ex. 10.)  ***The foreclosure sale is set to occur on October 21, 2020 at 11:00 a.m.***

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

19.     The Parties do not engage in a typical lender-borrower relationship.  ***Far from it***.  The principals of Genova were directly involved in collection efforts on behalf of Colette Pelissier's business, Malibu Media.  In fact, these principals actually ***took control Ms. Pelissier's affairs and acted as her fiduciary***.  Specifically, Josh Hunter (the CEO of Genova and the person who signed the declaration in support of Genova's motion for relief from stay) convinced Ms. Pelissier to sign a general power of attorney so that he could, among other things: "collect and receive each and every sum of money . . . (which now is or hereafter shall become due, owing or payable) belonging to or claims by [Ms. Pelissier]."  These principals also directly acted on behalf of Malibu Media, even writing letters on Malibu Media letterhead and including Malibu Media in their email signature blocks.  In fact, the letters which Genova sent on Malibu Media letterhead to judgment debtors appeared to violate the Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA) and/or Unfair or Deceptive Abusive Acts or Practices (UDAAP), such that Plaintiffs were forced to send a cease and desist letter to stop such practices.  Genova and its principals responded that the cease and desist was unwarranted because its principals were authorized to make efforts to collect on behalf of Malibu Media.

20.     These intermingled fiduciary relationships also had a direct impact on the indebtedness at issue because these principals refused to remit the funds that belonged to Malibu Media, funds that could have been used to pay the indebtedness.  All the while, these principals continued to spend Malibu Media's money, signing checks and depositing the funds into the accounts of their own business.  (This is the subject of yet another piece of litigation between the parties pending in the Los Angeles Superior Court.)

21.     There are other irregularities with the foreclosure as well.  For example: the interest rate on the loan changed from 12% to 18% under suspicious circumstances; Genova refused to provide a payment history for the indebtedness; and it appears that at the time of the loan, Genova was not a licensed lender, calling into question the legality

**PRINTED ON RECYCLED PAPER**

of the entire transaction.

22.     Simply stated, the relationship between the parties does not resemble anything remotely arms-length.  This is all the more reason why the foreclosure cannot proceed.

## FIRST CAUSE OF ACTION

### (For Relief Pursuant to Cal. Civ. Code § 2924 et seq., Against All Defendants)

23.     Plaintiffs incorporate by this reference paragraphs 1-22 of this Complaint as though fully set forth.

24.     The Defendants are not entitled to foreclosure on the Property, and the documents by which Defendants seek to foreclose on the Property violate Cal. Civ. Code § 2924.17 et seq. for a number of reasons including those set forth above and below.

25.     Genova claims to be the fee title owner of the Property.  Not only has Genova taken this position by recording a Trustee's Deed Upon Sale, Genova has also taken that position in various filings to obtain affirmative relief (including the right to attempt this foreclosure).  For example, in a recent declaration submitted in the Bankruptcy court, Genova swore that Plaintiffs "are the FORMER owners of the Subject Property.  It was sold to [Genova] at a pre-petition foreclosure sale."  Having taken these positions, Genova is judicially estopped to assert otherwise.  Under the well-settled merger doctrine, once Genova took title to the Property, whatever deeds of trust it held on the Property were merged into its fee title.  As such, and as a matter of law, Genova has nothing to foreclose on.

26.     Genova has already foreclosed on the Property based on the same indebtedness that is the basis of this foreclosure.  The Note at issue in the August 2019 foreclosure sale was "[t]he Promissory Note payable by Borrower to the order of Lender in the principal amount of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000), which matures on January 1, 2018."  ***The Note at issue in this current foreclosure is precisely the same note!***  As a matter of law, Genova cannot

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

foreclose on the same note a second time.

27.    The foreclosure is fraught with irregularities.  This is not like a typical lender-borrower relationship.  For example, the principals of Genova were in business with plaintiff Pelissier, and the CEO of Genova even had a general power of attorney over Ms. Pelissier.  The principals then abused that fiduciary relationship by refusing to turn over funds they collected; funds that could have been used to pay off the indebtedness.

28.    As a remedy, Plaintiffs seeks an injunction precluding Defendants from foreclosing on the Property.

## SECOND CAUSE OF ACTION

### (For Declaratory Relief, Against All Defendants)

29.    Plaintiffs incorporate by this reference paragraphs 1-28 of this Complaint as though fully set forth.

30.    On information and belief, Defendants intend to sell, and unless restrained will sell or cause to be sold, the Property, all to Plaintiffs' great and irreparable injury. Defendants have demonstrated their intent to sell Plaintiffs' home on October 21, 2020.

31.    The sale is wrongful.  Genova claims to be the fee title owner of the Property.  Not only has Genova taken this position by recording a Trustee's Deed Upon Sale, Genova has also taken that position in various filings to obtain affirmative relief (including the right to attempt this foreclosure).  For example, in a recent declaration submitted in the Bankruptcy court, Genova swore that Plaintiffs "are the FORMER owners of the Subject Property.  It was sold to [Genova] at a pre-petition foreclosure sale."  Having taken these positions, Genova is judicially estopped to assert otherwise.  Under the well-settled merger doctrine, once Genova took title to the Property, whatever deeds of trust it held on the Property were merged into its fee title.  As such, and as a matter of law, Genova has nothing to foreclose on.

32.    The sale is also wrongful because Genova has already foreclosed on the

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

PRINTED ON RECYCLED PAPER

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

Property based on the same indebtedness that is the basis of this foreclosure. The Note at issue in the August 2019 foreclosure sale was "[t]he Promissory Note payable by Borrower to the order of Lender in the principal amount of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000), which matures on January 1, 2018." ***The Note at issue in this current foreclosure is precisely the same note!*** As a matter of law, Genova cannot foreclose on the same note a second time.

33.     The sale is also wrongful because the foreclosure is fraught with irregularities. This is not like a typical lender-borrower relationship. For example, the principals of Genova were in business with plaintiff Pelissier, and the CEO of Genova even had a general power of attorney over Ms. Pelissier. The principals then abused that fiduciary relationship by refusing to turn over funds they collected; funds that could have been used to pay off the indebtedness.

34.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties. Plaintiffs contend that the foreclosure is illegal for the foregoing reasons. Defendants, on the other hand, contend that they are entitled to sell Plaintiffs' Property to satisfy the obligation created under the note and deed of trust.

35.     Plaintiffs desire a declaration that Defendants are not entitled to foreclose on the Property for the foregoing reasons.

36.     Plaintiffs have no other plain, speedy, or adequate remedy and the declaratory relief prayed for is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs' interests.

### THIRD CAUSE OF ACTION

**(For Breach of Covenant of Good Faith and Fair Dealing, Against All Defendants)**

37.     Plaintiffs incorporate by this reference paragraphs 1-36 of this Complaint as though fully set forth.

38.     In every contract, there is an implied covenant of good faith and fair dealing.

-9-

*COMPLAINT*

PRINTED ON RECYCLED PAPER

39.    Defendants have breached this covenant of good faith and fair dealing in the 2016 DOT attempting to foreclose on the Property when it has no legal basis to do so.

40.    As a remedy for this breach, Plaintiffs seeks relief including, but not limited to, an injunction preventing Defendants from foreclosing on the Property.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs Field and Pelissier pray for judgment against defendants, and each of them, as follows:

1.    That the Court enjoin and restrain Defendants from foreclosing on the Property;

2.    That the Court issue a declaration of the rights and duties of the parties, specifically that the Defendants have no right to foreclose on the Property;

2.    For reasonable costs incurred herein;

3.    For attorney fees;

4.    For such other and further, and different relief as the Court deems just and proper.

DATED:  October 19, 2020                    MURPHY ROSEN LLP

By: _____
          David E. Rosen
          Nicole Ambrosetti
          Attorneys for Plaintiffs Brigham Field and
          Colette Pelissier

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

PRINTED ON RECYCLED PAPER

# EXHIBIT 1



Lawyers Title Company
7530 N. Glenoaks Blvd.
Burbank, CA 91504
Phone: (818) 767-2000
Fax: (818) 504-4937

Sothebys International Realty Brentwood
11911 San Vicente Blvd #200
Los Angeles, CA 90049

Attn: Colette Pelissier

Title Officer: Neil Viner--So
email: tu09@ltic.com
Phone No.: (800) 747-7777 x 311
Fax No.: (818) 252-3726
File No.:  118081269

Your Reference No: 11802 ELLICE ST

Property Address:  11802 Ellice Street, (Malibu Area), County of Ventura, California

## UPDATED AND AMENDED PRELIMINARY REPORT

Dated as of August 31, 2020 at 7:30 a.m.

In response to the application for a policy of title insurance referenced herein, Lawyers Title Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One.  The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitation on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One.  Copies of the policy forms should be read.  They are available from the office which issued this report.

The policy(s) of title insurance to be issued hereunder will be policy(s) of **Commonwealth Land Title Insurance Company.**

***Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Attachment One of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.  It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.***

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

File No:  118081269

# SCHEDULE A

The form of policy of title insurance contemplated by this report is:

**2013 Homeowner's Policy**
**ALTA Loan 2006**

The estate or interest in the land hereinafter described or referred to covered by this report is:

**A Fee as to Parcel 1**
**Easement(s) more fully described below as to Parcel 2**

Title to said estate or interest at the date hereof is vested in:

**Brigham Field and Colette Pelissier, husband and wife as to an undivided 50% interest**
subject to proceedings pending in the BANKRUPTCY COURT where a petition for relief was filed:

| | |
|---|---|
| Name of Debtor: | Brigham G. Field |
| Date of Filing: | May 12, 2020 |
| U.S. District Court: | Central |
| Case No: | 9:20-bk-10622-DS |

**and Regdalin Properties, LLC, as to an undivided 50% interest**
subject to proceedings pending in the BANKRUPTCY COURT where a petition for relief was filed:

| | |
|---|---|
| Name of Debtor: | Regdalin Properties, LLC |
| Date of Filing: | September 17, 2018 |
| U.S. District Court: | Central |
| Case No: | 2:18-bk-20868-Big Bear |

**All subject to Items numbered. 14, 15, 16, 18, 19 and 20 of Schedule B and Req. No. 3 of the Requirement Section herein**

The land referred to herein is situated in the County of Ventura, State of California, and is described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

CLTA Preliminary Report Form – Modified (11-17-06)

File No:  118081269

# EXHIBIT "A"

All that certain real property situated in the County of Ventura, State of California, described as follows:

Parcel 1:

Lot 6 of Tract No. 4483, in the County of Ventura, State of California, as per map recorded in Book 146, Pages 19 through 22 inclusive of Maps, in the Office of the County Recorder of said County.

EXCEPT one-eighth of minerals, oil, petroleum, asphaltum, gas, coal and other hydrocarbon substances, as reserved by Marblehead Land Company, in deed recorded November 17, 1940, in Book 628, Page 87 of Official Records.

Parcel 2:

Non-exclusive easements appurtenant to Parcel 1, above, on and over the "Common Area", as defined in the Second Amended and Completely Restated Declaration of Covenants, Conditions and Restrictions and Easements for MariSol, recorded on February 14, 2011 as Instrument No. 2011-24632 of Official Records, for access, use, occupancy, enjoyment, ingress and egress of the amenities located thereon.

Assessor's Parcel No.:   700-0-260-065

File No:  118081269

# SCHEDULE B

At the date hereof Exceptions to coverage in addition to the printed exceptions and exclusions in said policy form would be as follows:

A.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2020-2021.

B.  Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

Tax Identification No.:          700-0-260-065
Fiscal Year:                    2019-2020
1st Installment:                $89,833.78, PAID
2nd Installment:                $89,833.78, PAID
Homeowners Exemption:           Not Set Out
Code Area:                      71-037

C.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A; or as a result of changes in ownership or new construction occurring prior to date of policy.


1.  Water rights, claims or title to water, whether or not disclosed by the public records.

2.  Easement(s) for the purpose(s) shown below and rights incidental thereto as set forth in a document:

Purpose:                        Public utility purposes
Recording Date:                 November 27, 1940
Recording No:                   in Book 628, Page 87 of Official Records
Affects:                        as more particularly described therein

3.  Waiver of any claims for damages to said Land by reason of the location, construction, landscaping or maintenance of the street or highway adjoining said Land, as contained in the deed to

County/City/State:              State of California
Name of Street or Highway:      Pacific Coast Highway
Recording Date:                 June 17, 1952
Recording No:                   in Book 1072, Page 57 of Official Records

4.  An irrevocable offer to dedicate an easement over a portion of said Land for

Purpose(s):                     Wastewater disposal system
Recording Date:                 August 29, 2000
Recording No:                   as Instrument No. 2000-138435 of Official Records
Affects:                        as more particularly described therein

The exact location and/or extent of said easement is not disclosed in the public records.

File No: 118081269

5.    An easement for the purposes shown below and rights incidental thereto as shown or as offered for dedication on the recorded map shown below.

Map:                                Tract No. 4483
Recorded:                        in Book 146, Pages 19 through 22 inclusive of maps
Easement purpose:            Public utility purposes
Affects:                            the Northeasterly 5 feet of said land


6.    An easement for the purposes shown below and rights incidental thereto as shown or as offered for dedication on the recorded map shown below.

Map:                                Tract No. 4483
Recorded:                        in Book 146, Pages 19 through 22 inclusive of maps
Easement purpose:            Public utility purposes
Affects:                            the Southeasterly 5 feet of said land

7.    Matters contained in the dedication statement or elsewhere on the tract or parcel map shown below, which among the things provide:

Tract/Parcel Map:            Tract No. 4483
Provisions:                      Offer to dedicate to the County of Ventura all rights of ingress and egress over and across the Southwesterly lines of Lots 1 through 10, inclusive, abutting the Pacific Coast Highway

Reference is made to said map for full particulars.

8.    Declaration of covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the below document, which, among other things, may contain or provide for easements; assessments, liens and the subordination thereof; said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value:

Recording Date:              November 18, 2005
Recording No:                2005-284965 of Official Records

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

Modification(s) of said covenants, conditions and restrictions

Recording Date:              February 14, 2011
Recording No:                2011-24632 of Official Records

And re-recording Date:    October 24, 2013
And re-recording No:        2013-177041 of Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:              July 11, 2016
Recording No:                2016-96572 of Official Records

CLTA Preliminary Report Form – Modified (11-17-06)

File No:  118081269

9.  Matters contained in that certain document

Entitled:                       Notice of Election of Alternative Pre-Litigation Procedures for Construction Claims Pursuant to California Civil Code Section 895 et seq
Dated:                          May 6, 2011
Executed by:                    Crown Pointe Estates at Malibu, LLC, a California Limited Liability Company
Recording Date:                 May 10, 2011
Recording No:                   2011-71876 of Official Records

Reference is hereby made to said document for full particulars.

10. Easement(s) for the purpose(s) shown below and rights incidental thereto as set forth in a document:

Purpose:                        Landscape purposes
Recording Date:                 October 15, 2012
Recording No:                   2012-183146 of Official Records
Affects:                        as more particularly described and depicted therein

11. A deed of trust to secure an indebtedness in the amount shown below,

Amount:                         $11,500,000.00
Dated:                          June 3, 2013
Trustor/Grantor:                Brigham Field and Colette Pelissier, aka Colette Pelissier Field, husband and wife, as community property, with rights of survivorship
Trustee:                        Chicago Title Company, a California Corporation
Beneficiary:                    Crown Pointe Estates at Malibu, LLC, a California Limited Liability Company
Loan No.:                       none shown
Recording Date:                 June 12, 2013
Recording No:                   2013-106071 of Official Records

A collateral assignment of the beneficial interest, which names

Assignee:                       First-Citizens Bank & Trust Company, a North Carolina Commercial Bank
Recording Date:                 June 12, 2013
Recording No:                   as Instrument No. 2013-106073 of Official Records

An agreement to modify the terms and provisions of said deed of trust as therein provided

Executed by:                    Brigham Field and Colette Pelissier, aka Colette Pelissier Field, husband and wife and Crown Pointe Estates at Malibu, LLC, a California Limited Liability Company
Recording Date:                 September 26, 2013
Recording No:                   as Instrument No. 2013-163981 of Official Records

A collateral assignment of the beneficial interest, which names

Assignee:                       First-Citizens Bank & Trust Company, a North Carolina Commercial Bank
Recording Date:                 September 26, 2013
Recording No:                   as Instrument No. 2013-163983 of Official Records

CLTA Preliminary Report Form – Modified (11-17-06)

File No:  118081269

Matters contained in that certain document

Entitled:                    Release and Reassignment of Collateral Assignment of Deed of Trust and Related Loan Documents
Recorded Date:        November 25, 2013
Recording No:         as Instrument No. 2013-191132 of Official Records

THE EFFECT OF A SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE recorded July 20, 2020 as Instrument No. 2020-104466 of Official Records, which purports to reconvey the above-mentioned Deed of Trust.

No statement is made hereto as to the effect or validity of said reconveyance.

The requirement that this Company be furnished with confirmation from the lender that the Deed of Trust has been released prior to issuance of a policy of title insurance.

12.   A deed of trust to secure an indebtedness in the amount shown below,

Amount:                        $2,000,000.00
Dated:                          June 3, 2013
Trustor/Grantor:       Brigham Field and Colette Pelissier, aka Colette Pelissier Field, husband and wife
Trustee:                  Chicago Title Company, a California Corporation
Beneficiary:             Helena Deeds, a single woman
Loan No.:                 none shown
Recording Date:        June 12, 2013
Recording No:         2013-106072 of Official Records

Said deed of trust recites that it is subordinate to the trust deed recorded concurrently therewith.

The EFFECT OF A SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE recorded June 10, **2015** as Instrument No. 2015-88417 of Official Records, which purports to reconvey the above-mentioned Deed of Trust.

No statement is made hereto as to the effect or validity of said reconveyance.

A SUBORDINATION AGREEMENT

Dated:                          February 5, 2020
Subordinated Creditor:  Helena Deeds
The Bank:               Banc of California, National Association
Recording Date:        March 16, 2020
Recording No:         2020-38598 of Official Records

**Among other things, said document states:**

*The Subordinated Creditor contends that she was fraudulently induced to sign a Substitution of Trust and Full Reconveyance of the Subordinated DOT. As of January 24, 2020, the Fields are indebted to Subordinated Creditor in an amount well in excess of $2,000,000.*

Reference is made to said document for full particulars.

13.  A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $9,000,000.00 |
| Dated: | March 19, 2014 |
| Trustor/Grantor: | Brigham Field and Colette Pelissier, husband and wife as community property with rights of survivorship |
| Trustee: | Fidelity National Title |
| Beneficiary: | Banc of California, National Association, a Commercial Bank |
| Loan No.: | 6010007465 |
| Recording Date: | March 26, 2014 |
| Recording No: | as Instrument No. 2014-38119 of Official Records |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | The Wolf Firm, a Law Corporation |
| Recording Date: | January 22, 2020 |
| Recording No: | 2020-9175 of Official Records |

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | The Wolf Firm, a Law Corporation |
| Recording Date: | January 22, 2020 |
| Recording No: | 2020-9176 of Official Records |

14.  The effect of a GRANT DEED

| | |
|---|---|
| Dated: | January 22, 2016 |
| Grantor: | Brigham Field and Colette Pelissier, husband and wife as community property with rights of survivorship |
| Grantee: | Brigham Field and Colette Pelissier, husband and wife as to an undivided 60% interest and California's Best Holdings, LLC, as to an undivided 40% interest |
| Recording Date: | February 1, 2016 |
| Recording No: | as Instrument No. 2016-12419 of Official Records |

For the purposes of title insurance, this Company requires that an Affidavit (attached) be completed and executed by the grantor above and that it be acknowledged before a notary who is an EMPLOYEE of the title or escrow company and then submitted to the Title Officer for review.

The Company further requires a statement of information from the grantors above in order to complete this report, based on the effect of documents, proceedings, liens, decrees, or other matters which do not specifically describe said land, but which, if any do exist may effect the title or impose liens or encumbrances thereon.

15.  The effect of a GRANT DEED

| | |
|---|---|
| Dated: | July 27, 2016 |
| Grantor: | Regdalin Properties, LLC and Colette Properties |
| Grantee: | Regdalin Properties, LLC |
| Recording Date: | August 11, 2016 |
| Recording No: | as Instrument No. 2016-113556 of Official Records |

For the purposes of title insurance, this Company requires that an Affidavit (attached) be completed and executed by the grantor above and that it be acknowledged before a notary who is an EMPLOYEE of the title or escrow company and then submitted to the Title Officer for review.

CLTA Preliminary Report Form – Modified (11-17-06)

File No: 118081269

The Company further requires a statement of information from the grantors above in order to complete this report, based on the effect of documents, proceedings, liens, decrees, or other matters which do not specifically describe said land, but which, if any do exist may effect the title or impose liens or encumbrances thereon.

16.    The effect of a QUITCLAIM DEED

    Dated:                            November 22, 2016
    Grantor:                          Regdalin Properties, LLC a California Limited Liability Company
    Grantee:                          Brigham Field and Colette Pelissier, husband and wife as joint
                                      tenants
    Recording Date:                   December 1, 2016
    Recording No:                     as Instrument No. 2016-178191 of Official Records

    For the purposes of title insurance, this Company requires that an Affidavit (attached) be completed and executed by the grantor above and that it be acknowledged before a notary who is an EMPLOYEE of the title or escrow company and then submitted to the Title Officer for review.

    The Company further requires a statement of information from the grantors above in order to complete this report, based on the effect of documents, proceedings, liens, decrees, or other matters which do not specifically describe said land, but which, if any do exist may effect the title or impose liens or encumbrances thereon.

17.    A deed of trust to secure an indebtedness in the amount shown below,

    Amount:                           $2,500,000.00
    Dated:                            November 23, 2016
    Trustor/Grantor:                  Brigham Field and Colette Pelissier, husband and wife as joint
                                      tenants
    Trustee:                          Commonwealth Land Title Company
    Beneficiary:                      Genova Capital, Inc., a California Corporation
    Loan No.:                         none shown
    Recording Date:                   December 1, 2016
    Recording No:                     as Instrument No. 2016-178192 of Official Records

    A Partial Assignment of the beneficial interest under said deed of trust which names:

    Assignee:                         Robert Lechman Defined Benefit Pension Plan and Trust **52%**
    Loan No.:                         none shown
    Recording Date:                   July 21, 2017
    Recording No:                     as Instrument No. 2017-93974 of Official Records

    A Partial Assignment of the beneficial interest under said deed of trust which names:

    Assignee:                         Darice, LLC **40%**
    Loan No.:                         none shown
    Recording Date:                   July 21, 2017
    Recording No:                     as Instrument No. 2017-93975 of Official Records

    A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

    Trustee:                          California TD Specialists, as Trustee
    Recording Date:                   December 30, 2019
    Recording No:                     2019-165179 of Official Records

    And
    Trustee:                          California TD Specialists, as Trustee
    Recording Date:                   January 13, 2020

CLTA Preliminary Report Form – Modified (11-17-06)

File No: 118081269

Recording No:                    2020-4062 of Official Records

A notice of default under the terms of said trust deed

Executed by:                California TD Specialist
Recording Date:             January 13, 2020
Recording No:               2020-4063 of Official Records

A Notice of Trustee's Sale under said deed of trust

Executed by:                California TD Specialist
Time and Place of Sale:     On 5/13/2020 at 11:00 AM, at the Main front entrance to the
                            County Government Center Hall of Justice located at 800 South
                            Victoria Avenue, Ventura, California 93003
Recording Date:             April 17, 2020
Recording No:               2020-52543 of Official Records


18.  A pending court action as disclosed by a recorded notice:

Plaintiff:              Helena Deeds, an individual
Defendant:              Colette Pelissier aka Colette Pelissier Field, an individual; and
                        Brigham Field, an individual; Malibu Media, LLC, a California Limited
                        Liability Company; Click Here LLC, a California Limited Liability
                        Company; Colette Holdings, LLC, a California Limited Liability
                        Company; Colette Properties, LLC, a California Limited Liability
                        Company; Colette Production, Inc.; and DOES 5 through 25,
                        inclusive
County:                 Los Angeles
Court:                  Superior
Case No.:               SC128336
Nature of Action:       Judicial Foreclosure, Quiet Title
Recording Date:         March 8, 2018
Recording No:           as Instrument No. 2018-27474 of Official Records

19.  A deed of trust to secure an indebtedness in the amount shown below,

Amount:                 $2,500,000.00
Dated:                  April 11, 2017
Trustor/Grantor:        Brigham Field and Colette Pelissier, husband and wife as Joint
                        tenants
Trustee:                Commonwealth Land Title Company
Beneficiary:            Genova Capital, Inc.
Loan No.:               11802 Ellice
Recording Date:         March 25, 2019
Recording No:           2019-031274 of Official Records

THE EFFECT OF A TRUSTEE'S DEED UPON SALE

Dated:                  August 14, 2019
Grantor:                California TD Specialists, as Trustee TS#83752
Grantee:                Genova Capital, Inc., a California Corporation
Recording Date:         August 16, 2019
Recording No:           2019-94754 of Official Records

File No:  118081269

20. A Pending Court Action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Brigham Field, Colette Pelissier |
| Defendant: | Genova Capital Inc., a California Corporation; California Td Specialist, a California Corporation; all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiffs' title, or any cloud on Plaintiffs' title thereto and Does 1 through 20, inclusive |
| County: | Ventura |
| Court: | Superior |
| Case No.: | 56-2019-00532393-CU-OR-VTA |
| Nature of Action: | Quiet Title…including the improper Trustees Deed Upon Sale recorded by Genova Capital Inc., a California Corporation |
| Recording Date: | August 28, 2019 |
| Recording No: | 2019-99891 of Official Records |

Reference is made to said document for full particulars.

21. An Abstract Of Judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $ 25,207.35 |
| Debtor: | Colette Pelissier Field |
| Creditor: | PROTAX, LLC |
| Date entered: | May 15, 2018 |
| County: | Ventura |
| Court: | Superior Court of California, County of Ventura |
| Case No.: | 56-2017-00499576-CL-BC-VTA |
| Recording Date: | June 6, 2018 |
| Recording No: | 2018- 064391 of Official Records |

22. An abstract of judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $548,644.92 |
| Debtor: | Colette Pelissier |
| Creditor: | The Semler Companies/Malibu, a California Limited Partnership |
| Date entered: | May 1, 2018 |
| County: | Los Angeles |
| Court: | Superior, Santa Monica Courthouse |
| Case No.: | SC128428 |
| Recording Date: | May 20, 2019 |
| Recording No: | 2019-54944 of Official Records |

23. A JUDGMENT AFTER COURT TRIAL

| | |
|---|---|
| Plaintiff: | Genova Capital Inc., a California Corporation |
| Defendant: | Brigham Field, Colette Pelissier; All unnamed occupants, tenants and subtenants; and Does 1-20 inclusive |
| County: | Ventura |
| Court: | Superior |
| Case No.: | 56-2019-00532526-CU-UD-VTA |
| Nature of Action: | As to the unlawful detainer action filed by Plaintiff with this Court on August 28, 2019 Judgment is hereby entered in favor of Defendants and against Plaintiff **on the condition that defendants pay off the subject note in its entirety, plus cost no later than December 4, 2019** |
| Recording Date: | January 24, 2020 |
| Recording No: | 2020-10499 of Official Records |

File No:  118081269

24.  Any easements not disclosed by the public records as to matters affecting title to real property, whether or not said easements are visible and apparent.

25.  Matters which may be disclosed by an inspection and/or by a correct ALTA/ACSM Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

26.  Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

27.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other matters which a correct survey would disclose and which are not shown by the public records.

**END OF SCHEDULE B EXCEPTIONS**

**PLEASE REFER TO THE "NOTES AND REQUIREMENTS SECTION" WHICH FOLLOWS FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION**

File No: 118081269

# REQUIREMENTS SECTION:

Req. No. 1:    In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

Party(s):        All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE:    The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

Req. No. 2:    The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

Limited Liability Company:        Regdalin Properties

a)        A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member

b)        If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps

c)        If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member

d)        A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created

e)        If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

f)        If Limited Liability Company is a Single Member Entity, a Statement of Information  for the Single Member will be required.

g)        Each member and manager of the LLC without an Operating Agreement must executed in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

Req. No. 3:    The Company will require evidence, satisfactory to the Company, that the vestee **corporation named herein, which was suspended,** has been reinstated by the California Franchise Tax Board.

Req. No. 4:    The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

CLTA Preliminary Report Form – Modified (11-17-06)

Limited Liability Company:        Colette Properties

a)        A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member

b)        If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps

c)        If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member

d)        A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created

e)        If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

f)        If Limited Liability Company is a Single Member Entity, a Statement of Information  for the Single Member will be required.

g)        Each member and manager of the LLC without an Operating Agreement must executed in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

Req. No. 5:        The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

Limited Liability Company:        California Best Holdings

a)        A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member

b)        If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps

c)        If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member

d)        A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created

e)        If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

f)        If Limited Liability Company is a Single Member Entity, a Statement of Information  for the Single Member will be required.

g)        Each member and manager of the LLC without an Operating Agreement must executed in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

File No: 118081269

Req. No. 6:     The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

Limited Liability Company:          California Best Holdings

a)          A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member

b)          If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps

c)          If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member

d)          A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created

e)          If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

f)          If Limited Liability Company is a Single Member Entity, a Statement of Information  for the Single Member will be required.

g)          Each member and manager of the LLC without an Operating Agreement must executed in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

Req. No. 7:     Furnish for review a full and complete copy of any unrecorded agreement, contract, license and/or lease together with all supplements, assignments and amendments thereto, prior to the close of this transaction.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

Req. No. 8:     This transaction REQUIRES HIGH LIABILITY APPROVAL prior to close of escrow together with an inspection of the subject property.

Please advise title department with an estimated date that your transaction will close so we can schedule the necessary approvals and inspections.

Req. No. 9:     Satisfactory evidence must be furnished from the secretary or other duly qualified officer of the Association showing that all assessments and fees, including special assessments or payments due to others, such as master associations, are paid in full through the date of closing.

File No:  118081269

# INFORMATIONAL NOTES SECTION

Note No. 1:    The information on the attached plat is provided for your convenience as a guide to the general location of the subject property.  The accuracy of this plat is not guaranteed, nor is it a part of any policy, report or guarantee to which it may be attached.

Note No. 2:    California insurance code section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds deposited with the company by wire transfer may be disbursed upon receipt. Funds deposited with the company via cashier's check or teller's check drawn on a California based bank may be disbursed on the next business day after the day of deposit. If funds are deposited with the company by other methods, recording and/or disbursement may be delayed.  All escrow and sub-escrow funds received by the company will be deposited with other escrow funds in one or more non-interest bearing escrow accounts of the company in a financial institution selected by the company. The company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with such financial institution, and the company shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by the company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the company or its parent company and earnings on investments made with the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the company for its services in connection with the escrow or sub-escrow.

**For wiring Instructions please contact your Title Officer or Title Company Escrow officer.**

Note No. 3:    Lawyers Title is a division of Commonwealth Land Title Insurance Company.  The insurer in policies of title insurance, when issued in this transaction, will be Commonwealth Land Title Insurance Company.

Note No. 4:    Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

Note No. 5:    Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax.  If a governmental agency is a party to the document, the form will not be required. DDT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

Note No. 6:    None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

Note No. 7:    The following information will be included in the CLTA Form 116 or ALTA Form 22-06 Endorsement to be issued pursuant to this order:

There is located on said Land:    A single family residence
Known as:  11802 Ellice Street, (Malibu Area), County of Ventura, California

Note No. 8:    The only conveyances affecting said land, which recorded within 24 months of the date of this report, are as follows

Grantor:        Brigham Field and Colette Pelissier, husband and wife
Grantee:        Regdalin Properties, LLC, as to an undivided 10% interst
Recorded:      June 6, 2016 as Instrument No. 2016-77833 of Official Records

Grantor:        Regdalin Properties, LLC and Colette Properties, LLC
Grantee:        Regdalin Properties, LLC
Recorded:      August 11, 2016 as Instrument No. 2016-113556 of Official Records

Grantor:        Regdalin Properties, LLC, a California Limited Liability Company
Grantee:        Brigham Field and Colette Pelissier, husband and wife as joint tenants

File No:  118081269

Recorded:         December 1, 2016 as Instrument No. 2016-178191 of Official Records

Note No. 9:    The Company requires current beneficiary demands prior to closing. If the demand is expired and a current demand cannot be obtained, our requirements will be as follows:

a)    If the Company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. This hold will be in addition to the verbal hold the lender may have stipulated.

b)    If the Company cannot obtain a verbal update on the demand, we will either pay off the expired demand or wait for the amended demand, at our discretion.

c)    All payoff figures are verified at closing. If the customer's last payment was made within 15 days of closing, our Payoff Department may hold one month's payment to insure the check has cleared the bank (unless a copy of the cancelled check is provided, in which case there will be no hold).

Note No. 10:    Association Assessments are periodically due from holders of title to said Land to the Homeowner's Association and transfer fees may be due whenever there is a transfer of title of any of the units.  In order to ascertain seller's/buyer's association assessments and transfer fee requirements prior to transfer of a unit, Escrow companies are requested to contact said Homeowner's Association.

Note No. 11:    Due to the special requirements of SB 50 (California Public Resources Code Section 8560 et seq.), any transaction that includes the conveyance of title by an agency of the United States must be approved in advance by the Company's State Counsel, Regional Counsel, or one of their designees.

Note No. 12:    The Company and its policy issuing agents are required by Federal law to collect additional information about certain transactions in specified geographic areas in accordance with the Bank Secrecy Act.  If this transaction is required to be reported under a Geographic Targeting Order issued by FinCEN, the Company or its policy issuing agent must be supplied with a completed ALTA Information Collection Form ("ICF") prior to closing the transaction contemplated herein.

Processor:  ah/AH
Date Typed: September 9, 2020

File No: 118081269

**Attachment One (Revised 05-06-16)**

**CALIFORNIA LAND TITLE ASSOCIATION**
**STANDARD COVERAGE POLICY – 1990**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c)  resulting in no loss or damage to the insured claimant;

   (d)  attaching or created subsequent to Date of Policy; or

   (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

File No:  118081269

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a)  Unpatented mining claims;  (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof;  (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.


## CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
## ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

 In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.

This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.  The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4.  Risks:

    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.  Failure to pay value for Your Title.

6.  Lack of a right:

File No:  118081269

    a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and

    b.   in streets, alleys, or waterways that touch the Land.

This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.    The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.    Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.    Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | **$ 10,000.00** |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | **$ 25,000.00** |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | **$ 25,000.00** |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | **$ 5,000.00** |

### 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

        (i)    the occupancy, use, or enjoyment of the Land;

        (ii)   the character, dimensions, or location of any improvement erected on the Land;

        (iii)  the subdivision of land; or

        (iv)  environmental protection;

        or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk  6.

2.    Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters

    (a)   created, suffered, assumed, or agreed to by the Insured Claimant;

CLTA Preliminary Report Form – Modified (11-17-06)

File No:  118081269

(b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c)  resulting in no loss or damage to the Insured Claimant;

(d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or

(e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a)  a fraudulent conveyance or fraudulent transfer, or

(b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

### [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown  by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the Public Records. ]

### PART II

File No: 118081269

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)    the occupancy, use, or enjoyment of the Land;

    (ii)   the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)   environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a)  a fraudulent conveyance or fraudulent transfer; or

    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

File No:  118081269

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the Public Records. ]

7.  [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

### ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)  the occupancy, use, or enjoyment of the Land;

    (ii)  the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)  environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.

    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

File No:  118081269

5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law.  This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6.   Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.   The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

     (a)   a fraudulent conveyance or fraudulent transfer, or

     (b)   a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

File No: 118081269



Lawyers Title Company
7530 N. Glenoaks Blvd.
Burbank, CA 91504
Phone: (818) 767-2000
Fax: (818) 504-4937

Order No. 118081269

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Company**           **FNF Underwriter**
LTC – Lawyers Title Company                CLTIC – Commonwealth Land Title Insurance Co.

**Available Discounts**

**DISASTER LOANS (CLTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**EMPLOYEE RATE (LTC and CLTIC)**
No charge shall be made to employees (including employees on approved retirement) of the Company or its underwritten, subsidiary or affiliated title companies for policies or escrow services in connection with financing, refinancing, sale or purchase of the employees' bona fide home property. Waiver of such charges is authorized only in connection with those costs which the employee would be obligated to pay, by established custom, as a party to the transaction.

Notice of Available Discount                                    Mod. 10/21/2011

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
|:---:|:---:|
| *http://www.fbi.gov* | *http://www.ic3.gov* |

**FIDELITY NATIONAL FINANCIAL**
**PRIVACY NOTICE**

Effective April 9, 2020

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices.  If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

## Collection of Personal Information
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

## Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

## Other Online Specifics
Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites.  FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

## Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.

- To communicate with you about our, our affiliates' and others' products and services, jointly or independently.

## When Information Is Disclosed

We may disclose your Personal Information and Browsing Information in the following circumstances:

- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;
- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

## Security of Your Information

We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

## Choices With Your Information

If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request by email, phone, or physical mail as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

## Information From Children

The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users

FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

## Your Consent To This Privacy Notice; Notice Changes; Use of Comments or Feedback

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice. We may use comments or feedback that you submit to us in any manner without notice or compensation to you.

## Accessing and Correcting Information; Contact Us

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, send your requests to privacy@fnf.com, by phone to (888) 934-3354, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

Effective April 9, 2020          Copyright © 2020. Fidelity National Financial, Inc. All Rights Reserved.

**FIDELITY NATIONAL FINANCIAL**
# CALIFORNIA PRIVACY NOTICE

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy.  This California Privacy Notice explains how we collect, use, and disclose Personal Information, when and to whom we disclose such information, and the rights you, as a California resident ("Consumer"), have regarding your Personal Information ("California Privacy Rights").   Some subsidiaries maintain separate California Privacy Notices or privacy statements.  If a subsidiary has a separate California Privacy Notice, it will be available on the subsidiary's website, and this California Privacy Notice does not apply.

**Collection of categories of Personal Information:**
In the preceding 12 months FNF has collected, and will continue to collect, the following categories of Personal Information from you:

- Identifiers such as name, address, telephone number, IP address, email address, account name, social security number, driver's license number, state identification card, financial information, date of birth, or other similar identifiers;
- Characteristics of protected classifications under California or Federal law;
- Commercial records, including records of personal property, products or services purchased, or other purchasing or consuming histories;
- Internet or other electronic network activity information including, but not limited to browsing history, search history, and information regarding a Consumer's interaction with an Internet website;
- Geolocation data;
- Professional or employment information;
- Education Information.

**This Personal Information is collected from the following sources:**

- Information we receive from you on applications or other forms;
- Information about your transactions with FNF, our affiliates, or others;
- Information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others;
- Information from the use of our websites and mobile applications.

**This Personal Information is collected for the following business purposes:**
- To provide products and services to you or in connection with a transaction involving you;
- To perform a contract between FNF and the Consumer;
- To improve our products and services;
- To comply with legal obligations;
- To protect against fraudulent or illegal activity;
- To communicate with you about FNF or our affiliates;
- To maintain an account with FNF or our affiliates;
- To provide, support, personalize, and develop our websites, products, and services;
- As described to you when collecting your personal information or as otherwise set forth in the California Consumer Privacy Act.

**Disclosures of Personal Information for a business purpose:**
In the preceding 12 months FNF has disclosed, and will continue to disclose, the categories of Personal Information listed above for a business purpose. We may disclose Personal Information for a business purpose to the following categories of third parties:
- FNF affiliates and subsidiaries;
- Businesses in connection with the sale or other disposition of all or part of the FNF business and/or assets;
- Service Providers;
- Law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

**Sale of Personal Information:**
In the preceding 12 months, FNF has not sold Personal Information. FNF does not sell Personal Information.

**Personal Information of minors:**
FNF does not knowingly collect the Personal Information of minors.

**Right to know:**
Consumers have a right to know about Personal Information collected, used, disclosed, or sold. Consumers have the right to request FNF disclose what personal information it collected, used, and disclosed in the past 12 months.

**Right to request deletion:**
Consumers have a right to request the deletion of their personal information.

**Right to non-discrimination:**
Consumers have a right not to be discriminated against by exercising their consumer privacy rights. We will not discriminate against Consumers for exercising any of their California Privacy Rights.

**Right to use an Authorized Agent:**
A Consumer may use an Authorized Agent to submit a request to know or a request to delete his or her information. Should a Consumer utilize an Authorized Agent, FNF will require the Consumer provide the agent written permission to make the request and verify his or her identity with FNF.

**To exercise any of your California Privacy Rights, please follow the link "_California Privacy Request_" or call Toll Free 888-413-1748.**

Upon making a California Privacy Request, Consumers will be prompted to verify their identity through a third-party ID validation or by utilizing an existing login if applicable.

The above-rights are subject to any applicable rights and obligations including both Federal and California exemptions rendering FNF, or Personal Information collected by FNF, exempt from certain CCPA requirements.

**FNF website services for mortgage loans:**
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice describing the categories, sources, and uses of your Personal Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Information. FNF does not share Information collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**California Privacy Notice – Effective Date:**
This California Privacy Notice was last updated on January 1, 2020.

**Contact for more information:**
For questions or concerns about FNF's California Privacy Notice and privacy practices, or to exercise any of your California Privacy Rights, please follow the link "_California Privacy,_" call Toll Free 888-413-1748, or by mail to:

We may use your Personal Information for our affiliates (companies owned by FNF) to directly market to you. If you do not want FNF affiliates to directly market to you, you may send an "opt out" request to privacy@fnf.com, by phone to (888) 934-3354, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

# EXHIBIT 2

Recording Requested by:
SPL

WHEN RECORDED, RETURN TO:
SPL
Genova Capital, Inc.
555 Corporate Drive, Suite 120
Ladera Ranch, California 92694

20161201-00178192-0 1/37
Ventura County Clerk and Recorder
MARK A. LUNN
12/01/2016 11:46:00 AM
1139576 $150.00 VA

Electronically Recorded in Official Records.
County of Ventura

APN: 700-0-260-065
G2023 89

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT; REQUEST FOR NOTICE

**Note Amount:** $2,500,000.00
**Property Address:** 11802 Ellice Street, Malibu, California 90265

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH CALIFORNIA COMMERCIAL CODE SECTION 9502.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of November 23, 2016, among Brigham Field and Colette Pelissier, husband and wife as joint tenants, as trustor ("Borrower"), whose address is 325 North Oakhurst Drive, PH3, Beverly Hills, California 90210; Commonwealth Land Title Company, as trustee ("Trustee"); and, Genova Capital, Inc., a California corporation, as beneficiary ("Lender"), whose address is 555 Corporate Drive, Suite 120, Ladera Ranch, California 92694.

### TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the State of California as described in California Commercial Code section 9502. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

### *Unrecorded leases

© 2007 Geraci Law Firm; All Rights Reserved.

1

Rev. 01/16
Borrowers Initials

Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

**1. Definitions.** For purposes of this Deed of Trust, each of the following terms shall have the following respective meanings:

    **1.1.** "**Attorney Fees.**" Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Deed of Trust.

    **1.2.** "**Borrower.**" The named Borrower in this Deed of Trust and the obligor under the Note, whether or not named as Borrower in this Deed of Trust, and subject to paragraph 19 and paragraph 20 of this Deed of Trust, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

    **1.3.** "**Default Rate.**" The Default Rate as defined in the Note.

    **1.4.** "**Event of Default.**" An Event of Default as defined in paragraph 19 of this Deed of Trust.

    **1.5.** "**Environmental Laws.**" Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j); the California Hazardous Waste Treatment Reform Act of 1995 (Stats 1995, ch 638 (SB 1222-Calderon)); the California Unified Hazardous Waste and Hazardous Materials Management Regulatory Program (Stats 1993, ch 418 (SB 1082-Calderon)); the Carpenter-Presley-Tanner Hazardous Substance Account Act (California Health and Safety Code §§ 25300-25395.15); the California Expedited Remedial Action Reform Act of 1994 (California Health and Safety Code §§ 25396-25399.2); and the Porter-Cologne Water Quality Control Act (California Water Code §§ 13000-14076).

    **1.6.** "**Fixtures.**" All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land and Improvements under the laws of the State of California, including the California Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

    **1.7.** "**Governmental Authority.**" Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

---

© 2007 Geraci Law Firm; All Rights Reserved.

                Rev. 01/16
                Borrowers Initials

1.8. **"Governmental Requirements."** Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

1.9. **"Hazardous Substance."** Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous wastes" in California Health and Safety Code §25117 and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" in California Civil Code section 2929.5; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (e) substances defined as "medical wastes" in the Medical Waste Management Act (Chapter 6.1 of the California Health and Safety Code); (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real property adjacent to it.

1.10. **"Impositions."** All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Deed of Trust may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

1.11. **"Improvements."** Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Deed of Trust.

1.12. **"Indebtedness."** The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.12.1. The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

1.12.2. This Deed of Trust and all other Loan Documents;

1.12.3. All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.12.4. Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Deed of Trust, including, but not limited to, funds advanced to protect the security or priority of the Deed of Trust; and

1.12.5. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

© 2007 Geraci Law Firm; All Rights Reserved.

3

_BF_ _GP_ Rev. 01/16
Borrowers Initials

1.13. "**Land**." The real estate or any interest in it described in Exhibit A attached to this Deed of Trust and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

1.14. "**Leases**." Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

1.15. "**Legal Requirements**." Collectively, (a) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, joint venture, trust, limited liability company, or other form of business association (if either, both, or all, by any of same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

1.16. "**Lender**." The named Lender in this Deed of Trust and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Deed of Trust, whether or not named as Lender in this Deed of Trust, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

1.17. "**Loan**." The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

1.18. "**Loan Documents**." Collectively, this Deed of Trust, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

1.19. "**Mortgaged Property**." The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as   11802 Ellice Street, Malibu, California 90265,
   **APN: 700-0-260-065 ("Mortgaged Property")**

together with:

1.19.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or

© 2007 Geraci Law Firm; All Rights Reserved.

4

*BF* *JR* Rev. 01/16
Borrowers Initials

any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

    1.19.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

    1.19.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

    1.19.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

    1.19.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

    1.19.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

    1.19.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Deed of Trust or are required to be maintained by Borrower as provided below in this Deed of Trust; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

    1.19.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit A attached to this Deed of Trust (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

    1.19.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Land or other Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Land or other Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all

---

© 2007 Geraci Law Firm; All Rights Reserved.

5

Rev. 01/16
Borrowers Initials

amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Land, Fixtures, Personalty, or other Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Land, Fixtures, Personalty, or other Mortgaged Property;

    1.19.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

    1.19.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

    1.19.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in Division 9 of the California Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

    1.19.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

    1.19.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

    1.19.15. All proceeds of any of the foregoing.

    As used in this Deed of Trust, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

    **1.20.** **"Note."** The Promissory Note payable by Borrower to the order of Lender in the principal amount of **Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00), which matures on January 1, 2018,** evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note.

    **1.21.** **"Obligations."** Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Deed of Trust whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Deed of Trust.

    The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Deed of Trust, executed by Borrower and any guarantor of the Loan, which is not secured by this Deed of Trust.

    **1.22.** **"Permitted Encumbrances."** At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in

---

© 2007 Geraci Law Firm; All Rights Reserved.

6

Rev. 01/16
Borrowers Initials

Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Deed of Trust; and (c) liens in favor of or consented to in writing by Lender.

1.23. **"Person."** Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

1.24. **"Personalty."** All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the California Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the California Uniform Commercial Code.

1.25. **"Rents."** All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

1.26. **"Water Rights."** All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Deed of Trust shall have the meaning given them in the Note dated of even date herewith between Borrower and Lender.

**2.    Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under paragraph 5 of this Deed of Trust; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's

7

© 2007 Geraci Law Firm; All Rights Reserved.

_____ _____ Rev. 01/16
Borrowers Initials

lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialmen's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Deed of Trust.

3.   **Use of Mortgaged Property.**   Unless otherwise required by Governmental Requirements or unless Lender otherwise consents in writing, Borrower shall not allow changes in the use of the Mortgaged Property from that which is contemplated by Borrower and Lender at the time of execution of this Deed of Trust, as specified in the loan application and the Loan Documents. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

4.   **Insurance.**

   4.1.   **Casualty Insurance.**   Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

      4.1.1.   Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in paragraph 4.9) of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

      4.1.2.   Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

      4.1.3.   Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

      4.1.4.   Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

      4.1.5.   During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described in paragraph 4.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

      4.1.6.   Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Land is located.

---

© 2007 Geraci Law Firm; All Rights Reserved.

8

Rev. 01/16
Borrowers Initials

**4.2. Liability Insurance.** Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least $5,000,000.00 combined single limit, or such greater amount as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

**4.3. Other Insurance.** Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

**4.4. Form of Policies.** All insurance required under this paragraph 4 shall be fully paid for and nonassessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of California, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better. All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender and Trustee as insureds; and (d) include such deductibles as Lender may approve. If a policy required under this paragraph contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

**4.5. Duplicate Originals or Certificates.** Duplicate original policies evidencing the insurance required under this paragraph 4 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be delivered to Lender under this paragraph 4.5, Borrower may deliver an underlier of any blanket policy, and Borrower may also deliver original certificates from the issuing insurance company, evidencing that such policies are in full force and effect and containing information that, in Lender's reasonable judgment, is sufficient to allow Lender to ascertain whether such policies comply with the requirements of this paragraph.

**4.6. Increased Coverage.** If Lender determines that the limits of any insurance carried by Borrower are inadequate or that additional coverage is required, Borrower shall, within 10 days after written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7. No Separate Insurance.** Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this paragraph 4 unless endorsed in favor of Trustee and Lender as required by this paragraph and otherwise approved by Lender in all respects.

**4.8. Transfer of Title.** In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this paragraph 4 or otherwise then in force with respect to the Mortgaged Property and all proceeds

---

© 2007 Geraci Law Firm; All Rights Reserved

9

Rev. 01/16
Borrowers Initials

payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

**4.9.    Replacement Cost.** For purposes of this paragraph 4, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**4.10.    Approval Not Warranty.** No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

**4.11.    Lender's Right to Obtain.** Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender and Trustee with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender and Trustee, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**4.12.    Duty to Restore After Casualty.** If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**5.    Condemnation and Insurance Proceeds.**

**5.1.    Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

---

© 2007 Geraci Law Firm; All Rights Reserved.

10

_____    _____ Rev. 01/16
Borrowers Initials

**5.2.** **Insurance Payments**. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

**5.2.1.** Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of one of which shall constitute a default under this Deed of Trust, the Note, and any Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this paragraph 5 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

**5.2.2.** If fewer than all conditions (a) through (i) in paragraph 5.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this paragraph 5.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in paragraph 5.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

**5.3.** **Material Loss Not Covered**. If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

**5.4.** **Total Condemnation Payments**. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other

---

© 2007 Geraci Law Firm; All Rights Reserved.

11

*BF* *W* Rev. 01/16
Borrowers Initials

total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, until the Indebtedness secured by this Deed of Trust has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Deed of Trust shall be paid to Borrower as its interest may then appear.

     **5.5.**   **Partial Condemnation Payments.**  All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds. The first such portion shall be applied to the sums secured by this Deed of Trust, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower. Any dispute as to the fair market value of the Mortgaged Property shall be settled by arbitration in accordance with the Real Estate Valuation Arbitration Rules of the American Arbitration Association.

     **5.6.**   **No Cure or Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Deed of Trust shall not be construed to cure or waive any default or notice of default under this Deed of Trust or invalidate any act done under any such default or notice.

**6.**    **Taxes and Other Sums Due.**  Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Deed of Trust or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Deed of Trust, whether or not specified in this Deed of Trust.

     On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 6(a) through (c), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this paragraph 6, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Deed of Trust to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

**7.**    **Leases of Mortgaged Property by Borrower.**  At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Deed of Trust; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of

© 2007 Geraci Law Firm; All Rights Reserved.

12

Rev. 01/16
Borrowers Initials

setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. In accordance with section 19.13 below, any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust. , then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

8.    **Right to Collect and Receive Rents.** Despite any other provision of this Deed of Trust, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Deed of Trust or in the performance of any of the Obligations, and Lender shall have the rights set forth in California Civil Code §2938 regardless of whether declaration of default has been delivered to Trustee as provided in paragraph 21 of this Deed of Trust, and without regard to the adequacy of the security for the Indebtedness secured by this Deed of Trust. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Deed of Trust, after execution and delivery of declaration of default and demand for sale as provided in this Deed of Trust or during the pendency of trustee's sale proceedings under this Deed of Trust, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Deed of Trust, in such order as Lender may decide. Nothing in this Deed of Trust, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Deed of Trust to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable

---

13

© 2007 Geraci Law Firm; All Rights Reserved.                Rev. 01/16
                                                                              Borrowers Initials

on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

9.      **Funds for Taxes and Insurance.** If Borrower is in default under this Deed of Trust or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Deed of Trust as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Deed of Trust in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this paragraph shall be deemed to affect any right or remedy of Lender under any other provision of this Deed of Trust or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Deed of Trust. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this paragraph is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this paragraph.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Deed of Trust. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Deed of Trust, apply such amounts or any portion of it to any Indebtedness secured by this Deed of Trust, and such application shall not be construed to cure or waive any default or notice of default under this Deed of Trust.

If Lender requires deposits to be made under this paragraph 9, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Deed of Trust, Lender shall have the right to transfer all amounts deposited under this paragraph 9 to the purchaser or assignee. After such a transfer, Lender shall be

---

© 2007 Geraci Law Firm; All Rights Reserved.

14

Rev. 01/16
Borrowers Initials

relieved and have no further liability under this Deed of Trust for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**10.    Assignment of Causes of Action, Awards, and Damages.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Deed of Trust was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Deed of Trust. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this paragraph 10, Lender may apply or release the balance of any funds received by it under this paragraph, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this paragraph and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

**11.    Defense of Deed of Trust; Litigation.** Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents. Despite any other provision of this Deed of Trust, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorney Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Deed of Trust, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if neither Lender nor Trustee elects to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorney Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Deed of Trust or to enforce any of its terms or provisions.

**12.    Borrower's Failure to Comply With Deed of Trust.** If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the

---

© 2007 Geraci Law Firm; All Rights Reserved.

15

Rev. 01/16
Borrowers Initials

performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

13.      **Sums Advanced to Bear Interest and to Be Secured by Deed of Trust.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

14.      **Inspection of Mortgaged Property.** In addition to any rights Lender may have under California Civil Code §2929.5, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

15.      **Financial Statements; Estoppel Certificates.**

15.1.      **Borrower's Financial Statements.** On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower, beginning with the fiscal year first ending after the date of recordation of this Deed of Trust; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, and development of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

15.2.      **Recordkeeping.** Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

15.3.      **Guarantors' Financial Statements.** Except to the extent already required by paragraph 15.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of such accountant as to their accuracy. Throughout the term of

---

© 2007 Geraci Law Firm; All Rights Reserved.

16

Rev. 01/16
Borrowers Initials

this Deed of Trust, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower or guarantor as Lender may from time to time request. All financial statements of Borrower or guarantor shall be prepared in accordance with generally accepted accounting principles and practices applied on a consistent basis and shall be delivered in duplicate. Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender shall not disclose them to third parties and shall limit access to them to what is necessary to service the loan, accomplish the normal administrative, accounting, tax-reporting, and other necessary functions, to sell all or any part of the loan and to report such information as required to the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and similar entities.

     15.4.  **Estoppel Certificates.** Within 10 days after Lender's request for such information, Borrower shall execute and deliver to Lender, and to any third party designated by Lender, in recordable form, a certificate of the principal financial or accounting officer of Borrower, dated within 3 days after delivery of such statements, or the date of such request, as the case may be, reciting that the Loan Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and, except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to be fulfilled on or before the date of such certificate.

     15.5.  **Failure to Deliver Estoppel Certificate.** If Borrower fails to execute and deliver the certificate required by paragraph 15.4 within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

     15.6.  **Reliance on Estoppel Certificate.** Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender under paragraph 15.5, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by this Deed of Trust or in the Mortgaged Property, and by any other person, without independent investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

     15.7.  **No Waiver of Default or Rights.** Lender's exercise of any right or remedy provided by this paragraph 15 shall not constitute a waiver of, or operate to cure, any default by Borrower under this Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed of Trust or Governmental Requirements.

16.    **Uniform Commercial Code Security Agreement.** This Deed of Trust is intended to be and shall constitute a security agreement under the California Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the California Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law.

---

© 2007 Geraci Law Firm; All Rights Reserved.

17

Rev. 01/16
Borrowers Initials

Borrower agrees that Lender may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of California and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Deed of Trust or executed duplicate original of this Deed of Trust, or a copy certified by a County Recorder in the State of California, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the California Uniform Commercial Code and, at Lender's option, may also invoke the remedies in paragraph 21 of this Deed of Trust as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the California Uniform Commercial Code or of the remedies in paragraph 21 of this Deed of Trust.

17.    **Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing under California Commercial Code §9502(c), as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

18.    **Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Deed of Trust, to the fullest extent permitted by Governmental Requirements.

19.    **Events of Default.** The term Event of Default as used in this Deed of Trust means the occurrence or happening, at any time and from time to time, of any one or more of the following:

19.1.    **Payment of Indebtedness.** Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than 10 days after the date such payment was due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

19.2.    **Performance of Obligations.** The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required.

19.3.    **Judgment.** If any final judgment, order, or decree is rendered against Borrower or a guarantor and is not paid or executed on, or is not stayed by perfection of an appeal or other appropriate action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

19.4.    **Voluntary Bankruptcy.** If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

19.5.    **Involuntary Bankruptcy.** If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 30 days after its entry.

---

© 2007 Geraci Law Firm; All Rights Reserved.    18    Rev. 01/16
Borrowers Initials

**19.6.** **Foreclosure of Other Liens.** If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 30 days after institution of such foreclosure proceedings.

**19.7.** **Sale, Lease, Encumbrance, or Other Transfer.** Any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.

**19.8.** **Title and Lien Priority.** If Borrower's title to any or all of the Mortgaged Property or the status of this Deed of Trust as a second position lien and security interest on the Mortgaged Property is endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this paragraph if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Deed of Trust, as determined by Lender.

**19.9.** **Other Defaults.** The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

**19.10.** **Levy on Assets.** A levy on any of the assets of Borrower or any guarantor, and such levy is not stayed or abated within 30 days after such levy.

**19.11.** **Breach of Representations.** The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

**19.12.** **Default Under Prior Deed of Trust, Security Instrument, or Lien.** The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

**19.13** **Violation of Governmental Requirements.** The failure of Borrower, any tenant, or any other occupant of the Mortgage Property to comply with any Governmental Requirement. In accordance with section 7 above, any potential violation by a tenant or other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

20.    **Acceleration on Transfer or Encumbrance.**

**20.1.** **Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers, or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower equal to twenty five percent (25%) or more of the beneficial ownership interests of Borrower outstanding at the date of this Deed of Trust; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

---

19

© 2007 Geraci Law Firm; All Rights Reserved.    _BF_ _QP_ Rev. 01/16
Borrowers Initials

**20.2.  Replacement Personalty.** Despite the provisions of paragraph 20.1, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Deed of Trust in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Deed of Trust constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Deed of Trust has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements, including §9334 of the California Commercial Code.

**20.3.  Permitted Encumbrances.** If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance provision set forth in paragraph 20.1 shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Note); as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

**21.     Acceleration and Sale on Default.** If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Deed of Trust immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Lender and reciting facts demonstrating such default by Borrower, together with a written notice of default and election to sell the Mortgaged Property. Lender shall also deposit with Trustee the Note, this Deed of Trust, and documents evidencing any additional advances or expenditures secured by this Deed of Trust. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts and statements in such affidavit or declaration of default and shall cause such notice of default and election to sell to be recorded as required by Governmental Requirements. On the expiration of such period as may then be required by Governmental Requirements following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Governmental Requirement, Trustee, without demand on Borrower, shall sell the Mortgaged Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may determine or Lender may direct (Borrower waives any right it may have under Governmental Requirements to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorney Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Trustee shall deliver to the purchaser at such public auction its deed conveying the Mortgaged Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact concerning notices shall be conclusive proof of its truthfulness. Any person, including Borrower, Trustee, or Lender, may purchase at such sale.

The proceeds or avails of any sale made under or by virtue of this Deed of Trust, together with any other sums secured by this Deed of Trust, which then may be held by the Trustee or Lender or any other person, shall be applied as follows: (1) To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorney Fees, and reasonable compensation to Lender

---

© 2007 Geraci Law Firm; All Rights Reserved.

20

Rev. 01/16
Borrowers Initials

and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Deed of Trust, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold; (2) to the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid; (3) to the payment of any other Indebtedness required to be paid by Borrower under any provision of this Deed of Trust, the Note, or any of the other Loan Documents; and (4) to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

22.    **Borrower's Obligation to Notify Lender.**

22.1    **Bankruptcy, Insolvency, Transfer, or Encumbrance.** Borrower shall notify Lender in writing, at or before the time of the occurrence of any event described in paragraphs 19 and 20 of this Deed of Trust, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

22.2    **Government Notice.** Borrower shall give immediate written notice to Lender of any notice, proceeding or inquiry by any Governmental Authority. Borrower shall provide such notice to Lender within five (5) days of Borrower's knowledge, constructive or actual, of any such notice, proceeding or inquiry by any Government Authority.

23.    **Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Deed of Trust, and despite any other provision of this Deed of Trust, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Deed of Trust and to establish the order in which all or any part of the Indebtedness secured by this Deed of Trust is satisfied from the proceeds realized on the exercise of the remedies provided in this Deed of Trust. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Deed of Trust waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Deed of Trust or otherwise provided by Governmental Requirements.

24.    **Environmental Matters.**

24.1.    **Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that:

24.1.1. The Mortgaged Property and Borrower are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any Environmental Laws.

24.1.2. Borrower has not obtained and is not required by any Environmental Laws to obtain any permits or licenses to construct or use the Mortgaged Property or the Improvements.

24.1.3. Borrower has conducted an appropriate inquiry into previous uses and ownership of the Mortgaged Property, and after such inquiry determined that no Hazardous Substance has been disposed of, transported, or released on or at the Mortgaged Property.

24.1.4. No part of the Mortgaged Property is being used or, to the knowledge of Borrower, has been used at any previous time, for the disposal, storage, treatment, processing, transporting, or other handling of Hazardous Substances, nor is any part of the Mortgaged Property affected by any Hazardous Substance contamination.

24.1.5. To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

24.1.6. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed,

---

© 2007 Geraci Law Firm; All Rights Reserved.    21    Rev. 01/16
Borrowers Initials

threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

24.1.7. Neither Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

24.1.8. The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

24.1.9. Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

24.1.10. Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

24.2. **Survival of Representations and Warranties.** The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

24.3. **Notice to Lender.** Borrower shall give prompt written notice to Lender of:

24.3.1. Any proceeding or inquiry by any Governmental Authority (including, without limitation, the California State Department of Health Services) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

24.3.2. All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

24.3.3. Any notice given to Borrower under California Civil Code §851(b); and

24.3.4. Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

24.4. **Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

24.5. **Borrower's Indemnity.** Borrower shall indemnify, defend, and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost, expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

25. **Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Deed of Trust of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Deed of Trust, Lender's security for the payment of

© 2007 Geraci Law Firm; All Rights Reserved.

22

Rev. 01/16
Borrowers Initials

Case 2:20-cv-09563-ODW-JC    Document 1-1    Filed 10/19/20    Page 68 of 202    Page
Branch :FZ1,User :TZ0                   Comment:                                    Station Id :BXRN
Case 2:20-cv-09563-ODW-JC    Document 1-1    Filed 10/19/20    Page 68 of 202    Page
Main Document    Page 44 of 69

the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

26. **Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Deed of Trust, or (b) the lien of this Deed of Trust on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Deed of Trust, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust.

27. **Duty to Reconvey.** On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Deed of Trust to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Deed of Trust. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Deed of Trust.

28. **Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Deed of Trust, the book and page or instrument number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this paragraph for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

29. **No Waiver by Lender.** No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by two authorized officers of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by this Deed of Trust after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Obligations of Borrower under the Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by this Deed of Trust, or the exercise of Lender's right to enter the Mortgaged Property and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its

---

© 2007 Geraci Law Firm; All Rights Reserved.

23

Rev. 01/16
Borrowers Initials

Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing.

30.     **Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Deed of Trust or in the performance of any Obligations under this Deed of Trust or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under paragraph 9 of this Deed of Trust; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this paragraph shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Deed of Trust and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Deed of Trust; or (iii) the lien or priority of the lien of this Deed of Trust. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this paragraph.

Whenever Lender's consent or approval is specified as a condition of any provision of this Deed of Trust, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

31.     **Waiver of Right of Offset.** No portion of the Indebtedness secured by this Deed of Trust shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits of California Code of Civil Procedure section 431.70, which provides:

Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred by failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is

---

© 2007 Geraci Law Firm; All Rights Reserved.

24

Rev. 01/16
Borrowers Initials

barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9.

32.    **Future Advances.**  On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Deed of Trust when evidenced by promissory notes reciting that such note(s) are secured by this Deed of Trust.

33.    **Prepayment.**  If the Note secured by this Deed of Trust provides for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under this Deed of Trust and Lender, for that reason or by reason of paragraphs 20 and 21 of this Deed of Trust, shall have declared all sums secured by this Deed of Trust immediately due and payable.

34.    **Additional Borrower Representations.**  To induce Lender to enter into this Deed of Trust, the Note, and the other Loan Documents and to make the Loan, Borrower makes the following representations and warranties, which are deemed made as of both the date and the recordation of this Deed of Trust:

34.1.    **Capacity.**  Borrower and the individuals executing Loan Documents on Borrower's behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe the provisions of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, and to carry out the contemplated transactions.

34.2.    **Authority and Enforceability.**  Borrower's execution, delivery, and performance of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan have been duly authorized by all necessary corporate or other business entity action and do not and shall not require any registration with, consent, or approval of, notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain on or before the recordation of this Deed of Trust all necessary Governmental Authority and other approvals necessary for Borrower to comply with the Loan Documents. This Deed of Trust, the Note, and the other Loan Documents executed in connection with the Loan, when executed and delivered by Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower enforceable in accordance with their respective terms.

34.3.    **Compliance With Other Instruments.**  The execution and delivery of this Deed of Trust and the other Loan Documents, and compliance with their respective terms, and the issuance of the Note and other Loan Documents as contemplated in this Deed of Trust, shall not result in a breach of any of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as created by this Deed of Trust and the other Loan Documents) on any properties of Borrower, or constitute a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any holder or holders of indebtedness may declare the same due and payable under, any indenture, agreement, order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may be bound or affected.

34.4.    **Compliance With Law.**  The execution and delivery of this Deed of Trust, the Note, and the other Loan Documents, or any other document, agreement, certificate, or instrument to which Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under, or create any lien or charge under any provision of any Governmental Requirements to which it is subject and shall not violate any of the Governmental Requirements.

34.5.    **Material Adverse Events.**  Since the date of the financial statements delivered to Lender before recordation of this Deed of Trust, neither the condition (financial or otherwise) nor the business of Borrower and the Mortgaged Property have been materially adversely affected in any way.

34.6.    **Litigation.**  There are no actions, suits, investigations, or proceedings pending or, to Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at

© 2007 Geraci Law Firm; All Rights Reserved.

25

Rev. 01/16
Borrower's Initials

law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect or the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Deed of Trust, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

34.7.  **No Untrue Statements.**  All statements, representations, and warranties made by Borrower in this Deed of Trust or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and on and as of the recordation of this Deed of Trust, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

34.8.  **Policies of Insurance.**  Each copy of the insurance policies relating to the Mortgaged Property delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Deed of Trust, and no amendments or modifications of said documents or instruments not included in such copies have been made, except as stated in this paragraph 34.8 and (b) has not been terminated and is in full force and effect. Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Deed of Trust to keep unimpaired its rights thereunder.

34.9.  **Financial Statements.**  All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes such statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adversely affect or could potentially in the future affect the Mortgaged Property or the business prospects, profits, or condition (financial or otherwise) of Borrower or any guarantor or Borrower's abilities to perform the Obligations and pay the Indebtedness.

34.10.  **Water Rights.**  (a) Borrower is the sole owner of record of the Water Rights; (b) the Water Rights are appurtenant to the Mortgaged Property and are free and clear of all liens and encumbrances except as set forth in the title report described in paragraph 1.22; (c) the Water Rights are sufficient to satisfy all water requirements of the development of the Mortgaged Property as presently contemplated; (d) the Water Rights include all water rights appurtenant to the Mortgaged Property; (e) Borrower has received a water service commitment from the applicable local water district, guaranteeing water service for the Mortgaged Property in an amount necessary to satisfy the requirements for such property in its currently contemplated final state of development; and (f) on recordation of this Deed of Trust with the county recorder, Lender shall have a valid, first priority, perfected security interest in the Water Rights.

34.11.  **Taxes.**  Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

34.12.  **Leases.**  If the Mortgaged Property includes a leasehold estate, Borrower has not and shall not surrender, terminate, cancel, waive, accept waiver, change, supplement, grant subleases of, alter, surrender, or amend, and shall comply with all terms, covenants, and conditions in the Leasehold.

34.13.  **Further Acts.**  Borrower shall, at its sole cost and expense, and without expense to Trustee or Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds,

---

© 2007 Geraci Law Firm; All Rights Reserved.

26

Rev. 01/16
Borrowers Initials

conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Trustee or Lender shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Trustee the Mortgaged Property and rights, and as to Lender the security interest as to the Personalty, conveyed or assigned by this Deed of Trust or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering, or recording this Deed of Trust and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of this Deed of Trust on the Mortgaged Property.

    **34.14. Filing Fees.** Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Deed of Trust, the other Loan Documents, any supplemental deed of trust or mortgage, or any instrument of further assurance.

    **34.15. Entity Compliance.** As long as it is the owner of the Mortgaged Property, Borrower, if a corporation, limited liability company, or partnership, shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to the Mortgaged Property or any part of it.

**35.**    **Governing Law.** This instrument shall be deemed to have been made in the State of California, and the validity of this Deed of Trust and the other Loan Documents, their construction, interpretation, and enforcement, and the parties' rights under such documents and concerning the Mortgaged Property, shall be decided under, governed by, and construed in accordance with the laws of the State of California. The parties agree that all actions or proceedings arising in connection with this Deed of Trust and the other Loan Documents shall be tried and litigated only in the state courts located in the County in which notice shall be sent to Lender pursuant this Deed of Trust, or the applicable federal district court that covers said County. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

**36.**    **Taxation of Deeds of Trust.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Deed of Trust, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Deed of Trust.

**37.**    **Mechanics' Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Deed of Trust shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanics', laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

**38.**    **Brokerage.** Borrower represents and warrants to Lender that Borrower has not dealt with any Person, other than the parties identified in the final settlement statement, who are or may be entitled to

---

© 2007 Geraci Law Firm; All Rights Reserved.

27

*BF* *CK* Rev. 01/16
Borrowers Initials

any finder's fee, brokerage commission, loan commission, or other sum in connection with the execution of this Deed of Trust, the consummation of the transactions contemplated by this Deed of Trust, or the making of the Loan secured by this Deed of Trust by Lender to Borrower, and Borrower indemnifies and agrees to hold Lender harmless from and against any and all loss, liability, or expense, including court costs and Attorney Fees, that Lender may suffer or sustain if such warranty or representation proves inaccurate in whole or in part.

39.    **Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Deed of Trust, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

40.    **Notices.** Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

| Lender: | Genova Capital, Inc. |
| | At the address provided above |
| Borrower: | Brigham Field and Colette Pelissier |
| | At the address provided above |

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

41.    **Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Deed of Trust.

42.    **Application of Payments.** Except as otherwise expressly provided by Governmental Requirements or any other provision of this Deed of Trust, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

43.    **Remedies Are Cumulative.** Each remedy in this Deed of Trust is separate and distinct and is cumulative to all other rights and remedies provided by this Deed of Trust or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

44.    **Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Deed of Trust shall be the joint and several obligations of each such Person.

© 2007 Geraci Law Firm; All Rights Reserved.

28

Rev. 01/16
Borrowers Initials

45.    **Severability.** If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

46.    **Delegation of Authority.** Whenever this Deed of Trust provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

47.    **General Provisions.**

47.1.    **Successors and Assigns.** Subject to paragraphs 19 and 20 of this Deed of Trust, this Deed of Trust applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Deed of Trust.

47.2.    **Meaning of Certain Terms.** As used in this Deed of Trust and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Deed of Trust as a whole, rather than any particular provision of it.

47.3.    **Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Deed of Trust, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

47.4.    **Gender and Number.** Wherever the context so requires in this Deed of Trust, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

47.5.    **Captions.** Captions and paragraph headings used in this Deed of Trust are for convenience of reference only, are not a part of this Deed of Trust, and shall not be used in construing it.

47.6.    **Time Is of the Essence.** As a material inducement and consideration to the parties entering into this Deed of Trust, and but for this provision the parties would not enter into this Deed of Trust, the parties agree that the performance in a timely manner of each deadline set forth in this Deed of Trust before its expiration is of crucial importance to the parties. Failure by a party to timely perform an obligation before the deadline set forth in this Deed of Trust (no matter for what reason, nor how soon thereafter it may have been performed, nor the lack of prejudice to the other party as the result of such nonperformance) shall result in a default by the nonperforming party or the failure of a condition, as appropriate. The parties expressly waive any equitable relief with respect to a missed deadline.

48.    **Leasehold Provisions.**

48.1.    **Leasehold Estate.** If the security for this Deed of Trust is a leasehold estate demised by a lease (the "Leasehold"), this Deed of Trust shall be a lien on all present and future right, title, estate, and interest of Borrower in the Mortgaged Property and Improvements covered by the Leasehold and on all Mortgaged Property interests acquired by Borrower as a result of the exercise of any option in the Leasehold or as amended, in the same manner and to the same extent as if the Mortgaged Property encompassed in the Leasehold and option agreements had been held in fee by Borrower at the time of the execution of this Deed of Trust, and Borrower agrees not to amend, change, or modify its leasehold interest, or any of its terms, or to exercise any option to purchase, or agree to do so, without having obtained Lender's prior written consent. In a violation of this provision, Lender may, at its option, declare all sums secured by this Deed of Trust immediately due and payable. Consent to any amendment, change, or modification, or a waiver of the right to require such consent in one instance, shall not be a waiver of the right to require such consent at a subsequent time. The term "Mortgaged Property" as used in this Deed of Trust means such leasehold estate or any other present or future interest of Borrower in the Mortgaged Property whenever the context requires.

48.2.    **Compliance With Leasehold.** In the event that the security for this Deed of Trust is a leasehold estate, Borrower covenants and agrees as follows: (a) to promptly and faithfully observe, perform, and comply with all Leasehold terms, covenants, and provisions on its part to be observed, performed, and complied with, at the times set forth in the Leasehold; (b) not to do, permit, suffer, or

© 2007 Geraci Law Firm; All Rights Reserved.    29    Rev. 01/16
Borrowers Initials

Case 2:20-cv-09563-ODW-JC    Document 1-1    Filed 10/19/20    Page 75 of 202    Page

Branch :F7L User :TZ01    Comment:    Station Id :BXRN
Case 9:20-bk-11062220-DS    Doc 126    Filed 05/15/20    Entered 06/15/20 14:13:34    Desc
Main Document    Page 51 of 59

refrain from doing anything, as a result of which, there would be a default under or breach of any of the terms of the Leasehold; (c) not to cancel, surrender, modify, amend, or in any way alter or permit the alteration of any of the terms of the Leasehold; (d) to give Lender immediate notice of any default by anyone under the Leasehold and to promptly deliver to Lender copies of each notice of default and all other notices, communications, plans, specifications, and other similar instruments received or delivered by Borrower in this connection; (e) to furnish to Lender such information and evidence as Lender may reasonably require for Borrower's due observance, performance, and compliance with the Leasehold terms, covenants, and provisions; (f) that any default of the tenant under the Leasehold shall constitute an Event of Default under this Deed of Trust; and (g) to give immediate written notice to Lender of the commencement of any remedial proceedings under the Leasehold by any party to it and, if required by Lender, to permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings. Borrower expressly transfers and assigns to Lender the benefit of all covenants in the Leasehold, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants or any other covenants in the Leasehold.

48.3.    **Borrower's Warranties and Representations.**    With respect to the Leasehold, Borrower warrants and represents as follows: (a) the Leasehold is in full force and effect, unmodified by any writing or otherwise, except as specifically set forth in Exhibit A; (b) all rent, additional rent, and other charges reserved in the Leasehold have been paid to the extent they are payable to the date of this Deed of Trust; (c) Borrower enjoys the quiet and peaceful possession of the Mortgaged Property demised by the Leasehold; (d) Borrower is not in default under any Leasehold term and, to the best of its knowledge, there are no circumstances that, with the passage of time or the giving of notice or both, would constitute an Event of Default under the Leasehold; (e) to the best of Borrower's knowledge, the landlord under the Leasehold is not in default under any Leasehold term or provision the landlord is required to observe or perform.

48.4.    **Assignments to Lender.**    If Borrower files any petition or action for relief under any bankruptcy, reorganization, insolvency, moratorium law, or any other law or laws for the relief of or relating to debtors, on demand by Lender, Borrower covenants to transfer and assign to Lender its leasehold estate and the Leasehold in lieu of rejection of the Leasehold by Borrower and covenants to assign to Lender its right to accept or reject the Leasehold and to apply for any extension of time within which to accept or reject the Leasehold. These assignments to Lender shall be automatic on Lender's demand. If Lender demands the assignment of the Leasehold under this Deed of Trust, Lender covenants to cure any defaults outstanding under the Leasehold after the Leasehold is assigned to Lender.

48.5.    **Default Under Leasehold.**    If Borrower defaults in performing any of its obligations under the Leasehold, including, without limitation, any default in the payment of rent and other charges and impositions made payable by the tenant under the Leasehold, then, in each and every case, Lender may, at its option and without notice, cause the default or defaults to be remedied and otherwise exercise any and all of the rights of Borrower under the Leasehold in the name of and on behalf of Borrower. Borrower shall, on demand, reimburse Lender for all advances made and expenses incurred by Lender in curing any such default (including, without limitation, reasonable Attorney Fees), together with interest computed at the rate provided for in the Note from the date that an advance is made or expense is incurred, to and including the date the same is paid. Lender shall have no duty to prevent the termination of the leasehold estate by the landlord. If the landlord terminates the leasehold estate, Lender shall have the right, at its option, to declare all sums secured by this Deed of Trust immediately due and payable and immediately bring an action on the Note, provided there is no other real property security for the Note.

48.6.    **Options.**    Borrower shall give Lender notice of its intention to exercise each and every option to extend the term of the Leasehold at least 20 days but not more than 60 days before expiration of the time to exercise such option under the Leasehold. If Borrower intends to extend the term of the Leasehold, it shall deliver to Lender, with the notice of such decision, a copy of the notice of extension delivered to the landlord under the Leasehold. If Borrower does not intend to extend the term of the

30

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

Leasehold, Lender may, at its option, exercise the option to extend in the name and on behalf of Borrower.

**48.7.** **No Merger/Attorney-in-Fact.** It is hereby agreed that the fee title, the leasehold estate, and the subleasehold estate in the Mortgaged Property demised by the Leasehold shall not merge but shall be kept separate and distinct, despite the union of these estates in either the landlord under the Leasehold, Borrower, or a third party, whether by purchase or otherwise. If Borrower acquires the fee title or any other estate, title, or interest in the Mortgaged Property demised by the Leasehold or any part of it, the lien of this Deed of Trust shall attach to, cover, and be a lien on such acquired estate, title, or interest and it shall simultaneously be and become a part of the Mortgaged Property with the same force and effect as if specifically encumbered in this Deed of Trust. Borrower agrees to execute all instruments and documents that Lender may reasonably require to ratify, confirm, and further evidence Lender's lien on the acquired estate, title, or interest. Furthermore, Borrower appoints Lender as its true and lawful attorney-in-fact to execute and deliver all such instruments and documents in the name and on behalf of Borrower. This power, being coupled with an interest, shall be irrevocable as long as any amounts secured by this Deed of Trust remain unpaid.

**48.8.** **Interests in Successor Leasehold.** If the Leasehold is canceled or terminated, and if Lender or its nominee shall acquire an interest in any new lease of the Mortgaged Property demised by the Leasehold, Borrower shall have no right, title, or interest in or to the new lease or the leasehold estate created by such new lease.

**48.9.** **Estoppel Certificate.** Borrower shall use its best efforts to obtain and deliver to Lender, within 20 days after written demand by Lender, an estoppel certificate from the landlord under the Leasehold setting forth (a) the name of the tenant under the Leasehold, (b) that the Leasehold has not been modified or, if it has been modified, the date of each modification (together with copies of each such modification), (c) the basic rent payable under the Leasehold, (d) the date to which the tenant paid all rental charges under the Leasehold, and (e) whether there are any alleged defaults of the tenant under the Leasehold and, if there are, setting forth their nature in reasonable detail.

**48.10.** **Limitations on Lender's Liability Under Leasehold.** Despite anything to the contrary in this Deed of Trust, this Deed of Trust shall not constitute an assignment of the Leasehold within the meaning of any provision of the Leasehold prohibiting its assignment, and Lender shall have no liability or obligation under the Leasehold because of its acceptance of this Deed of Trust. Lender shall be liable for the tenant's obligations arising under the Leasehold for only that period of time that Lender is in possession of the Mortgaged Property covered by the Leasehold or has acquired, by foreclosure or otherwise, and is holding all of Borrower's right, title, and interest in the Mortgaged Property covered by the Leasehold.

**49.** **Improper Financial Transactions.**

**49.1** Borrower is, and shall remain at all times, in full compliance with all applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, and any amendments or successors thereto and any applicable regulations promulgated thereunder (collectively, the "Financial Control Laws"), including but not limited to those related to money laundering offenses and related compliance and reporting requirements (including any money laundering offenses prohibited under the Money Laundering Control Act, 18 U.S.C. Section 1956 and 1957 and the Bank Secrecy Act, 31 U.S.C. Sections 5311 et seq.) and the Foreign Assets Control Regulations, 31 C.F.R. Section 500 et seq.

**49.2** Borrower represents and warrants that: Borrower is not a Barred Person (hereinafter defined); Borrower is not owned or controlled, directly or indirectly, by any Barred Person; and Borrower is not acting, directly or indirectly, for or on behalf of any Barred Person.

**49.3** Borrower represents and warrants that it understands and has been advised by legal counsel on the requirements of the Financial Control Laws.

**49.4** Under any provision of this Deed of Trust or any of the other Loan Documents where Lender shall have the right to approve or consent to any particular action, including, without limitation

---

31

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 07/16
Borrowers Initials

any (A) sale, transfer, assignment of the Mortgaged Property, or any direct or indirect ownership interest in Borrower, (B) leasing of the Mortgaged Property, or any portion thereof, or (C) incurring any additional financing secured by Mortgaged Property, or any portion thereof, or by any direct or indirect ownership interest in Borrower, Lender shall have the right to withhold such approval or consent, in its sole discretion, if the granting of such approval or consent could be construed as a violation of any of the Financial Control Laws.

49.5    Borrower covenants and agrees that it will upon request provide Lender with (or cooperate with Lender in obtaining) information required by Lender for purposes of complying with any Financial Control Laws.

49.6    As used in this Deed of Trust, the term "Barred Person" shall mean (A) any person, group or entity named as a "Specially Designated National and Blocked Person" or as a person who commits, threatens to commit, supports, or is associated with terrorism as designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), (B) any person, group or entity named in the lists maintained by the United States Department of Commerce (Denied Persons and Entities), (C) any government or citizen of any country that is subject to a United States Embargo identified in regulations promulgated by OFAC, and (D) any person, group or entity named as a denied or blocked person or terrorist in any other list maintained by any agency of the United States government.

**50.    Dispute Resolution: Waiver of Right to Jury Trial**

50.1    **ARBITRATION.**    CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

50.2    **WAIVER OF RIGHT TO JURY TRIAL.**    TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS DEED OF TRUST. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS DEED OF TRUST, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS DEED OF TRUST OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST.

BORROWER'S INITIALS:

50.3    **PROVISIONAL REMEDIES: FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in Section 50.2, above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment

---

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in Section 50.2, above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in Section 50.2, above.

**51.** **Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Deed of Trust or a breach of any clause of any agreement signed in connection with the loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**52.** **REQUEST OF NOTICE OF DEFAULT OF SENIOR LIEN.** In accordance with Section 2924b of the Civil Code of California, request is hereby made by the Trustor that a copy of any Notice of Default and a copy of any Notice of Sale under a deed of trust recorded on March 26, 2014, as Instrument Number 20140326-00038119-0, in the official records of Los Angeles County, California, affecting the Mortgaged Property executed by Brigham Field and Colette Pelissier, husband and wife, as community property with right of survivorship, as Trustor in which Banc of California, National Association, a Commercial Bank is named as Beneficiary, and Fidelity National Title as Trustee, be mailed to:

>      Genova Capital, Inc.
>      555 Corporate Drive, Suite 120
>      Ladera Ranch, California 92694

© 2007 Geraci Law Firm; All Rights Reserved.

33

Rev. 01/16
Borrowers Initials

IN WITNESS WHEREOF, Borrower has executed and delivered this Deed of Trust as of the date first written above.

**BORROWER:**

**BRIGHAM FIELD AND COLETTE PELISSIER**

Brigham Field, an individual

Colette Pelissier, an individual

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

State of California )

County of __Los Angeles__ )

On __Nov. 28, 2016__ before me, __Evelina Vardanyan, Notary Public__ Notary Public
   Date                                    Here Insert Name of the Officer

Personally Appeared __Brigham Field__ & __Colette Pelisser__
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

EVELINA VARDANYAN
Commission # 2022602
Notary Public - California
Los Angeles County
My Comm. Expires Apr 29, 2017

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                Signature of Notary Public

© 2007 Genaci Law Firm; All Rights Reserved.

35

Rev. 01/16
Borrowers Initials

EXHIBIT "A"
LEGAL PROPERTY DESCRIPTION

© 2007 Geraci Law Firm; All Rights Reserved.

36

Rev. 01/16
Borrowers Initials

Case 2:20-cv-09563-ODW-JC   Document 1-1   Filed 10/19/20   Page 82 of 202   Page

Branch :F71 User :TZ01            Comment:
Case 9:20-bk-11062-DS   Doc 126   Filed 05/05/20   Entered 05/05/20 14:35:54   Desc
                        Main Document      Page 58 of 59

Order No: 09202389-920-CMM-CM8

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 6 OF TRACT NO. 4483, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 146 PAGE(S) 19 THROUGH 22 INCLUSIVE OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

EXCEPT ONE-EIGHTH OF MINERALS, OILS, PETROLEUM, ASPHALTUM, GAS, COAL, AND OTHER HYDROCARBON SUBSTANCES, AS RESERVED BY MARBLEHEAD LAND COMPANY, IN DEED RECORDED NOVEMBER 17, 1940, IN BOOK 628, PAGE 87 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, EASEMENTS SET FORTH IN THE SECOND AMENDED AND COMPLETELY RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND EASEMENTS FOR MARISOL ("DECLARATION") RECORDED IN THE OFFICE OF SAID COUNTY RECORDER OF CALIFORNIA ON FEBRUARY 14, 2011, AS INSTRUMENT NO. 20110214-24632.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, ON AND OVER THE "COMMON AREA" AS DEFINED IN THE DECLARATION FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS AND EGRESS OF THE AMENITIES LOCATED THEREON. THE COMMON AREA IS FOR THE USE OF OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION.

Assessor's Parcel Number:    **700-0-260-065**

# EXHIBIT 4

# EXHIBIT 4

| Fill in this information to identify your case and this filing: | | |
|---|---|---|
| Debtor 1 | Brigham G. Field | |
| | First Name   Middle Name   Last Name | |
| Debtor 2 | | |
| (Spouse, if filing) | First Name   Middle Name   Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number | 9:20-bk-10622-DS | ☐ Check if this is an amended filing |

## Official Form 106A/B
## Schedule A/B: Property                                                       12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1  Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

| 1.1 | | | What is the property? Check all that apply | |
|---|---|---|---|---|
| **11802 Ellice Street** | | | ■ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property |
| Street address, if available, or other description | | | ☐ Duplex or multi-unit building | |
| | | | ☐ Condominium or cooperative | |
| | | | ☐ Manufactured or mobile home | Current value of the entire property?   Current value of the portion you own? |
| **Malibu** | **CA** | **90265-0000** | ☐ Land | **$17,900,000.00**   **$17,900,000.00** |
| City | State | ZIP Code | ☐ Investment property | |
| | | | ☐ Timeshare | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| | | | ☐ Other | |
| | | | Who has an interest in the property? Check one | |
| | | | ☐ Debtor 1 only | |
| **Ventura** | | | ☐ Debtor 2 only | |
| County | | | ☐ Debtor 1 and Debtor 2 only | |
| | | | ■ At least one of the debtors and another | ■ Check if this is community property (see instructions) |

Other information you wish to add about this item, such as local property identification number:

Debtor and his non-debtor spouse are the owners of the Property which is believed to be community property. Title to property is currently subject to a quiet title action against Genova based on a foreclosure in 2019. Debtors prevailed in unlawful detainer action after court found the foreclosure sale to be invalid.

2  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here............................................=> | **$17,900,000.00**

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on Schedule G: Executory Contracts and Unexpired Leases.

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                Best Case Bankruptcy

Debtor 1    Brigham G. Field                                    Case number (if known)    9:20-bk-10622-DS

3  Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
■ Yes

| | | |
|---|---|---|
| 3.1 Make: **BMW**<br>Model: **428i convertible**<br>Year: **2015**<br>Approximate mileage: **35,805**<br>Other information: | Who has an interest in the property? Check one<br>■ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br><br>☐ Check if this is community property<br>(see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property<br><br>Current value of the entire property?     Current value of the portion you own?<br><br>**$25,000.00**          **$25,000.00** |
| 3.2 Make: **Honda**<br>Model: **Civic**<br>Year: **2014**<br>Approximate mileage:<br>Other information:<br>**In Debtor's spouse's name only. Debtor does not believe that this asset constitutes community property but is included solely for purposes of full disclosure.** | Who has an interest in the property? Check one<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>■ At least one of the debtors and another<br><br>☐ Check if this is community property<br>(see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.<br><br>Current value of the entire property?     Current value of the portion you own?<br><br>**Unknown**          **Unknown** |
| 3.3 Make: **Mercedes Benz**<br>Model: **G500**<br>Year: **2005**<br>Approximate mileage:<br>Other information:<br>**In Debtor's spouse's name only. Debtor does not believe that this asset constitutes community property but is included solely for purposes of full disclosure.** | Who has an interest in the property? Check one<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>■ At least one of the debtors and another<br><br>☐ Check if this is community property<br>(see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.<br><br>Current value of the entire property?     Current value of the portion you own?<br><br>**Unknown**          **Unknown** |
| 3.4 Make: **Land Rover**<br>Model:<br>Year: **2011**<br>Approximate mileage:<br>Other information:<br>**In Debtor's spouse's name only. Debtor does not believe that this asset constitutes community property but is included solely for purposes of full disclosure.** | Who has an interest in the property? Check one<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>■ At least one of the debtors and another<br><br>☐ Check if this is community property<br>(see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property<br><br>Current value of the entire property?     Current value of the portion you own?<br><br>**Unknown**          **Unknown** |

| Debtor 1 | Brigham G. Field | | Case number *(if known)* | 9:20-bk-10622-DS |

| 3.5 | Make | Mercedes Benz | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D. Creditors Who Have Claims Secured by Property. |
|---|---|---|---|---|
| | Model | S65 | ☐ Debtor 1 only | |
| | Year | 2016 | ☐ Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Approximate mileage: | | ☐ Debtor 1 and Debtor 2 only | |
| | Other information: | | ☑ At least one of the debtors and another | |

In Debtor's spouse's name only. Debtor does not believe that this asset constitutes community property but is included solely for purposes of full disclosure.

☐ Check if this is community property (see instructions)

Current value of the entire property? **Unknown**

Current value of the portion you own? **Unknown**

| 3.6 | Make | Mercedes Benz | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D. Creditors Who Have Claims Secured by Property |
|---|---|---|---|---|
| | Model | G63 | ☐ Debtor 1 only | |
| | Year | 2016 | ☐ Debtor 2 only | |
| | | (Leased Vehicle) | ☐ Debtor 1 and Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Approximate mileage: | | ☑ At least one of the debtors and another | |
| | Other information: | | | |

In Debtor's spouse's name only. Debtor does not believe that this asset constitutes community property but is included solely for purposes of full disclosure.

☐ Check if this is community property (see instructions)

Current value of the entire property? **Unknown**

Current value of the portion you own? **Unknown**

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
Examples: Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No
☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.................................................=>     **$25,000.00**

**Part 3:** Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own? Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
Examples: Major appliances, furniture, linens, china, kitchenware
☐ No
☑ Yes. Describe.....

| Misc. furnishings, couches, tables, chairs, beds, etc. (includes misc. furnishings and household items in storage units - See Schedule G and SOFA) | **$60,000.00** |

7. **Electronics**
Examples: Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
☑ Yes. Describe.....

| Misc. electronics, incl. televisions | **$5,000.00** |

| Debtor 1 | Brigham G. Field | | Case number (if known) | 9:20-bk-10622-DS |
|---|---|---|---|---|

**8. Collectibles of value**

Examples: Antiques and figurines, paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☐ No

☒ Yes. Describe.....

| Artwork, paintings and prints (approx. $75-100k) | $75,000.00 |
|---|---|

**9. Equipment for sports and hobbies**

Examples: Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☐ No

☒ Yes. Describe...

| Upright Kawai Piano | $5,000.00 |
|---|---|

**10. Firearms**

Examples: Pistols, rifles, shotguns, ammunition, and related equipment

☒ No

☐ Yes. Describe....

**11. Clothes**

Examples: Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No

☒ Yes. Describe....

| Misc. clothing, shoes, coats and accesories. | $35,000.00 |
|---|---|

**12. Jewelry**

Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No

☒ Yes. Describe.....

| Rolex Submariner Watch ($3,500); Diamond Pave Bracelet ($3,000); and misc. ladies jewelery ($25,000); | $31,500.00 |
|---|---|

**13. Non-farm animals**

Examples: Dogs, cats, birds, horses

☐ No

☒ Yes. Describe....

| Two Dogs | Unknown |
|---|---|

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☒ No

☐ Yes. Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .......................................................................  $211,500.00

---

**Part 4:    Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own? Do not deduct secured claims or exemptions.

| Debtor 1 | Brigham G. Field | | Case number *(if known)* | 9:20-bk-10622-DS |

**16. Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No

■ Yes ................................................................................................

| | Cash | $2,000.00 |

**17. Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No

■ Yes ......................      Institution name:

| 17.1. | Checking | Banc of California Acct. Ending 3422 | $755.37 |
| 17.2. | Credit Union | One Nevada Credit Union Acct. Ending 7631 | $0.00 |
| 17.3. | Checking | Bank of America Acct. Ending 3170 | $0.00 |
| 17.4. | Checking | Wells Fargo Acct. Ending 8134 | $243.12 |
| 17.5. | Savings | Savings: Wells Fargo Acct. Ending 8461 | $0.00 |
| 17.6. | Checking | Wells Fargo (Business Acct.) | $7,834.38 |
| 17.7. | Checking | Bank of America (Business Account) | $0.00 |

**18. Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No

☐ Yes. ...............      Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No

■ Yes   Give specific information about them. ...............

| | Name of entity: | % of ownership: | | |
| ZO Digital, LLC, single owner LLC - website development | | 100 | % | $150,000.00 |
| Click Here, LLC - Single Owner LLC - IP Holding Company | | 100 | % | $500,000.00 |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.

*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them

■ No

☐ Yes. Give specific information about them      Issuer name:

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor 1    **Brigham G. Field**    Case number *(if known)*    **9:20-bk-10522-DS**

21. Retirement or pension accounts
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
   ■ No
   ☐ Yes. List each account separately.
        Type of account:              Institution name:

22. Security deposits and prepayments
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ☐ No
   ■ Yes. .................              Institution name or individual.

|  | **Security Deposit** | **Security Deposit - Landlord (Nevada Property)** | **$16,681.00** |
|---|---|---|---|

23. Annuities (A contract for a periodic payment of money to you, either for life or for a number of years)
   ■ No
   ☐ Yes............    Issuer name and description.

24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
   ■ No
   ☐ Yes.............    Institution name and description. Separately file the records of any interests. 11 U.S.C. § 521(c)

25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit
   ☐ No
   ■ Yes. Give specific information about them..

| **Charles W Field FBO W H Field Trust -** **US Wealth Management U.S. Bank - Acct. No . ending in 0370** Debtor is a vested beneficiary of spendthrift trust settled by his late grandfather. The assets of the Trusts are equity fixed income, non-taxable asset allocations. There are no real property assets to the Trusts. Debtor has no right to compel distribution of income or principal. | **$760,923.37** |
|---|---|

| **Charles W Field Family Trust U/A William** **US Wealth Management U.S. Bank** **Account Number ending in 3950** Debtor is a vested beneficiary of spendthrift trust settled by his late grandfather. The assets of the Trusts are equity fixed income, non-taxable asset allocations. There are no real property assets to the Trusts. Debtor has no right to compel distribution of income or principal. | **$386,511.82** |
|---|---|

| **0360 Field For W.H. Field, et al. - Irrevocable Trust -** Debtor is a vested beneficiary of spendthrift trust settled by his late grandfather. The assets of the Trusts are equity fixed income, non-taxable asset allocations. There are no real property assets to the Trusts. Debtor has no right to compel distribution of income or principal. | **$769,254.80** |
|---|---|

26. Patents, copyrights, trademarks, trade secrets, and other intellectual property
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
   ☐ No
   ■ Yes. Give specific information about them..

| Debtor 1 | Brigham G. Field | | Case number *(if known)* | 9:20-bk-10622-DS |

| | IP owned by LLC's only | $0.00 |

27. Licenses, franchises, and other general intangibles
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes. Give specific information about them

**Money or property owed to you?**

Current value of the
portion you own?
Do not deduct secured
claims or exemptions

28. Tax refunds owed to you
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years

29. Family support
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No
☐ Yes. Give specific information.....

30. Other amounts someone owes you
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security
    benefits; unpaid loans you made to someone else
■ No
☐ Yes. Give specific information..

31. Interests in insurance policies
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
☐ No
■ Yes. Name the insurance company of each policy and list its value.

| | Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|---|
| | North American Company; No cash value | Colette Pelissier | $0.00 |

32. Any interest in property that is due you from someone who has died
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
    someone has died.
■ No
☐ Yes. Give specific information..

33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
☐ No
■ Yes. Describe each claim.......

| | Genova Capital - Quiet Title Action Action Against Genova | Unknown |
|---|---|---|
| | Claims against v Edgar Sargsyan, Art Kalantar, Henrik Mosesi, Pillar Law Group - Pending law suit in Los Angeles Superior Court, West District (Case No. 19SMCV01425) - See SOFA #9 | Unknown |

| Debtor 1 | Brigham G. Field | Case number *(if known)* | 9:20-bk-10622-DS |
|---|---|---|---|

Warmblood, Inc. v Colette Pelissier, et al - Los Angeles
Superor Court, Van Nuys Courthouse East, Case No.
20VECV00006 - Unlimited Case                                    Unknown

34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims
- ☑ No
- ☐ Yes. Describe each claim........

35. Any financial assets you did not already list
- ☑ No
- ☐ Yes. Give specific information..

36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here.................................................................................................

$2,594,203.86

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. Do you own or have any legal or equitable interest in any business-related property?
- ☐ No. Go to Part 6.
- ☑ Yes  Go to line 38.

Current value of the
portion you own?
Do not deduct secured
claims or exemptions

38. Accounts receivable or commissions you already earned
- ☑ No
- ☐ Yes. Describe .

39. Office equipment, furnishings, and supplies
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
- ☐ No
- ☑ Yes. Describe

| 2 Desks; 2 Office Chairs; and 3 desk lamps. | $2,000.00 |
|---|---|

| 3 desks, office chairs and file cabinets | $3,000.00 |
|---|---|

40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade
- ☐ No
- ☑ Yes. Describe...

| 2 imac computers; and 1 Canon camera. | $5,000.00 |
|---|---|

41. Inventory
- ☑ No
- ☐ Yes. Describe.

42. Interests in partnerships or joint ventures
- ☑ No
- ☐ Yes. Give specific information about them...............
Name of entity.                          % of ownership

Official Form 106A/B                    Schedule A/B: Property                    page 8

| Debtor 1 | Brigham G. Field | | Case number *(if known)* | 9:20-bk-10622-DS |
|---|---|---|---|---|

43. Customer lists, mailing lists, or other compilations.

■ No

☐ Do your lists include personally identifiable information (as defined in 11 U.S.C § 101(41A))?

    ■ No

    ☐ Yes. Describe. ...

44. Any business-related property you did not already list

■ No

☐ Yes. Give specific information ... .......

45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
for Part 5. Write that number here.......................................................................................................     **$10,000.00**

**Part 6**  Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?

■ No. Go to Part 7.

☐ Yes. Go to line 47

**Part 7:**  Describe All Property You Own or Have an Interest in That You Did Not List Above

53. Do you have other property of any kind you did not already list?
   *Examples:* Season tickets, country club membership
☐ No
■ Yes. Give specific information ......

| | | |
|---|---|---|
| | Malibu Media, LCC - In Debtor's spouse's name only. Debtor does not believe that this asset constitutes community property but is included solely for purposes of full disclosure. | Unknown |
| | Malibu Media Holdings LLC - In Debtor's spouse's name only. Debtor does not believe that this asset constitutes community property but is included solely for purposes of full disclosure. | $0.00 |

54. Add the dollar value of all of your entries from Part 7. Write that number here ...................................     **$0.00**

**Part 8:**  List the Totals of Each Part of this Form

| | | | |
|---|---|---|---|
| 55. Part 1: Total real estate, line 2 ..................................................................................................... | | | **$17,900,000.00** |
| 56. Part 2: Total vehicles, line 5 | $25,000.00 | | |
| 57. Part 3: Total personal and household items, line 15 | $211,500.00 | | |
| 58. Part 4: Total financial assets, line 36 | $2,594,203.86 | | |
| 59. Part 5: Total business-related property, line 45 | $10,000.00 | | |
| 60. Part 6: Total farm- and fishing-related property, line 52 | $0.00 | | |
| 61. Part 7: Total other property not listed, line 54   + | $0.00 | | |
| 62. Total personal property. Add lines 56 through 61 | $2,840,703.86 | Copy personal property total | $2,840,703.86 |
| 63. Total of all property on Schedule A/B. Add line 55 + line 62 | | | $20,740,703.86 |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Brigham G. Field** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **9:20-bk-10622-DS** |

☐ Check if this is an
amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:    List All of Your PRIORITY Unsecured Claims

1.  Do any creditors have priority unsecured claims against you?

☐ No. Go to Part 2.

■ Yes.

2.  List all of your priority unsecured claims. If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

(For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|---|
| 2.1 | **Franchise Tax Board** | Last 4 digits of account number  **2517** | **$191,317.00** | **$0.00** | **$191,317.00** |

Priority Creditor's Name
**Bankruptcy Section, MS:A-340**
**P.O. Box 2952**
**Sacramento, CA 95812-2952**
Number Street City State Zip Code

When was the debt incurred?    **2014**

As of the date you file, the claim is: Check all that apply

☐ Contingent
■ Unliquidated
■ Disputed

Type of PRIORITY unsecured claim:

☐ Domestic support obligations
■ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____
**2014 Taxes**

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

Is the claim subject to offset?

■ No
☐ Yes

**THE RYAN FIRM**
A Professional Corporation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action.  I am employed by The Ryan Firm, A Professional Corporation, whose business address is: 2603 Main St, Suite 1225, Irvine, CA 92614.

On September 15, 2020, I served the within document(s) described as: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11.U.S.C. SECTION 362** on the interested parties in this action:

☒    by transmitting via electronic mail the document(s) listed above to the email addresses provided by counsel.

☒    by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s) ☒ addressed as follows: ☐ addressed as stated on the attached mailing list.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| D. Edward Hays<br>**(ECF ONLY)** | Tel: *<br>Fax: *<br>Email: ehays@marshackhays.com<br>dwood@marshackshays.com | Attorney for debtor |
| United States Trustee (LA)<br>**(ECF ONLY)** | Tel: *<br>Fax: *<br>Email:<br>ustpregion16.la.ecf@usdoj.gov | |
| Brian D. Fittipaldi<br>**(ECF ONLY)** | Tel: *<br>Fax: *<br>Email: brian.fittipaldi@usdoj.gov | |
| Colette Pelissier<br>Brigham Field<br>11802 Ellice Street<br>Malibu, CA 90265<br>**(PERSONAL SERVICE ONLY)** | Tel: *<br>Fax: *<br>Email:* | Debtor and Codebtor |
| Colette Pelissier<br>Brigham Field<br>2 Bloomfield Hills<br>Henderson, NV 89052<br>**(PERSONAL SERVICE ONLY)** | Tel: *<br>Fax: *<br>Email:* | Debtor and Codebtor |

☒    **CM/ECF** (U.S. Bankruptcy Court, Central District of California, Electronic Case Filing Procedures § 3-8)—Whenever a pleading, document or court order is filed electronically in accordance with ECF Procedures, the system will automatically generate the Notification of Electronic Filing, which will be emailed to all Registered Participants who have consented to electronic service and have appeared in the case or adversary proceeding in which the document is filed.  This transmission of the Notification of Electronic Filing to a Registered Participant shall constitute effective service in accordance with L.B.R. 9036-1.  All parties

1  who are not registered, if any, were served in the manner set forth above.

2  ☒  **BY PERSONAL SERVICE** (Code Civ. Proc. § 1011(a))—I caused to be delivered such envelope(s) by hand to the offices of the addressee(s).

3
4  ☒  (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

5  Executed on September 15, 2020, at Irvine, California.

6

7                                        /s/ Nasya Chou
8                                        NASYA CHOU

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE RYAN FIRM
A Professional Corporation

Proof of Service

# EXHIBIT 3

RECORDED AT REQUEST OF:
**WHEN RECORDED, RETURN TO:**

Genova Capital, Inc.
555 Corporate Drive, Suite 120
Ladera Ranch, California 92694

APN: 700-0-260-065

20190325-00031274-0 1/36
Ventura County Clerk and Recorder
MARK A. LUNN
03/25/2019 08:48:38 AM
1445362 $415.00 VA

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT; REQUEST FOR NOTICE

**Note Amount:**      **$125,000**
**Property Address:**   **11802 Ellice Street, Malibu, California 90265**

### THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH CALIFORNIA COMMERCIAL CODE SECTION 9502.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of April 11, 2017, among Brigham Field and Colette Pelissier, husband and wife as joint tenants, as trustor ("Borrower"), whose address is 11802 Ellice Street, Malibu, California 90265; Commonwealth Land Title Company, as trustee ("Trustee"); and, Genova Capital, Inc., a California corporation, as beneficiary ("Lender"), whose address is 555 Corporate Drive, Suite 120, Ladera Ranch, California 92694.

### TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the State of California as described in California Commercial Code section 9502. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

1

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

**1. Definitions.** For purposes of this Deed of Trust, each of the following terms shall have the following respective meanings:

    **1.1.** **"Attorney Fees."** Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Deed of Trust.

    **1.2.** **"Borrower."** The named Borrower in this Deed of Trust and the obligor under the Note, whether or not named as Borrower in this Deed of Trust, and subject to paragraph 19 and paragraph 20 of this Deed of Trust, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

    **1.3.** **"Default Rate."** The Default Rate as defined in the Note.

    **1.4.** **"Event of Default."** An Event of Default as defined in paragraph 19 of this Deed of Trust.

    **1.5.** **"Environmental Laws."** Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j); the California Hazardous Waste Treatment Reform Act of 1995 (Stats 1995, ch 638 (SB 1222-Calderon)); the California Unified Hazardous Waste and Hazardous Materials Management Regulatory Program (Stats 1993, ch 418 (SB 1082-Calderon)); the Carpenter-Presley-Tanner Hazardous Substance Account Act (California Health and Safety Code §§ 25300-25395.15); the California Expedited Remedial Action Reform Act of 1994 (California Health and Safety Code §§ 25396-25399.2); and the Porter-Cologne Water Quality Control Act (California Water Code §§ 13000-14076).

    **1.6.** **"Fixtures."** All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of California, including the California Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

    **1.7.** **"Governmental Authority."** Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

© 2007 Geraci Law Firm; All Rights Reserved.

2

Rev. 01/16
Borrowers Initials

1.8.    "**Governmental Requirements**." Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

1.9.    "**Hazardous Substance**."    Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous wastes" in California Health and Safety Code §25117 and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" in California Civil Code section 2929.5; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (e) substances defined as "medical wastes" in the Medical Waste Management Act (Chapter 6.1 of the California Health and Safety Code); (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real property adjacent to it.

1.10.    "**Impositions**." All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Deed of Trust may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

1.11.    "**Improvements**." Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Deed of Trust.

1.12.    "**Indebtedness**." The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.12.1.    The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

1.12.2.    This Deed of Trust and all other Loan Documents;

1.12.3.    All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.12.4.    Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Deed of Trust, including, but not limited to, funds advanced to protect the security or priority of the Deed of Trust; and

1.12.5.    Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

3

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

      **1.13.** "**Land**." The real estate or any interest in it described in Exhibit A attached to this Deed of Trust and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

      **1.14.** "**Leases**." Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

      **1.15.** "**Legal Requirements**." Collectively, (a) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, joint venture, trust, limited liability company, or other form of business association (if either, both, or all, by any of same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

      **1.16.** "**Lender**." The named Lender in this Deed of Trust and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Deed of Trust, whether or not named as Lender in this Deed of Trust, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

      **1.17.** "**Loan**." The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

      **1.18.** "**Loan Documents**." Collectively, this Deed of Trust, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

      **1.19.** "**Mortgaged Property**." The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as    **11802 Ellice Street, Malibu, California 90265,**
                                  **APN: 700-0-260-065 ("Mortgaged Property")**

together with:

      1.19.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging to or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or

---

© 2007 Geraci Law Firm; All Rights Reserved.

4

*(signature)* *(signature)* Rev. 01/16
                                          Borrowers Initials

any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.19.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.19.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.19.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.19.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.19.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.19.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Deed of Trust or are required to be maintained by Borrower as provided below in this Deed of Trust; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.19.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit A attached to this Deed of Trust (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.19.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Land or other Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Land or other Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all

5

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Land, Fixtures, Personalty, or other Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Land, Fixtures, Personalty, or other Mortgaged Property;

       1.19.10.  All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

       1.19.11.  All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

       1.19.12.  All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in Division 9 of the California Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

       1.19.13.  All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

       1.19.14.  All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

       1.19.15.  All proceeds of any of the foregoing.

       As used in this Deed of Trust, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

       **1.20.    "Note."** The Promissory Note payable by Borrower to the order of Lender in the principal amount of **Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00)**, which matures on **January 1, 2018**, evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note.

       **1.21.    "Obligations."** Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Deed of Trust whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Deed of Trust.

       The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Deed of Trust, executed by Borrower and any guarantor of the Loan, which is not secured by this Deed of Trust.

       **1.22.    "Permitted Encumbrances."** At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in

---

6

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Deed of Trust; and (c) liens in favor of or consented to in writing by Lender.

**1.23.** **"Person."** Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.24.** **"Personalty."** All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the California Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the California Uniform Commercial Code.

**1.25.** **"Rents."** All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

**1.26.** **"Water Rights."** All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Deed of Trust shall have the meaning given them in the Note dated of even date herewith between Borrower and Lender.

**2.** **Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under paragraph 5 of this Deed of Trust; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's

---

7

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Deed of Trust.

**3.     Use of Mortgaged Property.**  Unless otherwise required by Governmental Requirements or unless Lender otherwise consents in writing, Borrower shall not allow changes in the use of the Mortgaged Property from that which is contemplated by Borrower and Lender at the time of execution of this Deed of Trust, as specified in the loan application and the Loan Documents.  Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

**4.     Insurance.**

    **4.1.     Casualty Insurance.**  Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

        4.1.1.  Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in paragraph 4.9) of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

        4.1.2.  Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

        4.1.3.  Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

        4.1.4.  Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

        4.1.5.  During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described in paragraph 4.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

        4.1.6.  Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Land is located.

---

8

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**4.2.    Liability Insurance.**  Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least $5,000,000.00 combined single limit, or such greater amount as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

**4.3.    Other Insurance.**  Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

**4.4.    Form of Policies.**  All insurance required under this paragraph 4 shall be fully paid for and nonassessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of California, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better. All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender and Trustee as insureds; and (d) include such deductibles as Lender may approve. If a policy required under this paragraph contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

**4.5.    Duplicate Originals or Certificates.**  Duplicate original policies evidencing the insurance required under this paragraph 4 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be delivered to Lender under this paragraph 4.5, Borrower may deliver an underlier of any blanket policy, and Borrower may also deliver original certificates from the issuing insurance company, evidencing that such policies are in full force and effect and containing information that, in Lender's reasonable judgment, is sufficient to allow Lender to ascertain whether such policies comply with the requirements of this paragraph.

**4.6.    Increased Coverage.**  If Lender determines that the limits of any insurance carried by Borrower are inadequate or that additional coverage is required, Borrower shall, within 10 days after written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7.    No Separate Insurance.**  Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this paragraph 4 unless endorsed in favor of Trustee and Lender as required by this paragraph and otherwise approved by Lender in all respects.

**4.8.    Transfer of Title.**  In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this paragraph 4 or otherwise then in force with respect to the Mortgaged Property and all proceeds

---

© 2007 Geraci Law Firm; All Rights Reserved.

9

Rev. 01/16
Borrowers Initials

payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

    **4.9.**    **Replacement Cost.** For purposes of this paragraph 4, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

    **4.10.**    **Approval Not Warranty.** No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

    **4.11.**    **Lender's Right to Obtain.** Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender and Trustee with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender and Trustee, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

    **4.12.**    **Duty to Restore After Casualty.** If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**5.**    **Condemnation and Insurance Proceeds.**

    **5.1.**    **Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

10

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**5.2.    Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

5.2.1.  Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of one of which shall constitute a default under this Deed of Trust, the Note, and any Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this paragraph 5 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

5.2.2.  If fewer than all conditions (a) through (i) in paragraph 5.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this paragraph 5.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in paragraph 5.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

**5.3.    Material Loss Not Covered.** If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

**5.4.    Total Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other

---

11

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, until the Indebtedness secured by this Deed of Trust has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Deed of Trust shall be paid to Borrower as its interest may then appear.

      **5.5.**    **Partial Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds. The first such portion shall be applied to the sums secured by this Deed of Trust, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower. Any dispute as to the fair market value of the Mortgaged Property shall be settled by arbitration in accordance with the Real Estate Valuation Arbitration Rules of the American Arbitration Association.

      **5.6.**    **No Cure of Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Deed of Trust shall not be construed to cure or waive any default or notice of default under this Deed of Trust or invalidate any act done under any such default or notice.

**6.**    **Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Deed of Trust or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Deed of Trust, whether or not specified in this Deed of Trust.

      On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 6(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this paragraph 6, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Deed of Trust to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

**7.**    **Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to
Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Deed of Trust; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of

---

© 2007 Geraci Law Firm; All Rights Reserved.

12

Rev. 01/16
Borrowers Initials

setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. In accordance with section 19.13 below, any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, , then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

**8.      Right to Collect and Receive Rents.** Despite any other provision of this Deed of Trust, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Deed of Trust or in the performance of any of the Obligations, and Lender shall have the rights set forth in California Civil Code §2938 regardless of whether declaration of default has been delivered to Trustee as provided in  paragraph 21 of this Deed of Trust, and without regard to the adequacy of the security for the Indebtedness secured by this Deed of Trust. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Deed of Trust, after execution and delivery of declaration of default and demand for sale as provided in this Deed of Trust or during the pendency of trustee's sale proceedings under this Deed of Trust, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Deed of Trust, in such order as Lender may decide. Nothing in this Deed of Trust, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Deed of Trust to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable

---

13

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

on notice from Lender to Borrower requesting such payment and shall bear interest from the date of
disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to
Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may
be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any
other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing
to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property.
Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by
Lender of any of its rights or remedies under this Deed of Trust shall be deemed to make Lender a
"mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the
Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and
until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver
for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the
entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make
Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the
Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be
accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property,
but shall be promptly paid over to Lender.

**9.      Funds for Taxes and Insurance.**  If Borrower is in default under this Deed of Trust or any of the
Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent
time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with
Lender or its designee, at the time of each payment of an installment of interest or principal under the
Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this
Deed of Trust as they become due.  The calculation of the amount payable and of the fractional part of it
to be deposited with Lender shall be made by Lender in its sole and absolute discretion.  These amounts
shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear
interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such
order or priority as Lender shall determine. If at any time within 30 days before the due date of these
obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this
Deed of Trust in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days
after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they
were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve
account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for
the ensuing year. Nothing in this paragraph shall be deemed to affect any right or remedy of Lender under
any other provision of this Deed of Trust or under any statute or rule of law to pay any such amount and
to add the amount so paid to the Indebtedness secured by this Deed of Trust.  Lender shall have no
obligation to pay insurance premiums or taxes except to the extent the fund established under this
paragraph is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any
matters relative to the insurance or taxes for which the fund is established under this paragraph.

Lender or its designee shall hold all amounts so deposited as additional security for the sums
secured by this Deed of Trust. Lender may, in its sole and absolute discretion and without regard to the
adequacy of its security under this Deed of Trust, apply such amounts or any portion of it to any
Indebtedness secured by this Deed of Trust, and such application shall not be construed to cure or waive
any default or notice of default under this Deed of Trust.

If Lender requires deposits to be made under this paragraph 9, Borrower shall deliver to Lender
all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any
other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Deed of Trust, Lender shall have the right to transfer all amounts
deposited under this paragraph 9 to the purchaser or assignee. After such a transfer, Lender shall be

14

© 2007 Geraci Law Firm; All Rights Reserved

Rev. 01/16
Borrowers Initials

relieved and have no further liability under this Deed of Trust for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**10.    Assignment of Causes of Action, Awards, and Damages.**  All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Deed of Trust was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Deed of Trust. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this paragraph 10, Lender may apply or release the balance of any funds received by it under this paragraph, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this paragraph and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

**11.    Defense of Deed of Trust; Litigation.**  Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents. Despite any other provision of this Deed of Trust, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorney Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Deed of Trust, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if neither Lender nor Trustee elects to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorney Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Deed of Trust or to enforce any of its terms or provisions.

**12.    Borrower's Failure to Comply With Deed of Trust.**  If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the

---

15

© 2007 Geraci Law Firm; All Rights Reserved.



Rev. 01/16
Borrowers Initials

performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

**13.     Sums Advanced to Bear Interest and to Be Secured by Deed of Trust.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

**14.     Inspection of Mortgaged Property.** In addition to any rights Lender may have under California Civil Code §2929.5, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

**15.     Financial Statements; Estoppel Certificates.**

     **15.1.     Borrower's Financial Statements.** On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower, beginning with the fiscal year first ending after the date of recordation of this Deed of Trust; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, and development of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

     **15.2.     Recordkeeping.** Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

     **15.3.     Guarantors' Financial Statements.** Except to the extent already required by paragraph 15.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of such accountant as to their accuracy. Throughout the term of

16

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

this Deed of Trust, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such
other information with respect to Borrower or guarantor as Lender may from time to time request. All
financial statements of Borrower or guarantor shall be prepared in accordance with generally accepted
accounting principles and practices applied on a consistent basis and shall be delivered in duplicate.
Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender
shall not disclose them to third parties and shall limit access to them to what is necessary to service the
loan, accomplish the normal administrative, accounting, tax-reporting, and other necessary functions, to
sell all or any part of the loan and to report such information as required to the Comptroller of the
Currency, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and similar entities.

    **15.4.**    **Estoppel Certificates.**  Within 10 days after Lender's request for such information,
Borrower shall execute and deliver to Lender, and to any third party designated by Lender, in recordable
form, a certificate of the principal financial or accounting officer of Borrower, dated within 3 days after
delivery of such statements, or the date of such request, as the case may be, reciting that the Loan
Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and
effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite
the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as
Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been
paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall
include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends
exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of
Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or
prospective Event of Default has occurred and is continuing, a statement specifying the nature and period
of its existence and what action Borrower has taken or proposes to take with respect to such matter; and,
except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to
be fulfilled on or before the date of such certificate.

    **15.5.**    **Failure to Deliver Estoppel Certificate.** If Borrower fails to execute and deliver the
certificate required by paragraph 15.4 within such 10-day period, (a) the Loan Documents shall, as to
Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full
force and effect, modified in the manner and to the extent specified by Lender, whichever Lender
reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be
deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist
against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted
and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any
third party.

    **15.6.**    **Reliance on Estoppel Certificate.** Borrower and Lender expressly agree that any
certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by
Lender under paragraph 15.5, may be relied on by any prospective purchaser or any prospective assignee
of any interest of Lender in the Note and other Indebtedness secured by this Deed of Trust or in the
Mortgaged Property, and by any other person, without independent investigation or examination, to verify
the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

    **15.7.**    **No Waiver of Default or Rights.** Lender's exercise of any right or remedy provided by
this paragraph 15 shall not constitute a waiver of, or operate to cure, any default by Borrower under this
Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed
of Trust or Governmental Requirements.

**16.**    **Uniform Commercial Code Security Agreement.** This Deed of Trust is intended to be and shall
constitute a security agreement under the California Uniform Commercial Code for any of the Personalty
specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a
security interest under the California Uniform Commercial Code, and Borrower grants to Lender a
security interest in those items. Borrower authorizes Lender to file financing statements in all states,
counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law.

---

© 2007 Geraci Law Firm; All Rights Reserved.

17



Rev. 01/16
Borrowers Initials

Borrower agrees that Lender may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of California and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Deed of Trust or executed duplicate original of this Deed of Trust, or a copy certified by a County Recorder in the State of California, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the California Uniform Commercial Code and, at Lender's option, may also invoke the remedies in paragraph 21 of this Deed of Trust as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the California Uniform Commercial Code or of the remedies in paragraph 21 of this Deed of Trust.

17.    **Fixture Filing.**  This Deed of Trust constitutes a financing statement filed as a fixture filing under California Commercial Code §9502(c), as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

18.    **Waiver of Statute of Limitations.**  Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Deed of Trust, to the fullest extent permitted by Governmental Requirements.

19.    **Events of Default.**  The term Event of Default as used in this Deed of Trust means the occurrence or happening, at any time and from time to time, of any one or more of the following:

19.1.    **Payment of Indebtedness.**  Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than 10 days after the date such payment was due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

19.2.    **Performance of Obligations.**  The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required.

19.3.    **Judgment.**  If any final judgment, order, or decree is rendered against Borrower or a guarantor and is not paid or executed on, or is not stayed by perfection of an appeal or other appropriate action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

19.4.    **Voluntary Bankruptcy.**  If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

19.5.    **Involuntary Bankruptcy.**  If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 30 days after its entry.

18

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**19.6.** **Foreclosure of Other Liens.** If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 30 days after institution of such foreclosure proceedings.

**19.7.** **Sale, Lease, Encumbrance, or Other Transfer.** Any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.

**19.8.** **Title and Lien Priority.** If Borrower's title to any or all of the Mortgaged Property or the status of this Deed of Trust as a second position lien and security interest on the Mortgaged Property is endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this paragraph if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Deed of Trust, as determined by Lender.

**19.9.** **Other Defaults.** The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

**19.10.** **Levy on Assets.** A levy on any of the assets of Borrower or any guarantor, and such levy is not stayed or abated within 30 days after such levy.

**19.11.** **Breach of Representations.** The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

**19.12.** **Default Under Prior Deed of Trust, Security Instrument, or Lien.** The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

**19.13** **Violation of Governmental Requirements.** The failure of Borrower, any tenant, or any other occupant of the Mortgage Property to comply with any Governmental Requirement. In accordance with section 7 above, any potential violation by a tenant or other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

**20.** **Acceleration on Transfer or Encumbrance.**

**20.1.** **Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers, or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower equal to twenty five percent (25%) or more of the beneficial ownership interests of Borrower outstanding at the date of this Deed of Trust; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

---

© 2007 Geraci Law Firm; All Rights Reserved.

19

Rev. 01/16
Borrowers Initials

**20.2. Replacement Personalty.** Despite the provisions of paragraph 20.1, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Deed of Trust in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Deed of Trust constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Deed of Trust has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements, including §9334 of the California Commercial Code.

**20.3. Permitted Encumbrances.** If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance provision set forth in paragraph 20.1 shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Note); as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

**21. Acceleration and Sale on Default.** If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Deed of Trust immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Lender and reciting facts demonstrating such default by Borrower, together with a written notice of default and election to sell the Mortgaged Property. Lender shall also deposit with Trustee the Note, this Deed of Trust, and documents evidencing any additional advances or expenditures secured by this Deed of Trust. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts and statements in such affidavit or declaration of default and shall cause such notice of default and election to sell to be recorded as required by Governmental Requirements. On the expiration of such period as may then be required by Governmental Requirements following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Governmental Requirement, Trustee, without demand on Borrower, shall sell the Mortgaged Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may determine or Lender may direct (Borrower waives any right it may have under Governmental Requirements to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorney Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Trustee shall deliver to the purchaser at such public auction its deed conveying the Mortgaged Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact concerning notices shall be conclusive proof of its truthfulness. Any person, including Borrower, Trustee, or Lender, may purchase at such sale.

The proceeds or avails of any sale made under or by virtue of this Deed of Trust, together with any other sums secured by this Deed of Trust, which then may be held by the Trustee or Lender or any other person, shall be applied as follows: (1) To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorney Fees, and reasonable compensation to Lender

20

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Deed of Trust, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold; (2) to the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid; (3) to the payment of any other Indebtedness required to be paid by Borrower under any provision of this Deed of Trust, the Note, or any of the other Loan Documents; and (4) to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

**22.** **Borrower's Obligation to Notify Lender.**

    **22.1** **Bankruptcy, Insolvency, Transfer, or Encumbrance.** Borrower shall notify Lender in writing, at or before the time of the occurrence of any event described in paragraphs 19 and 20 of this Deed of Trust, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

    **22.2** **Government Notice.** Borrower shall give immediate written notice to Lender of any notice, proceeding or inquiry by any Governmental Authority. Borrower shall provide such notice to Lender within five (5) days of Borrower's knowledge, constructive or actual, of any such notice, proceeding or inquiry by any Government Authority.

**23.** **Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Deed of Trust, and despite any other provision of this Deed of Trust, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Deed of Trust and to establish the order in which all or any part of the Indebtedness secured by this Deed of Trust is satisfied from the proceeds realized on the exercise of the remedies provided in this Deed of Trust. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Deed of Trust waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Deed of Trust or otherwise provided by Governmental Requirements.

**24.** **Environmental Matters.**

    **24.1.** **Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that:

        24.1.1. The Mortgaged Property and Borrower are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any Environmental Laws.

        24.1.2. Borrower has not obtained and is not required by any Environmental Laws to obtain any permits or licenses to construct or use the Mortgaged Property or the Improvements.

        24.1.3. Borrower has conducted an appropriate inquiry into previous uses and ownership of the Mortgaged Property, and after such inquiry determined that no Hazardous Substance has been disposed of, transported, or released on or at the Mortgaged Property.

        24.1.4. No part of the Mortgaged Property is being used or, to the knowledge of Borrower, has been used at any previous time, for the disposal, storage, treatment, processing, transporting, or other handling of Hazardous Substances, nor is any part of the Mortgaged Property affected by any Hazardous Substance contamination.

        24.1.5. To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

        24.1.6. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed,

© 2007 Geraci Law Firm; All Rights Reserved.

21

Rev. 01/16
Borrowers Initials

Case 2:20-cv-09563-ODW-JC    Document 1-1    Filed 10/19/20    Page 118 of 202    Page

Branch :F7LUser :TZ01                                                                                           Station Id :BXRN
Case 9:20-bk-11622-DS    Doc 129    Filed 06/05/20    Entered 06/05/20 14:06:43    Desc
Main Document        Page 26 of 250

threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

    24.1.7. Neither Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

    24.1.8. The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

    24.1.9. Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

    24.1.10. Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

    **24.2.**   **Survival of Representations and Warranties.** The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

    **24.3.**   **Notice to Lender.** Borrower shall give prompt written notice to Lender of:

    24.3.1. Any proceeding or inquiry by any Governmental Authority (including, without limitation, the California State Department of Health Services) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

    24.3.2. All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

    24.3.3. Any notice given to Borrower under California Civil Code §851(b); and

    24.3.4. Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

    **24.4.**   **Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

    **24.5.**   **Borrower's Indemnity.** Borrower shall indemnify, defend, and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost, expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

**25.**   **Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Deed of Trust of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Deed of Trust, Lender's security for the payment of

---

22

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

26. **Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Deed of Trust, or (b) the lien of this Deed of Trust on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Deed of Trust, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust.

27. **Duty to Reconvey.** On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Deed of Trust to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Deed of Trust. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Deed of Trust.

28. **Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this paragraph for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

29. **No Waiver by Lender.** No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by two authorized officers of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by this Deed of Trust after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Obligations of Borrower under the Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by this Deed of Trust, or the exercise of Lender's right to enter the Mortgaged Property and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its

23

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing.

**30.    Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Deed of Trust or in the performance of any Obligations under this Deed of Trust or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under paragraph 9 of this Deed of Trust; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this paragraph shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Deed of Trust and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Deed of Trust; or (iii) the lien or priority of the lien of this Deed of Trust. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this paragraph.

Whenever Lender's consent or approval is specified as a condition of any provision of this Deed of Trust, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

**31.    Waiver of Right of Offset.** No portion of the Indebtedness secured by this Deed of Trust shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits of California Code of Civil Procedure section 431.70, which provides:

Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is

© 2007 Geraci Law Firm; All Rights Reserved.

24

Rev. 01/16
Borrowers Initials

barred by the statute of limitations when enforcement of the judgment is barred under
Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9.

**32.    Future Advances.**  On request by Borrower, Lender, at Lender's option, may make future
advances to Borrower. All such future advances, with interest, shall be added to and become a part of the
Indebtedness secured by this Deed of Trust when evidenced by promissory notes reciting that such note(s)
are secured by this Deed of Trust.

**33.    Prepayment.**  If the Note secured by this Deed of Trust provides for a fee or charge as
consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if
the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date
stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement
under this Deed of Trust and Lender, for that reason or by reason of paragraphs 20 and 21 of this Deed of
Trust, shall have declared all sums secured by this Deed of Trust immediately due and payable.

**34.    Additional Borrower Representations.**  To induce Lender to enter into this Deed of Trust, the
Note, and the other Loan Documents and to make the Loan, Borrower makes the following
representations and warranties, which are deemed made as of both the date and the recordation of this
Deed of Trust:

    **34.1.    Capacity.**  Borrower and the individuals executing Loan Documents on Borrower's
behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe
the provisions of this Deed of Trust, the Note, the other Loan Documents, and any other document,
agreement, certificate, or instrument executed in connection with the Loan, and to carry out the
contemplated transactions.

    **34.2.    Authority and Enforceability.**  Borrower's execution, delivery, and performance of this
Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or
instrument executed in connection with the Loan have been duly authorized by all necessary corporate or
other business entity action and do not and shall not require any registration with, consent, or approval of,
notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain
on or before the recordation of this Deed of Trust all necessary Governmental Authority and other
approvals necessary for Borrower to comply with the Loan Documents. This Deed of Trust, the Note, and
the other Loan Documents executed in connection with the Loan, when executed and delivered by
Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower
enforceable in accordance with their respective terms.

    **34.3.    Compliance With Other Instruments.**  The execution and delivery of this Deed of
Trust and the other Loan Documents, and compliance with their respective terms, and the issuance of the
Note and other Loan Documents as contemplated in this Deed of Trust, shall not result in a breach of any
of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as
created by this Deed of Trust and the other Loan Documents) on any properties of Borrower, or constitute
a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any
holder or holders of indebtedness may declare the same due and payable under, any indenture, agreement,
order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may
be bound or affected.

    **34.4.    Compliance With Law.**  The execution and delivery of this Deed of Trust, the Note, and
the other Loan Documents, or any other document, agreement, certificate, or instrument to which
Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under,
or create any lien or charge under any provision of any Governmental Requirements to which it is subject
and shall not violate any of the Governmental Requirements.

    **34.5.    Material Adverse Events.**  Since the date of the financial statements delivered to Lender
before recordation of this Deed of Trust, neither the condition (financial or otherwise) nor the business of
Borrower and the Mortgaged Property have been materially affected in any way.

    **34.6.    Litigation.**  There are no actions, suits, investigations, or proceedings pending or, to
Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at

---

© 2007 Geraci Law Firm; All Rights Reserved.

25

Rev. 01/16
Borrowers Initials

law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect on the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Deed of Trust, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

34.7.    **No Untrue Statements.**  All statements, representations, and warranties made by Borrower in this Deed of Trust or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and on and as of the recordation of this Deed of Trust, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

34.8.    **Policies of Insurance.**  Each copy of the insurance policies relating to the Mortgaged Property delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Deed of Trust, and no amendments or modifications of said documents or instruments not included in such copies have been made, except as stated in this paragraph 34.8 and (b) has not been terminated and is in full force and effect. Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Deed of Trust to keep unimpaired its rights thereunder.

34.9.    **Financial Statements.**  All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes such statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adversely affect or could potentially in the future affect the Mortgaged Property or the business prospects, profits, or condition (financial or otherwise) of Borrower or any guarantor or Borrower's abilities to perform the Obligations and pay the Indebtedness.

34.10.    **Water Rights.**  (a) Borrower is the sole owner of record of the Water Rights; (b) the Water Rights are appurtenant to the Mortgaged Property and are free and clear of all liens and encumbrances except as set forth in the title report described in paragraph 1.22; (c) the Water Rights are sufficient to satisfy all water requirements of the development of the Mortgaged Property as presently contemplated; (d) the Water Rights include all water rights appurtenant to the Mortgaged Property; (e) Borrower has received a water service commitment from the applicable local water district, guaranteeing water service for the Mortgaged Property in an amount necessary to satisfy the requirements for such property in its currently contemplated final state of development; and (f) on recordation of this Deed of Trust with the county recorder, Lender shall have a valid, first priority, perfected security interest in the Water Rights.

34.11.    **Taxes.**  Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

34.12.    **Leases.**  If the Mortgaged Property includes a leasehold estate, Borrower has not and shall not surrender, terminate, cancel, waive, accept waiver, change, supplement, grant subleases of, alter, surrender, or amend, and shall comply with all terms, covenants, and conditions in the Leasehold.

34.13.    **Further Acts.**  Borrower shall, at its sole cost and expense, and without expense to Trustee or Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds,

---

© 2007 Geraci Law Firm; All Rights Reserved.

26

Rev. 01/16
Borrowers Initials

conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Trustee or Lender shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Trustee the Mortgaged Property and rights, and as to Lender the security interest as to the Personalty, conveyed or assigned by this Deed of Trust or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering, or recording this Deed of Trust and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of this Deed of Trust on the Mortgaged Property.

**34.14. Filing Fees.** Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Deed of Trust, the other Loan Documents, any supplemental deed of trust or mortgage, or any instrument of further assurance.

**34.15. Entity Compliance.** As long as it is the owner of the Mortgaged Property, Borrower, if a corporation, limited liability company, or partnership, shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to the Mortgaged Property or any part of it.

**35. Governing Law.** This instrument shall be deemed to have been made in the State of California, and the validity of this Deed of Trust and the other Loan Documents, their construction, interpretation, and enforcement, and the parties' rights under such documents and concerning the Mortgaged Property, shall be decided under, governed by, and construed in accordance with the laws of the State of California. The parties agree that all actions or proceedings arising in connection with this Deed of Trust and the other Loan Documents shall be tried and litigated only in the state courts located in the County in which notice shall be sent to Lender pursuant this Deed of Trust, or the applicable federal district court that covers said County. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

**36. Taxation of Deeds of Trust.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Deed of Trust, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Deed of Trust.

**37. Mechanics' Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Deed of Trust shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanics', laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

**38. Brokerage.** Borrower represents and warrants to Lender that Borrower has not dealt with any Person, other than the parties identified in the final settlement statement, who are or may be entitled to

---

27

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

any finder's fee, brokerage commission, loan commission, or other sum in connection with the execution of this Deed of Trust, the consummation of the transactions contemplated by this Deed of Trust, or the making of the Loan secured by this Deed of Trust by Lender to Borrower, and Borrower indemnifies and agrees to hold Lender harmless from and against any and all loss, liability, or expense, including court costs and Attorney Fees, that Lender may suffer or sustain if such warranty or representation proves inaccurate in whole or in part.

**39.    Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Deed of Trust, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

**40.    Notices.** Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

| | |
|---|---|
| Lender: | Genova Capital, Inc. |
| | At the address provided above |
| | |
| Borrower: | Brigham Field and Colette Pelissier |
| | At the address provided above |

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

**41.    Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Deed of Trust.

**42.    Application of Payments.** Except as otherwise expressly provided by Governmental Requirements or any other provision of this Deed of Trust, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**43.    Remedies Are Cumulative.** Each remedy in this Deed of Trust is separate and distinct and is cumulative to all other rights and remedies provided by this Deed of Trust or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

**44.    Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Deed of Trust shall be the joint and several obligations of each such Person.

---

© 2007 Geraci Law Firm; All Rights Reserved.

28

Rev. 01/16
Borrowers Initials

**45.    Severability.** If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

**46.    Delegation of Authority.** Whenever this Deed of Trust provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

**47.    General Provisions.**

**47.1.    Successors and Assigns.** Subject to paragraphs 19 and 20 of this Deed of Trust, this Deed of Trust applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Deed of Trust.

**47.2.    Meaning of Certain Terms.** As used in this Deed of Trust and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Deed of Trust as a whole, rather than any particular provision of it.

**47.3.    Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Deed of Trust, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

**47.4.    Gender and Number.** Wherever the context so requires in this Deed of Trust, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

**47.5.    Captions.** Captions and paragraph headings used in this Deed of Trust are for convenience of reference only, are not a part of this Deed of Trust, and shall not be used in construing it.

**47.6.    Time Is of the Essence.** As a material inducement and consideration to the parties entering into this Deed of Trust, and but for this provision the parties would not enter into this Deed of Trust, the parties agree that the performance in a timely manner of each deadline set forth in this Deed of Trust before its expiration is of crucial importance to the parties. Failure by a party to timely perform an obligation before the deadline set forth in this Deed of Trust (no matter for what reason, nor how soon thereafter it may have been performed, nor the lack of prejudice to the other party as the result of such nonperformance) shall result in a default by the nonperforming party or the failure of a condition, as appropriate. The parties expressly waive any equitable relief with respect to a missed deadline.

**48.    Leasehold Provisions.**

**48.1.    Leasehold Estate.** If the security for this Deed of Trust is a leasehold estate demised by a lease (the "Leasehold"), this Deed of Trust shall be a lien on all present and future right, title, estate, and interest of Borrower in the Mortgaged Property and Improvements covered by the Leasehold and on all Mortgaged Property interests acquired by Borrower as a result of the exercise of any option in the Leasehold or as amended, in the same manner and to the same extent as if the Mortgaged Property encompassed in the Leasehold and option agreements had been held in fee by Borrower at the time of the execution of this Deed of Trust, and Borrower agrees not to amend, change, or modify its leasehold interest, or any of its terms, or to exercise any option to purchase, or agree to do so, without having obtained Lender's prior written consent. In a violation of this provision, Lender may, at its option, declare all sums secured by this Deed of Trust immediately due and payable. Consent to any amendment, change, or modification, or a waiver of the right to require such consent in one instance, shall not be a waiver of the right to require such consent at a subsequent time. The term "Mortgaged Property" as used in this Deed of Trust means such leasehold estate or any other present or future interest of Borrower in the Mortgaged Property whenever the context requires.

**48.2.    Compliance With Leasehold.** In the event that the security for this Deed of Trust is a leasehold estate, Borrower covenants and agrees as follows: (a) to promptly and faithfully observe, perform, and comply with all Leasehold terms, covenants, and provisions on its part to be observed, performed, and complied with, at the times set forth in the Leasehold; (b) not to do, permit, suffer, or

29

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

refrain from doing anything, as a result of which, there would be a default under or breach of any of the terms of the Leasehold; (c) not to cancel, surrender, modify, amend, or in any way alter or permit the alteration of any of the terms of the Leasehold; (d) to give Lender immediate notice of any default by anyone under the Leasehold and to promptly deliver to Lender copies of each notice of default and all other notices, communications, plans, specifications, and other similar instruments received or delivered by Borrower in this connection; (e) to furnish to Lender such information and evidence as Lender may reasonably require for Borrower's due observance, performance, and compliance with the Leasehold terms, covenants, and provisions; (f) that any default of the tenant under the Leasehold shall constitute an Event of Default under this Deed of Trust; and (g) to give immediate written notice to Lender of the commencement of any remedial proceedings under the Leasehold by any party to it and, if required by Lender, to permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings. Borrower expressly transfers and assigns to Lender the benefit of all covenants in the Leasehold, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants or any other covenants in the Leasehold.

**48.3. Borrower's Warranties and Representations.** With respect to the Leasehold, Borrower warrants and represents as follows: (a) the Leasehold is in full force and effect, unmodified by any writing or otherwise, except as specifically set forth in Exhibit A; (b) all rent, additional rent, and other charges reserved in the Leasehold have been paid to the extent they are payable to the date of this Deed of Trust; (c) Borrower enjoys the quiet and peaceful possession of the Mortgaged Property demised by the Leasehold; (d) Borrower is not in default under any Leasehold term and, to the best of its knowledge, there are no circumstances that, with the passage of time or the giving of notice or both, would constitute an Event of Default under the Leasehold; (e) to the best of Borrower's knowledge, the landlord under the Leasehold is not in default under any Leasehold term or provision the landlord is required to observe or perform.

**48.4. Assignments to Lender.** If Borrower files any petition or action for relief under any bankruptcy, reorganization, insolvency, moratorium law, or any other law or laws for the relief of or relating to debtors, on demand by Lender, Borrower covenants to transfer and assign to Lender its leasehold estate and the Leasehold in lieu of rejection of the Leasehold by Borrower and covenants to assign to Lender its right to accept or reject the Leasehold and to apply for any extension of time within which to accept or reject the Leasehold. These assignments to Lender shall be automatic on Lender's demand. If Lender demands the assignment of the Leasehold under this Deed of Trust, Lender covenants to cure any defaults outstanding under the Leasehold after the Leasehold is assigned to Lender.

**48.5. Default Under Leasehold.** If Borrower defaults in performing any of its obligations under the Leasehold, including, without limitation, any default in the payment of rent and other charges and impositions made payable by the tenant under the Leasehold, then, in each and every case, Lender may, at its option and without notice, cause the default or defaults to be remedied and otherwise exercise any and all of the rights of Borrower under the Leasehold in the name of and on behalf of Borrower. Borrower shall, on demand, reimburse Lender for all advances made and expenses incurred by Lender in curing any such default (including, without limitation, reasonable Attorney Fees), together with interest computed at the rate provided for in the Note from the date that an advance is made or expense is incurred, to and including the date the same is paid. Lender shall have no duty to prevent the termination of the leasehold estate by the landlord. If the landlord terminates the leasehold estate, Lender shall have the right, at its option, to declare all sums secured by this Deed of Trust immediately due and payable and immediately bring an action on the Note, provided there is no other real property security for the Note.

**48.6. Options.** Borrower shall give Lender notice of its intention to exercise each and every option to extend the term of the Leasehold at least 20 days but not more than 60 days before expiration of the time to exercise such option under the Leasehold. If Borrower intends to extend the term of the Leasehold, it shall deliver to Lender, with the notice of such decision, a copy of the notice of extension delivered to the landlord under the Leasehold. If Borrower does not intend to extend the term of the

30

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

Leasehold, Lender may, at its option, exercise the option to extend in the name and on behalf of Borrower.

    **48.7.**  **No Merger/Attorney-in-Fact.**  It is hereby agreed that the fee title, the leasehold estate, and the subleasehold estate in the Mortgaged Property demised by the Leasehold shall not merge but shall be kept separate and distinct, despite the union of these estates in either the landlord under the Leasehold, Borrower, or a third party, whether by purchase or otherwise. If Borrower acquires the fee title or any other estate, title, or interest in the Mortgaged Property demised by the Leasehold or any part of it, the lien of this Deed of Trust shall attach to, cover, and be a lien on such acquired estate, title, or interest and it shall simultaneously be and become a part of the Mortgaged Property with the same force and effect as if specifically encumbered in this Deed of Trust. Borrower agrees to execute all instruments and documents that Lender may reasonably require to ratify, confirm, and further evidence Lender's lien on the acquired estate, title, or interest. Furthermore, Borrower appoints Lender as its true and lawful attorney-in-fact to execute and deliver all such instruments and documents in the name and on behalf of Borrower. This power, being coupled with an interest, shall be irrevocable as long as any amounts secured by this Deed of Trust remain unpaid.

    **48.8.**  **Interests in Successor Leasehold.**  If the Leasehold is canceled or terminated, and if Lender or its nominee shall acquire an interest in any new lease of the Mortgaged Property demised by the Leasehold, Borrower shall have no right, title, or interest in or to the new lease or the leasehold estate created by such new lease.

    **48.9.**  **Estoppel Certificate.**  Borrower shall use its best efforts to obtain and deliver to Lender, within 20 days after written demand by Lender, an estoppel certificate from the landlord under the Leasehold setting forth (a) the name of the tenant under the Leasehold, (b) that the Leasehold has not been modified or, if it has been modified, the date of each modification (together with copies of each such modification), (c) the basic rent payable under the Leasehold, (d) the date to which the tenant paid all rental charges under the Leasehold, and (e) whether there are any alleged defaults of the tenant under the Leasehold and, if there are, setting forth their nature in reasonable detail.

    **48.10.**  **Limitations on Lender's Liability Under Leasehold.**  Despite anything to the contrary in this Deed of Trust, this Deed of Trust shall not constitute an assignment of the Leasehold within the meaning of any provision of the Leasehold prohibiting its assignment, and Lender shall have no liability or obligation under the Leasehold because of its acceptance of this Deed of Trust. Lender shall be liable for the tenant's obligations arising under the Leasehold for only that period of time that Lender is in possession of the Mortgaged Property covered by the Leasehold or has acquired, by foreclosure or otherwise, and is holding all of Borrower's right, title, and interest in the Mortgaged Property covered by the Leasehold.

**49.**    **Improper Financial Transactions.**

    **49.1**    Borrower is, and shall remain at all times, in full compliance with all applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, and any amendments or successors thereto and any applicable regulations promulgated thereunder (collectively, the "Financial Control Laws"), including but not limited to those related to money laundering offenses and related compliance and reporting requirements (including any money laundering offenses prohibited under the Money Laundering Control Act, 18 U.S.C. Section 1956 and 1957 and the Bank Secrecy Act, 31 U.S.C. Sections 5311 et seq.) and the Foreign Assets Control Regulations, 31 C.F.R. Section 500 et seq.

    **49.2**    Borrower represents and warrants that: Borrower is not a Barred Person (hereinafter defined); Borrower is not owned or controlled, directly or indirectly, by any Barred Person; and Borrower is not acting, directly or indirectly, for or on behalf of any Barred Person.

    **49.3**    Borrower represents and warrants that it understands and has been advised by legal counsel on the requirements of the Financial Control Laws.

    **49.4**    Under any provision of this Deed of Trust or any of the other Loan Documents where Lender shall have the right to approve or consent to any particular action, including, without limitation

---

© 2007 Geraci Law Firm; All Rights Reserved.
        31        Rev. 01/16
                 Borrowers Initials

any (A) sale, transfer, assignment of the Mortgaged Property, or any direct or indirect ownership interest in Borrower, (B) leasing of the Mortgaged Property, or any portion thereof, or (C) incurring any additional financing secured by Mortgaged Property, or any portion thereof, by any direct or indirect ownership interest in Borrower, Lender shall have the right to withhold such approval or consent, in its sole discretion, if the granting of such approval or consent could be construed as a violation of any of the Financial Control Laws.

    **49.5**  Borrower covenants and agrees that it will upon request provide Lender with (or cooperate with Lender in obtaining) information required by Lender for purposes of complying with any Financial Control Laws.

    **49.6**  As used in this Deed of Trust, the term "Barred Person" shall mean (A) any person, group or entity named as a "Specially Designated National and Blocked Person" or as a person who commits, threatens to commit, supports, or is associated with terrorism as designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), (B) any person, group or entity named in the lists maintained by the United States Department of Commerce (Denied Persons and Entities), (C) any government or citizen of any country that is subject to a United States Embargo identified in regulations promulgated by OFAC, and (D) any person, group or entity named as a denied or blocked person or terrorist in any other list maintained by any agency of the United States government.

**50.**   **Dispute Resolution: Waiver of Right to Jury Trial**

    **50.1**  **ARBITRATION.**  CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

    **50.2**  **WAIVER OF RIGHT TO JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS DEED OF TRUST. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS DEED OF TRUST, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS DEED OF TRUST OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST.

BORROWER'S INITIALS: _____

    **50.3**  **PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.**
Nothing in Section 50.2, above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment

---

32

© 2007 Garci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in Section 50.2, above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in Section 50.2, above.

**51.    Contractual Right to Appoint a Receiver Upon Default**. Upon an Event of Default under this Deed of Trust or a breach of any clause of any agreement signed in connection with the loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default.  Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**52.    REQUEST OF NOTICE OF DEFAULT OF SENIOR LIEN.**    In accordance with Section 2924b of the Civil Code of California, request is hereby made by the Trustor that a copy of any Notice of Default and a copy of any Notice of Sale under a deed of trust recorded on March 26, 2014, as Instrument Number 20140326-00038119-0, in the official records of Ventura County, California, affecting the Mortgaged Property executed by Brigham Field and Colette Pelissier, husband and wife, as community property with right of survivorship, as Trustor in which Banc of California, National Association, a Commercial Bank is named as Beneficiary, and Fidelity National Title as Trustee, be mailed to:

> Genova Capital, Inc.
> 555 Corporate Drive, Suite 120
> Ladera Ranch, California 92694

© 2007 Geraci Law Firm; All Rights Reserved.

33

Rev. 01/16
Borrowers Initials

Case 2:20-cv-09563-ODW-JC   Document 1-1   Filed 10/19/20   Page 130 of 202   Page

Branch :FL,User :TZM                                                                    Comment:                                              Station Id :BXRN
Case 9:20-bk-10622-DS   Doc 199   Filed 06/05/20   Entered 06/05/20 14:05:26   Desc
Main Document     Page 38 of 350

IN WITNESS WHEREOF, Borrower has executed and delivered this Deed of Trust as of the date
first written above.

**BORROWER:**

**BRIGHAM  FIELD  AND  COLETTE
PELISSIER**

_____
Brigham Field, an individual

_____
Colette Pelissier, an individual

© 2007 Geraci Law Firm; All Rights Reserved.                34                          Rev. 01/16
                                                                                                        _____   _____  Borrowers Initials

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of _Los Angeles_ )

On _April 12, 2017_ before me, _C. Benbaruh_, Notary Public
   Date                              Here Insert Name of the Officer

Personally Appeared _Colette Pelissier, Brigham, Field_
                         Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.



C. BENBARUH
Commission # 2072379
Notary Public - California
Los Angeles County
My Comm. Expires Jun 23, 2018

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _C. Benbaruh_
                Signature of Notary Public

© 2007 Geraci Law Firm; All Rights Reserved.

35

_____ _____ Rev. 01/16
Borrowers Initials

Order No: 09202389-920-CMM-CMR

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 6 OF TRACT NO. 4483, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 146 PAGE(S) 19 THROUGH 22 INCLUSIVE OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ONE-EIGHTH OF MINERALS, OILS, PETROLEUM, ASPHALTUM, GAS, COAL, AND OTHER HYDROCARBON SUBSTANCES, AS RESERVED BY MARBLEHEAD LAND COMPANY, IN DEED RECORDED NOVEMBER 17, 1940, IN BOOK 628, PAGE 87 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, EASEMENTS SET FORTH IN THE SECOND AMENDED AND COMPLETELY RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND EASEMENTS FOR MARISOL ("DECLARATION") RECORDED IN THE OFFICE OF SAID COUNTY RECORDER OF CALIFORNIA ON FEBRUARY 14, 2011, AS INSTRUMENT NO. 20110214-24632.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, ON AND OVER THE "COMMON AREA" AS DEFINED IN THE DECLARATION FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS AND EGRESS OF THE AMENITIES LOCATED THEREON. THE COMMON AREA IS FOR THE USE OF OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION.

Assessor's Parcel Number:      **700-0-260-065**

# EXHIBIT 4

RECORDING REQUESTED BY:
Simplifile
CALIFORNIA TD SPECIALISTS
Attn: Teri Snyder

WHEN RECORDED MAIL TO:

CALIFORNIA TD SPECIALISTS
Attn: Teri Snyder
8190 EAST KAISER BLVD.
ANAHEIM HILLS, CA 92808

20190718-00081358-0  1/3
Ventura County Clerk and Recorder
MARK A. LUNN
07/18/2019 10:39:51 AM
1490501  $105.00  RE

Electronically Recorded in Official Records,
County of Ventura

---

Title Order No.: 95522037
APN: 700-0-260-065

Trustee Sale No.: 83752

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY
Loan No.: FIELD/PELISSIER

# NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

[PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/11/2017. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **8/14/2019** at **11:00 AM**, CALIFORNIA TD SPECIALISTS as the duly appointed Trustee under and pursuant to Deed of Trust recorded on 3/25/2019 as Instrument No. 20190325-00031274-0 in book N/A, page N/A of official records in the Office of the Recorder of Ventura County, California, executed by:

BRIGHAM FIELD AND COLETTE PELISSIER, HUSBAND AND WIFE AS JOINT TENANTS

, as Trustor

GENOVA CAPITAL, INC., A CALIFORNIA CORPORATION

, as Beneficiary

**WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). At: At the Main front entrance to the County Government Center Hall of Justice located at 800 South Victoria Avenue, Ventura, CA 93003,**

1

83752    TS-NOS    Notice of Trustee's Sale.doc    140333

Title Order No.:    95522037
Trustee Sale No.:    83752
Loan No.:    FIELD/PELISSIER
APN:    700-0-260-065

**NOTICE OF TRUSTEE'S SALE - continued**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California describing the land therein: As more fully described on said Deed of Trust.

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be:    11802 ELLICE STREET MALIBU, CA 90265 .

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit:

$158,817.00   (Estimated)
Accrued interest and additional advances, if any, will increase this figure prior to sale.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

DATE: 7/17/2019

CALIFORNIA TD SPECIALISTS, as Trustee
8190 EAST KAISER BLVD., ANAHEIM HILLS, CA 92808
PHONE: 714-283-2180
**FOR TRUSTEE SALE INFORMATION LOG ON TO:** www.stoxposting.com
**CALL:** 844-477-7869

PATRICIO S. INCE', VICE PRESIDENT

**CALIFORNIA TD SPECIALISTS IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

2

| | |
|---|---|
| **Title Order No.:** | 95522037 |
| **Trustee Sale No.:** | 83752 |
| **Loan No.:** | FIELD/PELISSIER |
| **APN:** | 700-0-260-065 |

"**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid on a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of the outstanding lien that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and if applicable, the rescheduled time and date for the sale of this property, you may call 844-477-7869, or visit this Internet Web site www.stoxposting.com, using the file number assigned to this case T.S.# 83752. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale."

3

# EXHIBIT 5

Case 2:24-bk-10522-DS    Doc 128    Filed 05/23/20    Entered 05/23/20 14:05:23    Desc
Main Document    Page 50 of 250

RECORDING REQUESTED BY:
California TD Specialists

*Simplifile*

AND WHEN RECORDED TO:
AND MAIL TAX STATEMENT TO:
GENOVA CAPITAL INC.
555 CORPORATE DRIVE, SUITE 120
LADERA RANCH, CA 92694
Forward Tax Statements to
the address given above

20190816-00094754-0  1/3
Ventura County Clerk and Recorder
MARK A. LUNN
08/16/2019 11:20:59 AM
1503065  $105.00  VA

**Electronically Recorded in Official Records,
County of Ventura**

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: **83752**                                        Order #: 95522037
Loan #: **FIELD/PELISSIER**

# TRUSTEE'S DEED UPON SALE

A.P.N.: **700-0-260-065**                    Transfer Tax: **$0.00**
THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE,
SECTION 480.3
The Grantee Herein **was** the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **$160,074.39**
The Amount Paid by the Grantee was **$160,074.39**
Said Property is in the City of **MALIBU**, County of **Ventura**

**CALIFORNIA TD SPECIALISTS**, as Trustee, (whereas so designated in the Deed of Trust hereunder more
particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**GENOVA CAPITAL, INC., A CALIFORNIA CORPORATION**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed
to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Ventura**,
State of California, described as follows:

**See Exhibit "A" Attached Hereto And Made A Part Hereof.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **BRIGHAM
FIELD AND COLETTE PELISSIER, HUSBAND AND WIFE AS JOINT TENANTS** as Trustor, dated
**4/11/2017** of the Official Records in the office of the Recorder of **Ventura**, California under the authority and
powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having
occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust
recorded on **3/25/2019**, instrument number **20190325-00031274-0**, Book N/A, Page N/A  of official records.
Trustee having complied with all applicable statutory requirements of the State of California and performed all duties
required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its
recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each
person entitled to notice in compliance with California Civil Code 2924b.

Forward Tax Statements to the address given above





## TRUSTEE'S DEED UPON SALE

TS #: **83752**
Loan #: **FIELD/PELISSIER**
Order #: **95522037**

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **8/14/2019**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$160,074.39**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **CALIFORNIA TD SPECIALISTS**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: **8/14/2019**

                                          CALIFORNIA TD SPECIALISTS, AS TRUSTEE

                                          By: _____
                                               Patricio S. Ince, Vice President

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF California
COUNTY OF Orange

On 8/14/2019 before me, Teri Snyder Notary Public Personally appeared, Patricio S. Ince, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public                                 (Seal)

TERI SNYDER
COMM. # 2185804
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. APRIL 4, 2021

Branch :FTL User :T701 Comment: Station Id :BXRN

TS #83752

Assessor's Parcel Number: 700-0-260-065

LEGAL DESCRIPTION

EXHIBIT "A"

**PARCEL 1:**

LOT 6 OF TRACT NO. 4483, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 146 PAGE(S) 19 THROUGH 22 INCLUSIVE OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ONE-EIGHTH OF MINERALS, OILS, PETROLEUM, ASPHALTUM, GAS, COAL, AND OTHER HYDROCARBON SUBSTANCES, AS RESERVED BY MARBLEHEAD LAND COMPANY, IN DEED RECORDED NOVEMBER 17, 1940, IN BOOK 628, PAGE 87 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, EASEMENTS SET FORTH IN THE SECOND AMENDED AND COMPLETELY RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND EASEMENTS FOR MARISOL ("DECLARATION") RECORDED IN THE OFFICE OF SAID COUNTY RECORDER OF CALIFORNIA ON FEBRUARY 14, 2011, AS INSTRUMENT NO 20110214-24632.

**PARCEL 2:**

NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, ON AND OVER THE "COMMON AREA" AS DEFINED IN THE DECLARATION FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS AND EGRESS OF THE AMENITIES LOCATED THEREON. THE COMMON AREA IS FOR THE USE OF OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION.

# EXHIBIT 6

VENTURA
SUPERIOR COURT
**FILED**

NOV **1 9** 2019

MICHAEL D. PLANET
Executive Officer and Clerk
BY: _____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF VENTURA

GENOVA CAPITAL INC., A CALIFORNIA CORPORATION,

Plaintiff,

vs.

BRIGHAM FIELD, COLETTE PELISSIER; ALL UNNAMED OCCUPANTS, TENANTS, AND SUBTENANTS; AND DOES 1-20,

Defendants.

Case No. 56-2019-00532526-CU-UD-VTA

**COURT'S STATEMENT OF DECISION FOLLOWING COURT TRIAL**

## BACKGROUND

The parties in this case waived jury on all issues and agreed to have the court determine the "tender" issue first. [1] Any issues regarding alleged irregularities in the nonjudicial foreclosure sale were to be litigated after the court decided the issue of "tender." Therefore, the only issue addressed in the previously issued Statement of Decision was whether unconditional "tender" was made by Defendants Field or Pelisser prior to the nonjudicial foreclosure sale. The

---

[1] "*MR. LANCASTER: We've met and conferred. We are both waiving jury trial for the case. THE COURT: Okay. For all issues on the unlawful detainer case; is that correct? MR. LANCASTER: Yes. And we want to proceed to try the tender, title issue first. THE COURT: When we say "all issues," they would include, but not be limited to tender, title, any alleged defects in the nonjudicial foreclosure sale, right? MR. LANCASTER: Correct....* THE COURT: Okay. So any and all issues regarding the unlawful detainer matter, according to the parties' agreement, will be tried by way of court trial and all parties have waived their right to a jury trial on these issues.*"
(R.T. from 9/16/19, pp. 30-31.)

parties dispute whether the resolution of the tender issue adversely to Defendants precludes further litigation of any alleged irregularities or equitable defenses. At the reconvened court trial, the court permitted the Defendants to introduce additional evidence on asserted equitable defenses and procedural irregularities of the sale.

Genova's claim of right to possession is based on a loan of $125,000.00 secured by a deed of trust signed by both Defendants encumbering the Subject Property (Exs. 1, 202.) The loan became due in full on June 30, 2017 (Ex. 1.) "When a trustor defaults on the obligation . . . [the beneficiary] can rely upon the power of sale in the deed of trust and pursue a private sale." (*Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1502.) Notice of Field's default under the note was given in writing on March 11, 2019, via email to Field and Pelissier, and Field acknowledged receipt of the email (Ex. 18, ¶2; 9/17 RT 61:16-19, 64:18-24.) Notice of Default under the deed of trust was recorded on April 15, 2019 (Ex. 205.) Notice of Trustee's Sale was recorded on June 18, 2019 (Ex. 206.) On August 14, 2019, Plaintiff made a full credit bid for the Subject Property, through the trustee, at the auction and ownership of the Subject Property was conveyed to Plaintiff. (Ex. 214; 9/19 111:23-112:26.)

"There are three parties in the typical deed of trust: the trustor (debtor), the beneficiary (lender), and the trustee. [Citation.] The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale. [Citation.] . . . [¶] *Civil Code* sections 2924 through 2924k . . . govern nonjudicial foreclosure sales pursuant to a power of sale contained in a deed of trust." (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813-814.) Under *Civil Code* 2924h, subdivision (b), the beneficiary under a deed of trust or its assignee is entitled to make a credit bid at the trustee's sale up to the amount of the debt owed. (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8

Cal.App.5th 23, 45.) To initiate the foreclosure process, '[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents' must first record a notice of default . . . . After three months, a notice of sale must then be published, posted, mailed, and recorded in accordance with the time limits prescribed by the statute. [Citations.] [¶] The 'traditional method' to challenge a nonjudicial foreclosure sale 'is a suit in equity . . . to have the sale set aside and to have the title restored." (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10-11.) The deed of trust granted to Genova in this case allowed Genova to proceed by nonjudicial foreclosure following the Defendants default. (*Civ. Code* § 2924 et seq.; see *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830, 30 Cal. Rptr. 2d 777.) The following evidence was introduced at trial: the trustee's deed upon sale (Ex. 214), the notice of trustee's sale (Ex. 206), the notice of default (Ex. 205), the substitution of trustee (Ex. 204), and deed of trust (Ex. 202).

Written notice of the default was provided to both Defendants on March 11, 2019, via e-mail. (Ex. 18 [paragraph 2 in evidence]; 9/17 RT 61:16-20, 64:23-24 .) The email expressly stated that "this loan is 619 days past due" and that it has "a total amount owing of $146,198.62." (Ex. 18.) Defendants argue that they did not actually receive the recorded notice of default, and only received the notice of trustee's sale. (Def. Br. at 1.) *Civil Code* sections 2924 through 2924k do not require actual receipt of any foreclosure notice by a borrower. "*Civil Code* sections 2924–2924h, *do not require actual receipt by a trustor of a notice of default or notice of sale*. They simply mandate certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent." (*Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742, 746–747 .) Also, it is of no legal importance that the note was only signed by Field. (*Civ. Code* §§2928, 2890.) It is undisputed that both Field and Pelissier signed

the deed of trust, which provided for the power of sale, and that the Subject Property was owned by both Field and Pelissier at the time they signed the deed of trust.  (9/17 RT 44:2-8 [Field: "Right. Okay. Page 34. This appears to be my signature; and to the best of my knowledge, this appears to be my wife's signature as well."]; *Id.* 44:17-21 [Field: "I put my initials on pages 1 through 33, and it appears that my wife did the same."]; Ex. 202, at 34 of 36; Answer ¶4.)

## LITIGABLE ISSUES IN AN UNLAWFUL DETAINER PROCEEDING FOLLOWING A NONJUDICIAL FORECLOSURE SALE

The primary issue in an unlawful detainer proceeding such as this one is the Plaintiff's right to possession. (*Old National Financial Services, Inc. v. Seibert, supra,* 194 Cal.App.3d at p. 465.)  But where, as here, the unlawful detainer action is brought pursuant to CCP section 1161a, subdivision (b)(3), title is also an issue. This section provides that an unlawful detainer action may be filed "[w]here the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust . . . and the title under the sale has been duly perfected." (§ 1161a, subd. (b)(3).)  Although issues concerning title are not litigable in a traditional landlord-tenant eviction under section 1161, they are litigable following a nonjudicial foreclosure sale under section 1161a:

> " 'Historically a cause of action for unlawful detainer was available only to a landlord against his tenant.' " (Gross v. Superior Court (1985) 171 Cal.App.3d 265, 271 [217 Cal. Rptr. 284].) The remedy has been expanded by statute to additional categories of plaintiffs (see § 1161) and defendants (see § 1161a). The purpose of section 1161a was to make clear that one acquiring ownership through foreclosure could also evict by a summary procedure. (See Gross v. Superior Court, supra, 171 Cal.App.3d at p. 271.)
>
> **In an unlawful detainer action brought pursuant to section 1161a, subdivision (b)(3), the plaintiff must show that he or she acquired the property at a regularly conducted sale and thereafter "duly perfected" title.** (Evans v. Superior Court (1977) 67 Cal.App.3d 162, 169 [136 Cal.Rptr. 596]; see Stephens v. Hollis (1987) 196 Cal.App.3d 948, 952 [242 Cal.Rptr. 251].) "[W]here the

-4-

*plaintiff in the unlawful detainer action is the purchaser at a trustee's sale, he or she 'need only prove a sale in compliance with the statute and deed of trust, followed by purchase at such sale, and the defendant may raise objections only on that phase of the issue of title. '" (Old National Financial Services, Inc. v. Seibert (1987) 194 Cal.App.3d 460, 465 [239 Cal.Rptr. 728], italics omitted.)* **"The statute" with which a postforeclosure plaintiff must prove compliance is Civil Code section 2924. (Seidell v. Anglo-California Trust Co. (1942) 55 Cal.App.2d 913, 920 [132 P.2d 12].)"**

(*The Bank of New York Mellon v. Preciado* (2013) 224 Cal.App.4th Supp. 1, 9 (Emphasis added.)

A plaintiff pursuing a postforeclosure action under section 1161a(b)(3) must "prove a sale in compliance with the statute [*Civ. Code*, § 2924] and deed of trust, followed by purchase at such sale." (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474; *Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 160, 69 P.2d 832; see also *Old National Financial Services, Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 465, 239 Cal. Rptr. 728.) "[A]n unlawful detainer action must be brought to evict the trustor (§ 1161a, subd. (b)(3)). The purchaser must show that he/she acquired the property at a regularly conducted sale in accordance with *Civil Code* section 2924 "and that title under such sale was duly perfected. [Citation.]" (*Lyons v. Santa Barbara County Sheriff's Office* (2014) 231 Cal.App.4th 1499, 1505 [181 Cal.Rptr.3d 186].)

## TENDER MUST BE UNCONDITIONAL AND ABSOLUTE IN ORDER TO FORESTALL A NONJUDICIAL FORECLOSURE

A debtor may forestall a foreclosure sale by tendering the amount owed. The rules applying to tender apply in the post-foreclosure unlawful detainer context when the defendant seeks to challenge Plaintiff's title. (*MCA, Inc. v. Universal Diversified Enterprises Corp.* (1972) 27 Cal.App.3d 170, 177 [post-foreclosure unlawful detainer case holding that "[D]efendant's assertion of plaintiff's noncompliance with Civil Code section 2924 did not raise a triable issue 'because we do not find in the record any offer on the part of [defendant] to pay the full amount

of the debt for which the property was given as security.'"]; *Kartheiser v. Superior Court of Los Angeles County* (1959) 174 Cal.App.2d 617, 620 ["in *Bisno* v. *Sax* (Code Civ. Proc., §1908 subd. 2); one of the major issues in that case and in the unlawful detainer action is the sufficiency of the tender made by Bisno, an issue upon which Sax prevailed below."].)

Under *Civil Code* section 2924c, subdivision (a)(1), the trustor or mortgagor may satisfy a loan once foreclosure proceedings have begun by paying the entire amount due, including principal, interest, taxes, assessments, and costs incurred in enforcing the obligation—at any time before entry of the decree of foreclosure. Defendants claim that they made a valid tender offer prior to the nonjudicial foreclosure sale. In order for Defendants to prove their affirmative defense of tender, Defendants must show be a preponderance of the evidence that their alleged tenders were unconditional and absolute. The tender rules are strictly applied and it is a debtor's obligation to make an unambiguous tender of the entire amount of the debt. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 445–446 [129 Cal. Rptr. 2d 436].)

"A tender is an unconditional offer to perform an order to extinguish an obligation." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 783 [222 Cal.Rptr.3d 1, citing *Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [98 Cal.Rptr. 414].) Merely stating one is ready, willing, and able to tender payment upon learning what is owed is insufficient tender where the notice of default informs debtor of a minimum amount owed and debtor tendered no payment of at least that amount. (*Crossroads Investors, L.P. v. Federal National Mortgage Assn., supra.)* In *Crossroads Investors, L.P. v. Federal National Mortgage Assn.*, the court held that tender conditioned on the creditor relinquishing its claim to a prepayment premium on mortgage which was to be paid by the trustor only if the bankruptcy court determined creditor was entitled to claim the premium, was

not a valid tender.  It is a foundational principal in nonjudicial foreclosure law that in order to redeem a property through a valid tender, that "the tender must be absolute," which has been the law of California for over 150 years.  (*McMillan v. Richards* (1858) 9 Cal. 365, 405.)  "[A] tender to be valid must be of full performance (Civ. Code, §1486), and it must be unconditional." (*Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [citing Civ. Code §1494].)

"[A] tender to be valid must be of full performance [citation], and it must be unconditional." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385; Crossroads Investors, L.P. v. Federal National Mortgage Assn., supra, at p. 783; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15; *Wiener v. Van Winkle* (1969) 273 Cal.App.2d 774, 782, 78 Cal.Rptr. 761 ["It is well established that a tender must be unconditional, and an unwarranted condition annexed to an offer to pay is in effect a refusal to perform"].)  Additionally, """where the rules [concerning tender] are prescribed by statute . . . , the tender must be in such form as to comply therewith. The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction.""" (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439, 129 Cal. Rptr. 2d 436.) "[I]t is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." (Id. at p. 439.)

Thus, a defendant's purported tender, filed simultaneously with a counterclaim, was held insufficient where the defendant stated it was "willing to pay [plaintiffs] the amount of our tender" and "if it turns out, after a trial, that we were entitled to a set off, we will seek from their

assets to get it back." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385.) The defendant's offer in *Still* was "qualified and conditional by reason of the counterclaim." (*Ibid.*)  Similarly, a tender was held invalid where a defendant deposited funds in an escrow account "pending entry of a final District Court order or judgment directing the escrow agent to pay the tendered funds to [plaintiff] . . . and dismissing this action as moot." (See *Chen v. Allstate Ins. Co.,* 819 F.3d at p. 1146.)

## TENDER, INADEQUACY OF PURCHASE PRICE & PROCEDURAL IRREGULARITES

This court stands by its Tentative and Proposed Statement of Decision which concluded that the Defendants did not make a valid tender before the foreclosure sale.  However, the additional text message exchange between Mr. Filed and Mr. Hunter introduced in the second phase of the trial as exhibit 224, sheds further light on the negotiations between the parties.  On August 13, the afternoon before the non-judicial foreclosure sale, Defendants were prepared to drive to the trustee's office in Anaheim to pay the debt.  At 3:05 p.m., Hunter communicated to Field in a manner which could reasonably lead Field to believe that the sale is being postponed when he stated:  "I will email you the confirmation.  You will also be able to call and verify." Thirty minutes later,  at 3:37 p.m., Hunter requests that Field sign a "simple term sheet" before he postpones.  Recognizing how close the deadline is to paying off the loan, Field states: "What will it say?  The TD guys are leaving at 5pm."  This and other exchanges between the parties' leads the court to believe that absent these last minute negotiations on the afternoon prior to the foreclosure sale, Defendants would have paid the loan off.  The fact that they were able to obtain a cashier's check for the full indebtedness shortly after the foreclosure sale confirms funds were available.

The financial dealings between the parties was complex and involved much more than the note at issue. The parties were involved in good faith last minute negotiations regarding these complex matters. It is not as though Mr. Hunter was refusing to engage in last minute negotiations. In fact, it was Mr. Hunter on behalf of Plaintiff who was proposing a last minute alternative to foreclosure. This understandably delayed Defendants in paying off the note the day prior to the sale. The court does not believe that Mr. Hunter intentionally led the Defendants to believe a settlement was imminent in order to purchase the property at foreclosure. However, the effect of Mr. Hunter engaging in these last minute negotiations and sending a complex written counter offer, likely resulted in the Defendants not paying off the note on the day prior to the foreclosure sale. Under these circumstances, it would be unjust to remove the Defendants from the premises. Given that the Defendants had sufficient funds to pay the note off on the date of the judicial foreclosure sale, it makes no sense that they would allow their property to be foreclosed upon and thereby lose millions of dollars of equity. What makes sense is that they got caught up in last minute negotiations and time ran out to pay off the notre.

"Recognized exceptions to the tender rule include when: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred." (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062, 162 Cal. Rptr. 3d 382.) The parties dispute whether the above noted exceptions apply in an unlawful detainer proceeding as opposed to a quiet title action or unlimited case. There is some authority which suggests that inadequacy of purchase price coupled with procedural irregularity and/or unfairness can be raised in an unlawful detainer action. (*Crummer v. Whitehead* (1964) 230 Cal.App.2d 264, 266; *Harth v.*

*Baum* (1935) 7 Cal.App.2d 114, 116; *Whitman v. Transtate Title Co.* (1985) 165 Cal. App. 3d 312.)  Given the unique circumstances of this case, this court is persuaded that inadequacy of purchase price coupled with procedural irregularity can be raised in this trial.

It is the general rule that a court has the power to vacate a foreclosure sale "where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties," (*Bank of America etc. v. Reidy* (1940) 15 Cal.2d 243, 248, 101 P.2d 77.) But "mere inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a sale legally made. There must in addition be proof of some element of fraud, unfairness, or oppression before the court will be justified in depriving the purchaser of his legal advantage. Where, however, the price obtained is greatly disproportionate to the actual value, very slight evidence of unfairness or irregularity will suffice to authorize the granting of the relief." (*Sargent v. Shumaker* (1924) 193 Cal. 122, 129, 223 P. 464; *BFP v. Resolution Trust Corporation* (1994) 511 U.S. 531, 542, 114 S. Ct. 1757, 128 L. Ed. 2d 556 . . . ['[M]ere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside . . . if the price is so low as to "shock the conscience or raise a presumption of fraud or unfairness."'].)  As recently stated by one court:

> *Inadequate price, even coupled with procedural irregularity, does not automatically render a trustee's sale subject to attack. "[M]ere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]" (6 Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279, 1284 [102 Cal. Rptr. 2d 711], italics added (6 Angels); see also Sargent v. Shumaker (1924) 193 Cal. 122, 129–130 [223 P. 464] [gross inadequacy in price must be coupled with unfairness or advantage " 'resulting in such gross inadequacy and consequent injury' " to borrower]; Crofoot v. Tarman (1957) 147 Cal. App. 2d 443, 446 [305 P.2d 56] [same].)"*

> (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 93 [20 Cal.Rptr.3d 1].)

At the foreclosure sale, Genova paid approximately $ 160,000.00 for the subject property which is valued between 14 million and 20 million dollars.  Plaintiff presented evidence and argument that the property was worth 14 million despite the Defendants having purchased the property in 2013 for 16 million.  Of course, liens on the property must be considered in determining what if any windfall equity Genova obtained.  The only liens on the property are a $9 million first deed of trust, a $2.5 million second deed of trust, and a $500,000 abstract recorded against the property. Using the $14 million valuation offered by Plaintiffs, that leaves $2 million of equity in the property, rendering the purchase price a mere 8% of the value of the property.  In *Whitman*, 175 Cal. at 276, the court found that a $12,960 payment for a $65,000 (i.e., paying 20% the value of the property) was grossly inadequate.  Similarly, in *Winbigler*, 175 Cal. at 276, a payment of 10% of the value of the property was found to be grossly inadequate.  Even assuming Genova's valuation of 14 million, the purchase price was grossly inadequate.  Moreover, the court is persuaded that the value of the home is between 15 and 18 million, meaning that Plaintiff acquired between 2 and 6 million by way of a purchase for approximately $ 160,000.00.  The court finds that the purchase price of the subject property was grossly inadequate, upholding the foreclosure sale would be unfair and unjust, and the nature of the last minute negotiations amounts to a procedural irregularity within the meaning of the above case law.

## CONCLUSION

The court finds that the purchase price at the non-judicial foreclosure sale of the subject property was grossly inadequate and that an injustice would result to enforce said sale and evict the Defendants.  The court is satisfied that the last minute negotiations between the parties resulted in a procedural irregularity sufficient to deny Plaintiff possession of the premises at this

time. The issues addressed in this ruling are better flushed out and addressed in the unlimited quiet title action. The court hereby conditionally rules in favor of the Defendants on the issue of possession of the premises, contingent upon the Defendants paying off the subject note in its entirety, plus costs. Said payment and costs to be paid by Defendants to Plaintiff by no later than December 4, 2019, in order for Defendants to remain in possession of the subject premises. For the benefit of any reviewing court, if this court's conditional ruling were reversed, this court's intent would be to consolidate the unlawful detainer and unlimited quiet title cases and stay entry of judgment in the unlawful detainer matter until resolution of the unlimited quiet title action. Counsel for Defendants to submit a proposed judgment consistent with this ruling.

Dated: November ___18___, 2019

KEVIN G. DENOCE
Judge of the Superior Court

-12-

**PROOF OF SERVICE**
*CCP § 1012, 1013a (1), (3) & (4)*

STATE OF CALIFORNIA    )
                              ) ss.
COUNTY OF VENTURA     )
                              )

Case Number: 56-2019-00532526-CU-UD-VTA
Case Title: Genova Capital Inc. vs. Field

I am employed in the County of Ventura, State of California. I am over the age of 18 years and not a party to the above-entitled action. My business address is 800 S. Victoria Avenue, Ventura, CA 93009. On the date set forth below, I served the within:

**COURT'S STATEMENT OF DECISION FOLLOWING COURT TRIAL**

On the following named party(ies)

Timothy Matthew Ryan
E-Mail: tryan@theryanfirm.com
30 Corporate Park, Suite 310
Irvine, California 92606

David Rosen
E-Mail: drosen@murphyrosen.com
100 Wilshire Boulevard, Suite 1300
Santa Monica, California 90401-1142

Cristian Arrieta
E-Mail: carrieta@lrmmt.com
300 Esplanade Drive, Suite 850
Oxnard, California 93036

_____ **BY PERSONAL SERVICE**: I caused a copy of said document(s) to be hand delivered to the interested party at the address set forth above on _____ at _____ a.m./p.m.

__x___ **BY MAIL**: I caused such envelope to be deposited in the mail at Ventura, California. I am readily familiar with the court's practice for collection and processing of mail. It is deposited with the U.S. Postal Service on the dated listed below.

and__ **BY FACSIMILE**: I caused a *courtesy copy* of said documents to be sent via facsimile to the interested party at the facsimile number set forth above at _____ from telephone number _____.

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on **November 19, 2019**, at Ventura, California.

By: _____
H. McIntyre, Judicial Secretary

# EXHIBIT 7

Timothy M. Ryan, Bar No. 178059
Andrew J. Mase, Bar No. 300680
THE RYAN FIRM
A Professional Corporation
2603 Main St, Suite 1225
Irvine, CA 92614
Telephone (949) 263-1800; Fax (949) 872-2211

Attorneys for Genova Capital, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| In re | CASE NO.: 9:20-bk-10622-DS |
| BRIGHAM G. FIELD, | Chapter 11 |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDITOR GENOVA CAPITAL, INC.'S RENEWED MOTION FOR RELIEF FROM STAY** |
| Debtor. | |
| | Date: October 6, 2020<br>Time: 11:30 AM<br>Ctrm: 201 |

THE RYAN FIRM
A Professional Corporation

THE RYAN FIRM
A Professional Corporation

# Table of Contents

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................. 1

**1.     INTRODUCTION** ........................................................................... 1

**2.     RELEVANT FACTUAL SUMMARY AND PROCEDURAL POSTURE** ................................................................................... 3

    **A.     Foreclosure on Third Position Loan and Purchase of Subject Property** ................................................................. 3

    **B.     Litigation History** ......................................................... 3

    **C.     Genova's Ownership of a Second Position Deed of Trust** ........... 4

**3.     GROUNDS FOR RELIEF FROM STAY** ................................................ 4

**4.     SINCE GENOVA OWNS THE SUBJECT PROPERTY AND IT IS NOT "PROPERTY OF THE ESTATE," DEBTOR HAS NO EQUITY IN THE SUBJECT PROPERTY AND IT IS NOT NECESSARY TO AN EFFECTIVE REORGANIZATION** ................. 4

**5.     DEBTOR CANNOT MEET HIS BURDEN IN DEMONSTRATING THAT THE SUBJECT PROPERTY IS NECESSARY FOR AN EFFECTIVE REORGANIZATION** ................. 6

    **A.     Debtor Cannot Meet His Burden in Showing the Ability to Reorganize within a "Reasonable Time" Pursuant to** *Timbers* ............................................................................ 7

    **B.     The Lack of an Effective Reorganization is Amplified by Debtor's Newly Proposed Chapter 11 Reorganization Plan, Which is** *per se* **Not Confirmable** .................................... 9

    **C.     Even if He Owned the Subject Property, a "Successful Reorganization" is Not Possible Since There is No Equity in the Subject Property** ................................................. 10

        **i.     The Subject Property Has a Value of $17,900,000.00** ................................................. 11

        **ii.     Debtor Has Admitted the Existence of Numerous Secured Liens Encumbering the Subject Property; the Total Value of These Liens Exceeds the Value of the Subject Property** ................................. 11

        **iii.     Debtor Has Admitted to Another $1,074,000.00 for Costs of Sale** ........................................... 12

i

|  | iv. | Debtor Has Also Admitted the Existence of Delinquent State and Federal Taxes, Which, as a Matter of Law, are Secured Liens Encumbering the Subject Property in the Sum of $7.49M | 13 |
|  | a. | The Federal IRS Debt is a Lien as a Matter of Law | 14 |
|  | b. | The Franchise Tax Board Debt is a Lien as a Matter of Law | 15 |
|  | c. | Accrual of Interest Further Increases the Negative Equity | 16 |
| 6. | | CONCLUSION | 18 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE RYAN FIRM**
A Professional Corporation

ii

## **Table of Authorities**

### **Federal cases**

*Choate v. Tubbs* (W.D. Ten. 2004) 2004 U.S. Dist. LEXIS 17925 ................................. 14

*Goldenberg v. Deutsche Bank Nat'l Trust Co.* (2013) 2013 Bankr. LEXIS 4665; *Williams v. Levi* (2005) 323 B.R. 691 ............................................................................... 5

*In re 6200 Ridge, Inc.* (Bankr. E.D. Pa. 1987) 69 B.R. 837,..................................... 17

*In re Am. Capital Equip., LLC*, 688 F.3d 145 ...................................................... 9

*In re Anchorage Boat Sales, Inc.* (E.D. N.Y. 1980) 4 B.R. 635 ...................................... 17

*In re Dudley* (Bankr. M.D. Pa. 1984) 38 B.R. 666 .................................................. 5

*In re Franklin* (N.D. Ill. BK. 2012) 476 B.R. 545 .................................................. 17

*In re Hanley* (W.D. Pa. 1989) 102 Bankr. 36 ...................................................... 17

*In re HBA E., Inc.*, 87 B.R. 248................................................................. 9

*In re Sparkman* (Bankr. E.D. Pa. 1981) 9 B.R. 359 ................................................ 5

*In re Sun Valley Newspapers, Inc.* (9th Cir. BAP 1994) 171 B.R. 71 ............................... 11

*In re Timbers of Inwood Forest Associates, Ltd.* (1987) 808 F.2d 363 .................... 11, 18

*La Jolla Mortgage Fund v. Rancho El Cajon Associates* (Bankr. S.D. Cal. 1982) 18 Bankr. 283 ................................................................................. 11

*LLC v. U.S. Hung Wui Invs. Inc.* (*In re F & F, LLC*) (9th Cir. B.A.P. 2010) 2010 Bankr. LEXIS 5029 ............................................................................. 17

*McGinley v. United States* (D. Neb. 1996) 942 F.Supp. 1239 ...................................... 14

*Sgro v. United States* (7th Cir. 1979) 609 F.2d 1259 ........................................... 15

*Suarez v. United States* (Bankr. S.D. Fla. 1995) 182 B.R. 916........................................ 14

*Sun Valley Newspapers, Inc. v. Sun World Corp.* (*In re Sun Valley Newspapers, Inc.*) (9th Cir. BAP 1994) 171 B.R. 71............................................................ 10

*Timbers, supra,* 484 U.S. 365.................................................................. 18

*United States Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.* ("*Timbers*") (1988) 484 U.S. 365.............................................. 2

*United States v. Battley* (*In re Berg*) (B.A.P. 9th Cir. 1995) 188 B.R. 615 .................... 14

*United States v. Cabral* (E.D. Cal. 2008) 2008 U.S. Dist. LEXIS 73968...................... 15

THE RYAN FIRM
A Professional Corporation

*United States v. Comparato* (2d Cir. 1994) 22 F.3d 455 ................................................. 15

**State Cases**

*People v. Garg* (1993) 16 Cal.App.4th 357 .................................................................... 15

*R-Ranch Markets #2, Inc. v. Old Stone Bank* (1993) 16 Cal.App.4th 1323 ...................... 4

*Vallely Investments v. BancAmerica Commercial Corp.* (2001) 88 Cal.App.4th 816 ........................................................................................................................... 4

**Federal Statutes**

11 U.S.C. § 362(d)(2) ..................................................................................................... 2

11 U.S.C. § 541(d)(2) ..................................................................................................... 1

26 U.S.C. § 6321 .......................................................................................................... 14

**State Statutes**

Code § 362(d)(2)(B) ..................................................................................................... 11

**Other Authorities**

Gov. Code § 7170 .......................................................................................................... 15

Rev. & Tax Code § 19221 .............................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE RYAN FIRM**
A Professional Corporation

Table of Authorities

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**1.  INTRODUCTION**

Creditor Genova Capital ("Genova" or "Creditor") previously moved this Court for relief from the automatic bankruptcy stay in order to allow it to foreclose on another deed of trust that is also secured by the Subject Property by showing that the fundamental premise upon which debtor Brigham Field's ("Debtor") Chapter 11 bankruptcy case is premised—that the real property located at 11802 Ellice Street, Malibu, CA 90265 (the "Subject Property") is "property of the estate" pursuant to 11 U.S.C. § 541—was false. Indeed, Debtor has no ownership interest in the Subject Property at all whatsoever, whether legal or equitable, since it was previously sold at a non-judicial foreclosure sale to Genova pursuant to a third position deed of trust held by Genova in August 2019.

In opposition to that motion, Debtor argued that, while he may not currently own the Subject Property, he has filed a "quiet title" action in an effort to invalidate Genova's prior foreclosure, which would hypothetically re-vest title to the Subject Property in Debtor's name at some point in the future (best case scenario, in 4 or more years once the trial court proceedings are concluded and any and all appellate issues are resolved); Genova does not dispute that this cause of action is "property of the estate."  Based on this possibility, Debtor argued that the Court should deny Genova's motion because, at some point in the future, he may have title to the Subject Property, which he could then sell in order to reorganize his affairs pursuant to a Chapter 11 plan.  This Court ultimately denied Genova's motion—without prejudice—reasoning that it was too early in Debtor's case to allow for relief from stay so that Genova could sell the Subject Property, which would effectively deny Debtor of his ability to reorganize his affairs under Chapter 11.

Creditor now renews its motion for relief under 11 U.S.C. § 541(d)(2).  Once again, this motion is premised on the fact that the Subject Property is owned by Genova and not "property of the estate."  Further, Debtor's claim—that at some point in the future, likely not 4 or more years from the present, he may prevail in the quiet title action, and, thus, he may re-acquire the Subject Property such that it can be sold and allow him to reorganize

THE RYAN FIRM
A Professional Corporation

under Chapter 11—is untenable as a means to avoid relief from stay.  Indeed, as explained
by the Supreme Court in *United States Savings Association of Texas v. Timbers of Inwood
Forest Associates, Ltd.* ("*Timbers*") (1988) 484 U.S. 365, to avoid a motion for relief from
stay under 11 U.S.C. § 362(d)(2):

> It is the burden of the debtor to establish that the collateral at issue is
> "necessary to an effective reorganization."  See § 362(g). What this requires
> is not merely a showing that if there is conceivably to be an effective
> reorganization, this property will be needed for it; but that the property is
> essential for an effective reorganization that is in prospect. This means that
> there must be "**reasonable possibility of a successful reorganization** within
> a **reasonable time**."

*Id.* at 375 – 76 (emphasis added).  Debtor cannot meet that burden.

Indeed, having a possibility of success in the quiet title case in 4+ years (and that
has already been pending since November 2018) is not a "reasonable time."  Even if the
Court were to presume that Debtor will re-acquire title to the Subject Property such that it
could be sold pursuant to the contemplated Chapter 11 plan, the Subject Property would
**still** not be necessary for an effective reorganization as there is **no equity in the Subject
Property.**  The Subject Property is worth **$17,900,000.00**.  However, Debtor admits to the
existence of several debts and/or liens on the Subject Property, and others are proven by
extrinsic evidence; these liens—along with the cost of sale of the Subject Property—total
**$24,793,742.43**, exclusive of accumulated interest during the course of the bankruptcy case
(and the quiet title case).  The lack of equity in the Subject Property is compounded even
further once the accrual of interest is added to the debt total, particularly for the time period
during which Debtor will be prosecuting his quiet title action and attempting to regain title
to the Subject Property.

As a result, there is absolutely no possibility that Debtor can reorganize his affairs—
even if one were to ignore the "reasonable time" requirement from *Timbers* and assume
Debtor will eventually prevail in the quiet title case and be able to sell the Subject Property
as part of his purported plan to reorganize.  Thus, Creditor's motion must be granted.

**THE RYAN FIRM**
A Professional Corporation

2

THE RYAN FIRM
A Professional Corporation

## 2. RELEVANT FACTUAL SUMMARY AND PROCEDURAL POSTURE

### A. Foreclosure on Third Position Loan and Purchase of Subject Property

On or April 11, 2017, Debtor executed a third position deed of trust to secure a loan encumbering the Subject Property. RFJN, Exhibit 1. Debtor eventually defaulted on this secured loan, which resulted in the commencement of the non-judicial foreclosure process on April 15, 2019, when a Notice of Default was recorded against the Subject Property. RFJN, Exhibit 2. Debtor failed to cure the default on the secured loan, which led to a Notice of Trustee's Sale being recorded on June 18, 2019. RFJN, Exhibit 3. Ultimately, the Subject Property was sold to Genova at a trustee's sale in August 2019; a Trustee's Deed Upon Sale was issued to Genova and recorded in August 2019. RFJN, Exhibit 4.

### B. Litigation History

On August 28, 2019, Genova filed the UD Action to obtain possession of the Subject Property from Debtor and third-party Colette Pelissier. On September 3, 2019, Debtor filed and served an answer to the complaint and a cross-complaint to quiet title. RFJN, Exhibit 5. However, recognizing that they could not quiet title in the UD Action, that cross-complaint was dismissed. RFJN, Exhibit 6.

The unlawful detainer court held that, while Debtor had not tendered the full amount due under the loan before the foreclosure sale, the parties were engaged in good faith negotiations to resolve the matter, simply ran out of time to pay off the loan, and, thus, the unlawful detainer court conditionally ruled in favor of Debtor on the "issue of possession of the property, contingent upon the Debtor paying off the subject note in its entirety plus cost." RFJN, Exhibit 7 (emphasis added).

Genova appealed the trial court's ruling. RFJN, Exhibit 9. This appeal is still pending before the California Court of Appeal. RFJN, Exhibit 10.

Debtor has also filed a separate quiet title action against Genova regarding the Subject Property. This quiet title action is has been ongoing for over a year, but Debtor has not done any discovery, or filed any motions – other than to impede discovery – and has forced Genova to file motions to compel in order to obtain proper answers to discovery.

3

1    RFJN, Exhibit 11.

2         **C.    Genova's Ownership of a Second Position Deed of Trust**

3         While Genova already foreclosed on a third position deed of trust in August 2019,

4    it currently holds the beneficial interest in a second position deed of trust.  RFJN, Exhibit

5    12.  The foreclosure of the third position deed of trust only terminated interests that were

6    junior in priority to the third position deed of trust, and thus Genova's second position deed

7    of trust remains.  *R-Ranch Markets #2, Inc. v. Old Stone Bank* (1993) 16 Cal.App.4th 1323,

8    1328, ("When property is sold under a trust deed, the purchasers acquire title free and clear

9    of all encumbrances subsequent to the deed of trust"); *Vallely Investments v. BancAmerica*

10   *Commercial Corp.* (2001) 88 Cal.App.4th 816, 824 ("[a] valid foreclosure terminates all

11   interests in the real estate junior to the mortgage being foreclosed").  This second position

12   deed of trust is the lien Genova seeks to foreclose upon after obtaining relief from the

13   automatic bankruptcy stay.

14   **3.    GROUNDS FOR RELIEF FROM STAY**

15        The bankruptcy court may grant relief from the automatic bankruptcy stay where:

16   (1) there is good cause, including the lack of adequate protection of an interest in property;

17   (2) the debtor has no equity in the property and that the property is not necessary to an

18   effective reorganization; (3) in single asset real estate cases, upon certain "quick trigger"

19   grounds; and (4) the debtor's petition was filed as part of a scheme to delay, hinder or

20   defraud creditors that involved either the transfer of all or part ownership of, or other

21   interest in, the property without the consent of the secured creditor or court approval and

22   multiple bankruptcy filings affecting the real property.  11 U.S.C. § 362(d)(1) – (4).

23   **4.    SINCE GENOVA OWNS THE SUBJECT PROPERTY AND IT IS NOT**

24   **"PROPERTY OF THE ESTATE," DEBTOR HAS NO EQUITY IN THE**

25   **SUBJECT PROPERTY AND IT IS NOT NECESSARY TO AN EFFECTIVE**

26   **REORGANIZATION**

27        As explained in Creditor's prior motion, this bankruptcy case is based on the notion

28   that Debtor is the "owner" of the Subject Property and that a sale of the Subject Property

**THE RYAN FIRM**
A Professional Corporation

4

will allow "all secured and unsecured creditors [to] be paid in full." Dkt Entry No. 19, at p. 1:24 – 2:3; *see also id.* at 3:8 – 10 ("Debtor filed this Chapter 11 case on May 12, 2020, to conduct an orderly sale of the Property for the benefit of funding payments to creditors"). However, as explained further in that motion, Debtor has no ownership interest in the Subject Property since Genova purchased it nine (9) months before the filing of this bankruptcy. RFJN, Exhibit 4.

Genova's ownership of the Subject Property precludes a finding that the Subject Property is "property of the estate." 11 U.S.C. § 541, subd. (a); *Goldenberg v. Deutsche Bank Nat'l Trust Co.* (2013) 2013 Bankr. LEXIS 4665; *Williams v. Levi* (2005) 323 B.R. 691. Thus, it is not even available, much less "necessary," to an effective reorganization. *In re Dudley* (Bankr. M.D. Pa. 1984) 38 B.R. 666, 671 (granting relief from stay based on finding debtor had "no equity" in property as a result of pre-petition foreclosure); *In re Sparkman* (Bankr. E.D. Pa. 1981) 9 B.R. 359 (due to foreclosure, "debtor had no interest whatsoever in that property when he subsequently filed his petition under chapter 13 of the Code. Therefore, the debtor can have no equity in that property within the meaning of that term in § 362(d)(2), and the mortgagee is entitled thereunder to relief").

A detailed analysis of this issue was previously provided to the Court in support of Creditor's prior motion for relief from stay. The substance of this analysis was not disputed and, thus, will not be repeated in this renewed motion. However, Creditor provides the Court a copy of this analysis in the Request for Judicial Notice filed in support of this renewed motion. RFJN, Exhibit 13. In any event, the Court has previously endorsed Genova's position on this issue and determined that the Subject Property is not property of the estate when it denied Debtor's ex parte motion to purchase insurance coverage for the real property, and when it denied Debtor's motion to employ a real estate agent to sell the Subject Property. Dkt Entry Nos. 47, 60.

/ / /

/ / /

/ / /

**THE RYAN FIRM**
A Professional Corporation

**5.**  **DEBTOR CANNOT MEET HIS BURDEN IN DEMONSTRATING THAT THE SUBJECT PROPERTY IS NECESSARY FOR AN EFFECTIVE REORGANIZATION**

As explained above, Debtor argued in opposition to Creditor's previous motion that, while he may not currently own the Subject Property, he has filed a "quiet title" action in an effort to invalidate Genova's prior foreclosure, which would hypothetically re-vest title to the Subject Property in Debtor's name at some point in the future (best case scenario, in 4 or more years once the trial court proceedings are concluded and any and all appellate issues are resolved). This Court was persuaded by the idea that Debtor's speculative success in the lengthy quiet title action may eventually provide Debtor title to the Subject Property and, thus, a means to reorganize. As a result, the Court denied Creditor's previous motion for relief from stay without prejudice.

However, as explained below, Debtor's claim—that at some point in the future, likely not 4 or more years from the present, he may prevail in the quiet title action, and, thus, he may re-acquire the Subject Property such that it can be sold and allow him to reorganize under Chapter 11—is untenable as a means to avoid relief from stay. Indeed, the mere prospect of success in 4+ years is not a "reasonable time" within the meaning of the requirement "necessary to an effective reorganization," as defined by *Timbers*.

Further, even putting that issue aside, and assuming Debtor had title to the Subject Property **right now** (and not 4+ years down the road), based on Debtor's own admissions, the Subject Property would **still** not be necessary for an effective reorganization as there is **no equity in the Subject Property.** Specifically, while the Subject Property is worth **$17,900,000.00**, the liens encumbering the Subject Property—along with the cost of sale of the Subject Property—total **$24,793,742.43**, exclusive of the accumulated interest during the course of the bankruptcy case (and the quiet title case). This lack of equity in the Subject Property is compounded even further once the accrual of interest is added to the debt total, particularly for the time period during which Debtor will be prosecuting his quiet title action and attempting to regain title to the Subject Property. Once those figures

THE RYAN FIRM
A Professional Corporation

6

1 are added, there can be absolutely no dispute that there is no equity in the Subject Property

2 and, thus, it cannot be sold and the equity used as a means for Debtor to reorganize.

**A.** **Debtor Cannot Meet His Burden in Showing the Ability to Reorganize**

**within a "Reasonable Time" Pursuant to *Timbers***

5 As explained above, Debtor does not currently own the Subject Property and, thus,

6 he presently has absolutely no equity in the Subject Property. This cannot be—and has not

7 been—disputed by Debtor. As a result, it is incumbent upon Debtor to show a "**reasonable**

8 **possibility of a successful reorganization** within a **reasonable time**." *Timbers*, *supra*,

9 484 U.S. 365, 375 – 76. This is a burden he cannot meet.

10 Putting aside the "reasonable possibility of a successful reorganization" burden,

11 Debtor cannot show that he can accomplish the herculean feat of litigating the quiet title

12 case to a successful resolution in which he reacquires title to the Subject Property in a

13 "reasonable time," as required by *Timbers*. Indeed, it is highly unlikely that the pending

14 quiet title action—in which Debtor places his sole reliance for regaining title to the Subject

15 Property and being able to reorganize—will be resolved at any time in the next 4+ years.

16 Specifically, this action was only filed on August 23, 2019. However, after Debtor

17 filed an ex parte application to consolidate their unlimited action with the unlawful detainer

18 matter on September 13, 2019, Debtor has not filed a single paper to prosecute or otherwise

19 advance this case—spanning **13 months**. Dec. of Ryan at ¶ 10. Specifically:

20 • Debtor has not filed a single motion;

21 • Debtor has not issued a single discovery request;

22 • Debtor has not produced a single document in response regarding his alleged tender

23 in response to the discovery issued by Genova (i.e., the basis for their quiet title

24 claim);

25 *Id.* at ¶¶ 4 – 6.

26 Rather, the only papers filed by Debtor have been in response to motions filed by

27 Genova, or to quash discovery sought by Genova; to that end, Debtor is actively attempting

28 to hinder the advancement and prosecution of this case. Specifically:

THE RYAN FIRM
A Professional Corporation

7

- Genova issued discovery in the quiet title action on November 26, 2019, and Debtor stonewalled, agreeing to answer only after meeting and conferring;

- Genova issued three subpoenas in the quiet title case (to Wells Fargo Bank, the water company for the Subject Property, and the power company for the Subject Property). Debtor filed motions to quash each of these subpoenas;

- On September 2, 2020, the court in the quiet title case issued an order requiring Code-complaint responses to all four sets of discovery issued by Genova and ordering Wells Fargo Bank to produce documents pursuant to the document subpoena issued by Genova (all within 20 days).

Dec. of Ryan at ¶¶ 7 – 9, 11. Additionally, the court in this quiet title action has not set the case for trial. *Id.* at ¶ 3.

Debtor's failure to prosecute the quiet title action, in addition to his attempts to actually impede the prosecution of that case demonstrates the **substantial** unlikeliness that the quiet title case will be resolved in any "reasonable time." This is further compounded by the fact that, due to the COVID-19 pandemic, court closures, and preference being given to criminal trials due to the backlog of cases courts are dealing with, and given the state of this case, it is substantially unlikely that a trial of this case will occur anytime in the next 2 to 3 years. Further, regardless of who prevails, it is substantially likely that the losing party will file an appeal of any adverse judgment and that the appellate proceedings are unlikely to be briefed, argued, and resolved in any less than another 2 to 3 years.

Thus, at best, the quiet title action will not be resolved for 4 years. However, given Debtor's complete failure to prosecute that case, attempts to impede that case, and the impacts of the current COVID-19 pandemic, it is far more likely that this case—and all related appeals—is not resolved for 6 or more years. Only at this time will anyone know whether or not Debtor will ever regain any interest in the Subject Property which he could then use to reorganize under Chapter 11. Surely, this is not a "reasonable time" within the meaning of *Timbers*.

/ / /

THE RYAN FIRM
A Professional Corporation

Memorandum of Points and Authorities

THE RYAN FIRM
A Professional Corporation

**B.**      **The Lack of an Effective Reorganization is Amplified by Debtor's Newly Proposed Chapter 11 Reorganization Plan, Which is *per se* Not Confirmable**

As mentioned above, Debtor's inability to reorganize within a reasonable time is further exemplified by the grossly inadequate plan and disclosure statement recently filed. "Chapter 11 was never intended to be used as a fist in a two party bout. The Chapter is entitled reorganization and not litigation." *In re HBA E., Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988). And although a plan, in part, may be based on future success in a pending lawsuit, there must be evidence before the court of the reasonable likelihood of that success. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) ("A plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely."). Here, there is no evidence of that success, and the plan is *entirely dependent* on success in that forum, as well as sale of the Subject Property thereafter for over $17 million. There is no evidence before the Court that either of those things will occur.

Likewise, the plan punts on how Debtor will deal with the massive $7 million outstanding tax liability. Instead, Debtor merely states that amending his returns will take care of $7,000,000.00 in back taxes, which is implausible at best. Likewise, the plan does not account for how Debtor will satisfy or repay any of the $10,725,400.11 of "other general unsecured claims based on proofs of claim." (ECF 124, at 23 ["Due to the extent of recoveries being heavily dependent on success by the Litigation Trust in pursuing litigation claims such as avoidance actions or the Quiet Title Action, it is not possible at this time to estimate the ultimate recovery for holders of Class 4.1 allowed claims from the Litigation Trust."], 41 ["UNKNOWN – DEPENDS ON LIQUIDATION OF LITIGATION CLAIMS"].)

Further, there is no evidence for how the litigation trust will be funded. (ECF 124, at 24 ["Prior to the Effective Date, the Debtor shall produce evidence satisfactory to the Court of his ability to fund Plan payments."].) And regarding the litigation trust, there is

no mention of how it will prosecute or defend the ongoing Genova UD appeal, or the Helena Deeds appeal, and how those administrative costs will affect the plan. The estimate of litigation costs and administrative expenses should be doubled or tripled based on the two additional actions affecting Debtor (Genova UD Appeal and Helena Deeds Appeal). (ECF 124, at 43 ["While the Quiet Title Action is expected to be somewhat complex, the case is not expected to be so complex that over 1,300 hours of work is reasonably expected to be performed by the Litigation Trustee."].) The plan is actually looking at litigation trustee fees of likely over $1.5 million, not $500,000.00, and actual litigation attorney fees of $5,100,000.00 (based on Debtors estimation of the Genova fees costing $1.7 million). As such, the proposed current plan only amplifies the fact that the Debtor cannot use the Subject Property to effectively reorganize.

### C.  Even if He Owned the Subject Property, a "Successful Reorganization" is Not Possible Since There is No Equity in the Subject Property

Putting aside the completely speculative nature of whether Debtor will **ever** regain any sort of ownership interest in the Subject Property which he posits selling as a means to reorganize (as opposed to merely the quiet title cause of action), as well as the "unreasonable time" it will require for this speculation to possibly become a reality (or for these hopes to be dashed altogether), there cannot be any dispute that the Subject Property is not necessary for a "successful reorganization" because—based on Debtor's own admissions—he has absolutely no equity in the Subject Property; equity, for purposes of § 362(d)(2)(A), is the difference between the value of the property and all the encumbrances on it. *Sun Valley Newspapers, Inc. v. Sun World Corp.* (*In re Sun Valley Newspapers, Inc.*) (9th Cir. BAP 1994) 171 B.R. 71, 75.

Specifically, the Subject Property is worth **$17,900,000.00**. However, he admits to the existence of several debts and liens on the Subject Property; the total sum of these liens—along with the costs of the proposed sale of the Subject Property—is approximately **$24,793,742.43**. Further, this sum does not account for the accrual of interest for the time period in which this case and the quiet title case will be prosecuted. Once those figures are

THE RYAN FIRM
A Professional Corporation

10

added, there can be absolutely no dispute that there is no equity in the Subject Property and, thus, it cannot be sold and the equity used as a means for Debtor to reorganize.

Even though a debtor may be given slightly more indulgence when a relief from stay motion is filed earlier in a reorganization proceeding "the 'effective reorganization' standard must be given meaning by the bankruptcy court. To prevail against the secured creditor who has moved to lift the stay under § 362(d)(2), the debtor must do more than evince high hopes; he must be able to show a reasonable prospect for a successful reorganization within a reasonable time." *In re Timbers of Inwood Forest Associates, Ltd.* (1987) 808 F.2d 363, 371 – 72; *In re Sun Valley Newspapers, Inc.* (9th Cir. BAP 1994) 171 B.R. 71, 75 ("Courts usually require the debtor to do more than manifest unsubstantiated hopes for a successful reorganization"); *La Jolla Mortgage Fund v. Rancho El Cajon Associates* (Bankr. S.D. Cal. 1982) 18 Bankr. 283, 291 ("It is not enough for a debtor to argue that the automatic stay should continue because it needs the secured property in order to propose a reorganization. If this were the test all property held by debtors could be regarded as necessary to an effective reorganization. The key word under Code § 362(d)(2)(B) is 'effective'; the property must be necessary to an effective reorganization").

### i. The Subject Property Has a Value of $17,900,000.00

As an initial matter, the Subject Property has a value of $17,900,000.00. Mtn., Exhibit 4.

### ii. Debtor Has Admitted the Existence of Numerous Secured Liens Encumbering the Subject Property; the Total Value of These Liens Exceeds the Value of the Subject Property

Debtor has admitted that the Subject Property is encumbered by numerous liens held by Banc of California, Genova, Helena Deeds, Semler Companies, and Crowne Point of Malibu HOA. Dkt Entry No. 29 (Schedule D). These secured creditors have since filed Proofs of Claims totaling **$16,368,916.39** in secured liens:

| **Creditor** | **Value** | **Source** |
| --- | --- | --- |

THE RYAN FIRM
A Professional Corporation

| Banc of California | $9,577,414.73 | Proof of Claim 15-1 |
|---|---|---|
| Genova Capital LLC | $3,449,629.13 | Proof of Claim 14-1 |
| Helena Deeds | $2,586,030.74 | Proof of Claim 12-1 |
| Semler Companies | $749,590.19 | Proof of Claim 16-1 |
| Crowne Point of Malibu HOA | $6,251.60 | Proof of Claim 10-1 |
| **Total** | **$16,368,916.39** | |

In addition to these liens, Debtor also admits to secured liens in favor of Darice, LLC, and Robert Lechman DBPPT; however, Debtor fails to provide any valuation for the amount of these liens. Dkt Entry No. 29 (Schedule D).

In any event, even if the Court were to only consider the above-listed debts, which Debtor concedes are liens on the Subject Property, the Debtor already is nearly at a negative equity. The amount of this negative equity increases once the Court accounts for the costs of sale of the Subject Property (the stated goal of this bankruptcy proceeding), admitted back-due taxes (which are liens as a matter of law), and the additional interest that will accrue during the pendency of this case and the quiet title action (which must be resolved, and resolved in Debtor's favor, before he can even claim ownership of the Subject Property, let alone sell it).

### iii.    Debtor Has Admitted to Another $1,074,000.00 for Costs of Sale

Further, when Debtor moved to employ a real estate agent to sell the Subject Property (which was denied since Debtor does not own the Subject Property), Debtor's motion conceded that any sale of the Subject Property would require 5% commission to the participating brokers and an estimated 1% for escrow costs. RFJN, Exhibit 14, Dec. of Dazzan at ¶ 5. Based on a purchase price at the stated value of the Subject Property-- $17,900,000.00 (Mtn., Exhibit 4)—the real estate commissions and escrow costs would further reduce the equity in the Subject Property by $1,074,000.00:

**THE RYAN FIRM**
A Professional Corporation

| Creditor | Value |
|---|---|
| Costs of Sale | $1,074,000.00 |
| **Add Admitted Liens from § 5(B)(ii)** | **$16,368,916.39** |
| **Total** | **$17,442,916.39** |

After adding this cost of sale to the admitted liens, and debts listed above, the property is even closer to a negative equity.

>  **iv.  Debtor Has Also Admitted the Existence of Delinquent State and Federal Taxes, Which, as a Matter of Law, are Secured Liens Encumbering the Subject Property in the Sum of $7.49M**

Debtor also admits owing extensive back-due taxes to the Internal Revenue Service ("IRS") and the Franchise Tax Board ("FTB"). Dkt Entry Nos. 1, 29 (Schedule E/F). The IRS has filed a Proof of Claim, evidencing back-due taxes in the sum of $7,303,508.13; the Debtor has conceded the sum of back-due taxes owed to the FTB:

| Creditor | Value | Source |
|---|---|---|
| Internal Revenue Service | $7,303,508.13 | Proof of Claim 2-1 |
| Franchise Tax Board | $191,317.91 | Mtn., Exhibit 4, Dkt Entry Nos. 1, 29 (Schedule E/F) |
| **Add Admitted Liens from** | **$16,368,916.39** | **Supra at § 5(B)(ii)** |
| **Add Admitted Costs of Sale** | **$1,074,000.00** | **Supra at § 5(B)(iii)** |

**THE RYAN FIRM**
A Professional Corporation

13

| **Total** | **$24,937,742.43** | |
| | **(Negative Equity of** | |
| | **$7,037,742.43)** | |

The back-due taxes constitute a lien on the Subject Property as a matter of law, as explained in detail below.  After adding the existence of the back-due taxes to the admitted liens and costs of sale set forth above, there is a resulting **negative equity of $7,037,742.43**.  Thus, even if Debtor could re-gain title to the Subject Property, he would have absolutely no equity in the Subject Property to use in any prospective reorganization.

Debtor will undoubtedly argue that, though he may owe the back-due taxes, they are not liens on the Subject Property.  However, Debtor would be wrong on this point.

### a. The Federal IRS Debt is a Lien as a Matter of Law

26 U.S.C. section 6321 states: if "any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) **shall be a lien** in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321 (emphasis added).

As is clear from the above, the creation of the lien does not require any recording; rather, it arises as a matter of law once taxes are not paid; indeed, "this statutory lien is perfected against a taxpayer without the necessity of filing a Notice of Federal Tax Lien." *United States v. Battley* (*In re Berg*) (B.A.P. 9th Cir. 1995) 188 B.R. 615, 618 (affd' in *Berg v. United States* [9th Cir. 1997] 121 F.3d 535, 537); *Choate v. Tubbs* (W.D. Ten. 2004) 2004 U.S. Dist. LEXIS 17925 ("The premise set forth by Tracy Tubbs, that the federal tax liens at issue in this case are not effective against him unless recorded by an actual Notice of Federal Tax Lien, is erroneous"); *McGinley v. United States* (D. Neb. 1996) 942 F.Supp. 1239, 1243; *Suarez v. United States* (Bankr. S.D. Fla. 1995) 182 B.R. 916, 919.

For example, in *Suares v. Verizon Communs., Inc.* (S.D. NY 2012) 2012 U.S. Dist. LEXIS 143335, the plaintiff claimed that a tax levy was invalid because there was no

14

recorded notice of the federal tax lien in the county recorder's office. However, the Court rejected this claim; in doing so, the court explained that a "federal tax lien, however, 'attaches automatically at the time of the assessment and remains in effect until the liability is satisfied.'" *Id.* at 13 – 14; *United States v. Comparato* (2d Cir. 1994) 22 F.3d 455, 457. As further explained by the Court in *Sgro v. United States* (7th Cir. 1979) 609 F.2d 1259, "[t]hat the Government might not file notice until some future date, if at all, does not affect the immediate attachment of a tax lien when liability is admitted or assessed. Seemingly unencumbered property may therefore in fact be subject to a 'secret' tax lien, which remains undisclosed until the Government files notice. *Id.* at 1261.

As a result of Debtor's admitted back-due taxes, the IRS **automatically** possesses a lien over the Subject Property for this same sum.

###### b. The Franchise Tax Board Debt is a Lien as a Matter of Law

Pursuant to Revenue and Tax Code section 19221, if any taxpayer fails to pay any tax at the time that it becomes due and payable, the amount thereof, (including interest, penalties, and any costs that may accrue in addition thereto) "shall thereupon be a perfected and enforceable state tax lien." Rev. & Tax Code § 19221, subd. (a); *United States v. Cabral* (E.D. Cal. 2008) 2008 U.S. Dist. LEXIS 73968, at 26 – 27.

Government Code section 7170 states that a "state tax lien attaches to all property and rights to property whether real or personal, tangible or intangible, including all after-acquired property and rights to property, belonging to the taxpayer and located in this state," including a "dwelling notwithstanding the prior recording of a homestead declaration." Gov. Code § 7170, subd. (a); *People v. Garg* (1993) 16 Cal.App.4th 357, 361. As section 7170 makes clear, it is not necessary that a notice of the lien be recorded in order to be effective, at least as to the taxpayer (i.e., owner of the property), though Government Code section 7171 provides that such notices "may" be recorded in order to, for example, acquire lien priority over other creditors. *See* Gov. Code § 7170, subd. (b); *People v. Garg* (1993) 16 Cal.App.4th 357, 361.

As a result, and based on Debtor's admission concerning the existence of the back-

THE RYAN FIRM
A Professional Corporation

15

due debt, there cannot be any dispute that the Franchise Tax Board possesses a lien over the Subject Property.

      **c.**      **Accrual of Interest Further Increases the Negative Equity**

After just totaling the amounts of the above-described liens on the Subject Property, together with costs of case (at the rate admitted by Debtor), there is already **negative equity in the sum of $1,798,916.39**; as further set forth above, after admitted back-due taxes that Debtor admits he owes, and which are liens on the Subject Property as a matter of law, the **negative equity grows to $8,836,658.82**. This amount increases even further once **annual interest is added** for each year during which Debtor will be litigating the quiet title action, which is necessary for Debtor to re-gain any ownership interest in the Subject Property and in order to be able to sell the Subject Property; indeed, Debtor cannot reorganize his affairs until that quiet title action runs its course (even assuming Debtor could prevail in that case).

Specifically, Debtor's debts carry the following known interest rates (there are additional rates which are currently unknown to Creditor) and will accumulate the following-described annual interest for each year the quiet title (and, thus, this bankruptcy action) are pending:

| **Creditor** | **Admitted Sum of Lien** | **Interest Rate** | **Annual Interest** | **Source** |
|---|---|---|---|---|
| Banc of California | $9,577,414.73 | 4.125% | $395,068.35 | Proof of Claim 15-1 |
| Genova Capital LLC | $3,449,629.13 | 18% | $620,933.24 | Proof of Claim 14-1 |
| Helena Deeds | $2,586,030.74 | 6% | $155,161.84 | Proof of Claim 12-1; Code Civ. Proc. §§ 685.010, 685.020 |
| Semler Companies | $749,590.19 | 10%. | $74,959.01 | Proof of Claim 16- |

THE RYAN FIRM
A Professional Corporation

| | | | | |
|---|---|---|---|---|
| | | | | 1; Code Civ. Proc. §§ 685.010, 685.020 |
| **Total** | | | **$1,246,122.44** | |

As the above demonstrates, even assuming the quiet title action was resolved in a "reasonable time" **and** in Debtor's favor, Debtor would **still** be unable to sell the Subject Property as a means to reorganize due to the substantial lack of equity. This is particularly true once the Court takes into consideration the amount of time that must pass before Debtor can even determine whether or not he will ever own the Subject Property; this is likely to take 4-6 years, at a minimum, including applicable appeals. During this time, Debtor will accrue annual interest of **$1,246,122.44**, and totaling between **$4,984,489.76** and **$7,476,734.64** during the pendency of the quiet title and this case; clearly, this is a substantial enhancement to the already-existing lack of equity. As a result, Creditor is entitled to relief from stay.

Courts in similar situations have repeatedly and consistently held that a debtor cannot use a property to reorganize when he or she has no equity in the property. *In re 6200 Ridge, Inc.* (Bankr. E.D. Pa. 1987) 69 B.R. 837, 844 (where there is only one asset of the debtor, the asset has no equity, and the debtor is not conducting any business, "there is no basis to conclude that property lacking equity has any value to the estate in a liquidating plan"); *In re Hanley* (W.D. Pa. 1989) 102 Bankr. 36, 37 (without the debtor's having a "reasonable possibility of a successful reorganization within a reasonable time" and no equity in the property, the court lifted the stay); *In re Franklin* (N.D. Ill. BK. 2012) 476 B.R. 545; *F & F, LLC v. U.S. Hung Wui Invs. Inc.* (*In re F & F, LLC*) (9th Cir. B.A.P. 2010) 2010 Bankr. LEXIS 5029; *In re Anchorage Boat Sales, Inc.* (E.D. N.Y. 1980) 4 B.R. 635.

The fact that granting relief from stay may effectively terminate Debtor's bankruptcy proceeding is of no consequence. Indeed, the "mere indispensability of the property to the debtor's survival and the debtor's hopes of reorganization are insufficient

17

THE RYAN FIRM
A Professional Corporation

1   to justify continuation of the stay when reorganization is not reasonably possible." *In re*

2   *Timbers of Inwood Forest Associates, Ltd.* (1987) 808 F.2d 363, 371.  Sated otherwise,

3   when there is no reasonable likelihood that the statutory objective of reorganization can be

4   realized or when the debtor unreasonably delays, then the automatic stay and other

5   statutory provisions designed to accomplish the reorganization objective become

6   destructive of the legitimate rights and interests of creditors, the intended beneficiaries.  In

7   that situation it is incumbent upon the bankruptcy judge to effectuate the provisions of the

8   Bankruptcy Code for the protection of creditors lest the judge keep the Code's word of

9   promise to  the ear of creditors and break it to their hope." *In re Timbers of Inwood Forest*

10  *Associates, Ltd.* (1987) 808 F.2d 363, 373.  This is true even if the motion for relief is

11  brought during the debtor's four-month exclusivity period in Chapter 11 cases. *Timbers,*

12  *supra,* 484 U.S. 365, at 375 – 76.

13  **6.    CONCLUSION**

14  As set forth herein, Debtor does not own the Subject Property, cannot possibly

15  demonstrate that he will re-gain title to the Subject Property in a "reasonable time," there

16  is no equity in the Subject Property (even assuming it was owned by Debtor **right now**),

17  and, thus, the Subject Property is not necessary to an effective reorganization.   Thus,

18  Genova is entitled to an order providing it relief from stay to foreclose on the second

19  position deed of trust.

20

21  DATED: September 15, 2020                    THE RYAN FIRM
                                                 A Professional Corporation
22

23

24

25  By:    /s/ Timothy Ryan
                                                 TIMOTHY M. RYAN
26                                               ANDREW J. MASE
                                                 Attorneys for Genova Capital, Inc.
27

28

**THE RYAN FIRM**
A Professional Corporation

18

**PROOF OF SERVICE**

I am over the age of eighteen years and not a party to the within action.  I am employed by The Ryan Firm, A Professional Corporation, whose business address is: 2603 Main St, Suite 1225, Irvine, CA 92614.

On September 15, 2020, I served the within document(s) described as: **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDITOR GENOVA CAPITAL, INC.'S RENEWED MOTION FOR RELIEF FROM STAY** on the interested parties in this action:

☒　　by transmitting via electronic mail the document(s) listed above to the email addresses provided by counsel.

☒　　by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s) ☒ addressed as follows: ☐ addressed as stated on the attached mailing list.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| D. Edward Hays **(ECF ONLY)** | Tel:  * <br> Fax: * <br> Email: ehays@marshackhays.com <br> dwood@marshackshays.com | Attorney for debtor |
| United States Trustee (LA) **(ECF ONLY)** | Tel: * <br> Fax: * <br> Email: <br> ustpregion16.la.ecf@usdoj.gov | |
| Brian D. Fittipaldi **(ECF ONLY)** | Tel: * <br> Fax: * <br> Email: brian.fittipaldi@usdoj.gov | |
| Colette Pelissier <br> Brigham Field <br> 11802 Ellice Street <br> Malibu, CA 90265 **(PERSONAL SERVICE ONLY)** | Tel: * <br> Fax: * <br> Email:* | Debtor and Codebtor |
| Colette Pelissier <br> Brigham Field <br> 2 Bloomfield Hills <br> Henderson, NV 89052 **(PERSONAL SERVICE ONLY)** | Tel: * <br> Fax: * <br> Email:* | Debtor and Codebtor |

☒　　**CM/ECF** (U.S. Bankruptcy Court, Central District of California, Electronic Case Filing Procedures § 3-8)—Whenever a pleading, document or court order is filed electronically in accordance with ECF Procedures, the system will automatically generate the Notification of Electronic Filing, which will be emailed to all Registered Participants who have consented to electronic service and have appeared in the case or adversary proceeding in which the document is filed.  This transmission of the Notification of Electronic Filing to a Registered Participant shall constitute effective service in accordance with L.B.R. 9036-1.  All parties

*THE RYAN FIRM*
*A Professional Corporation*

1   who are not registered, if any, were served in the manner set forth above.

2   ☒   **BY PERSONAL SERVICE** (Code Civ. Proc. § 1011(a))—I caused to be delivered such envelope(s) by hand to the offices of the addressee(s).

3
4   ☒   (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

5   Executed on September 15, 2020, at Irvine, California.

7
8               /s/ Nasya Chou
                NASYA CHOU

**THE RYAN FIRM**
A Professional Corporation

# EXHIBIT 8

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Timothy M. Ryan, Bar No. 178059<br>THE RYAN FIRM<br>2603 Main Street, Suite 1225<br>Irvine, CA 92614<br>949-263-1800 (T)<br>949-872-2211 (F)<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

| In re:<br><br>BRIGHAM G. FIELD | CASE NO.: 9:20-bk-10622-DS<br><br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br><br>**(REAL PROPERTY)** |
| Debtor(s). | DATE:  10/6/2020<br>TIME:  11:30 a.m.<br>COURTROOM:  201 |
| **Movant:** CREDITOR GENOVA CAPITAL, INC. | |

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012        ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☒ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 1                            **F 4001-1.RFS.RP.MOTION**

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 9/15/20

THE RYAN FIRM
_____
Printed name of law firm (if applicable)

Timothy M. Ryan
_____
Printed name of individual Movant or attorney for Movant

/s/ Timothy M. Ryan
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

      *Street address*: 11802 Ellice Street
      *Unit/suite number*:
      *City, state, zip code*: Malibu, CA 90265

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __1__):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13 was filed on (*date*)  05/12/2020 .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay**:

   a. ☐ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

      (1) ☐ Movant's interest in the Property is not adequately protected.

         (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

      (2) ☐ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

         (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

         (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

         (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

         (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

         (F) ☐ Other (*see attached continuation page*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                          Page 3                          **F 4001-1.RFS.RP.MOTION**

(3) ☐ (*Chapter 12 or 13 cases only*)

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
    which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _4_ .

d. ☒ Other:
    Request for Judicial Notice; Proofs of Claim filed by other creditors.

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*          Page 4          **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☐ 11 U.S.C. § 362(d)(1) ☒ 11 U.S.C. § 362(d)(2) ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☒ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: _9/15/20_

THE RYAN FIRM
Printed name of law firm (*if applicable*)
Timothy M. Ryan
Printed name of individual Movant or attorney for Movant

/s/ Timothy M. Ryan
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                Page 5                    **F 4001-1.RFS.RP.MOTION**

## REAL PROPERTY DECLARATION

I, (*print name of Declarant*) _____ Joshua Hunter _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☒ I am employed by Movant as (*state title and capacity*):
      Chief Executive Officer (CEO)

   c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____2_____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____3_____.

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:
      *Street address*: 11802 Ellice Street
      *Unit/suite no.*:
      *City, state, zip code*: Malibu, CA 90265

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

      Attached hereto as Exhibit 1 and incorporated herein by reference.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

11802 Ellice Street

5. Type of property (*check all applicable boxes*):

   a. ☐ Debtor's principal residence      b. ☒ Other residence
   c. ☐ Multi-unit residential      d. ☐ Commercial
   e. ☐ Industrial      f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☒ Other (*specify*):    Debtor and his wife are the FORMER owners of the Subject Property. It was sold to moving party, Genova Capital, at a pre-petition foreclosure sale.

   e. ☒ The Debtor ☒ did ☐ did not list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.
   The deed was recorded on (*date*) _____ 6/12/13

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit _____ 3 .

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit _____ 2 .

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 2,500,000.00 | $ 0.00 ( ADD'L) | $ 2,500,000.00 |
| b. | Accrued interest: | $ 763,750.00 | $ 100,000.00 | $ 863,750.00 |
| c. | Late charges | $ 27,500.00 | $ 0.00 | $ 27,500.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ 13,427.72 | $ 53,284.74 | $ 66,712.46 |
| e. | Advances (property taxes, insurance): | $ 0.00 | $ 0.00 | $ 0.00 |
| f. | Less suspense account or partial balance paid: | $[ 8,333.33 ] | $[ 0.00 ] | $[ 8,333.33 ] |
| g. | TOTAL CLAIM as of (*date*): | $ 3,296.344.39 as of 5/18/20 | $ 153,284.74 | $ 3,449,629.13 |
| h. | ☒ Loan is all due and payable because it matured on (*date*) _____ 1/1/18 | | | plus daily interest at $1,250 per day after 8/1/2020 |

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

   a. Notice of default recorded on (*date*) _____ 1/13/20 or ☐ none recorded.

   b. Notice of sale recorded on (*date*) _____ 4/16/20 or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) _____ 5/13/20 or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☐ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☐ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☐ none recorded.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*      Page 7      **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $_____ LOAN IS MATURED; TOTAL DEBT DUE for the month of _____ 20___.

   b. Number of payments that have come due and were not made: _____. Total amount: $_____ LOAN IS MATURED; TOTAL DEBT DUE 3,449,629.13

   c. Future payments due by time of anticipated hearing date (*if applicable*): LOAN IS MATURED; TOTAL DEBT DUE

      An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

   d. The fair market value of the Property is $___17,900,000.00___, established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit ____ .

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit ____ .

      (3) ☒ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _4_ .

      (4) ☒ Other (*specify*): Despite this value of the Subject Property, Debtor does not own the Subject Property, as set forth in the points and authorities. However, even assuming Debtor owned the Subject Property, there would still be no equity, as set forth below.

   e. **Calculation of equity/equity cushion in Property:**

      Based upon ☐ a preliminary title report ☒ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Banc of California | $ 9,000,000.00 | $ 9,577,414.73 (POC 15-1) |
| 2nd deed of trust: | Genova Capital | $ 3,138,673.70 | $ 3,449,629.13 (POC 14-1) |
| 3rd deed of trust: | Helena Deeds | $ 1,350,000.00 | $ 2,586,030.74 (POC 12-1) |
| Judgment liens: | Semler Companies | $ 500,000.00 | $ 749,590.19 (POC 16-1) |
| Taxes: | Internal Revenue Service/FTB | $ 5,005,169.94 | $ 7,494,826.04 (POC 2-1) |
| Other: | Crowne Point of Malibu HOA | $ 2,768.40 | $ 6,251.60 (POC 10-1) |
| **TOTAL DEBT: $** | | | $23,863,742.43 |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _4 and by reference to_ claims register consists of:

      (1) ☐ Preliminary title report.

      (2) ☒ Relevant portions of the Debtor's schedules.

      (3) ☒ Other (*specify*): Portions of Debtor's Schedules, Petition and Proofs of Claim. Debtor's state and federal tax debts are liens on the Subject Property as a matter of law (assuming Debtor owned the Subject Property). See Rev. & Tax Code § 19221,Gov. Code § 7170, 26 U.S.C. § 6321.

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
      I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

   h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
      By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____0___.

      (even assuming Debtor owned the property, $-5,936,742.43)

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017        Page 8        **F 4001-1.RFS.RP.MOTION**

i. ☒  Estimated costs of sale: $_____930,000.00_____ (estimate based upon ___6___% of estimated gross sales
price)

j. ☐  The fair market value of the Property is declining because:


12. ☐  (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                                $
(*For details of type and amount, see Exhibit _____*)

e.  Attorneys' fees and costs:                                                           $
(*For details of type and amount, see Exhibit _____*)

f.  Less suspense account or partial paid balance:                                       $[                    ]

TOTAL POSTPETITION DELINQUENCY:                                                          $

g.  Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $_____ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
applied (if applicable):

$_____   received on (*date*) _____
$_____   received on (*date*) _____
$_____   received on (*date*) _____

i. ☐  The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 9                                    **F 4001-1.RFS.RP.MOTION**

13. ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as being single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:

        1. Case name: _____
           Chapter: _____ Case number: _____
           Date dismissed: _____ Date discharged: _____ Date filed: _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

        2. Case name: _____
           Chapter: _____ Case number: _____
           Date dismissed: _____ Date discharged: _____ Date filed: _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

        3. Case name: _____
           Chapter: _____ Case number: _____
           Date dismissed: _____ Date discharged: _____ Date filed: _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*           Page 10           **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

9/15/20
*Date*

*Joshua Hunter*
*Printed name*

*Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                Page 11                **F 4001-1.RFS.RP.MOTION**

# EXHIBIT 9

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Timothy M. Ryan, Bar No. 178059<br>THE RYAN FIRM<br>2603 Main Street, Suite 1225<br>Irvine, CA 92614<br>949-263-1800 (T)<br>949-872-2211 (F)<br><br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | **FILED & ENTERED**<br><br>**OCT 07 2020**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY rust          DEPUTY CLERK |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -*NORTHERN* DIVISION**

| In re:<br><br>BRIGHAM G. FIELD<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 9:20-bk-10622-DS<br><br>CHAPTER: 11<br><br>**ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)**<br><br>DATE: October 6, 2020<br>TIME: 11:30 AM<br>COURTROOM: 201<br>PLACE: 1415 State Street, Santa Barbara, CA 93101 |

| **Movant:** Genova Capital, Inc. |
|---|

1. The Motion was:     ☒ Opposed     ☐ Unopposed     ☐ Settled by stipulation

2. The Motion affects the following real property (Property):

   *Street address*:     <u>11802 Ellice Street</u>
   *Unit/suite number*:
   *City, state, zip code*:     <u>Malibu, CA 90265</u>

   Legal description or document recording number (including county of recording):

   11802 Ellice Street, Malibu, CA 90265

      Real property in the unincorporated area of the County of Ventura, State of California, described as follows:

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 1                    **F 4001-1.RFS.RP.ORDER**

PARCEL 1:
LOT 6 OF TRACT NO. 4483, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 146, PAGE 19 THROUGH 22 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPT ONE-EIGHTH OF MINERALS, OIL, PETROLEUM, ASPHALTUM, GAS, COAL AND OTHER
HYDROCARBON SUBSTANCES, AS RESERVED BY MARBLEHEAD LAND COMPANY, IN DEED RECORDED
NOVEMBER 27, 1940, IN BOOK 628, PAGE 87 OF OFFICIAL RECORDS.

PARCEL 2:
NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, ON AND OVER THE "COMMON
AREA" AS DEFINED IN THE DECLARATION FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS
AND EGRESS OF THE AMENITIES LOCATED THEREON. THE COMMON AREA IS FOR THE USE OF
OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION AND IS NOT FOR THE USE OF THE
GENERAL PUBLIC.
APN: 700-0-260-065

☐ See attached page.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 2                            **F 4001-1.RFS.RP.ORDER**

3. The Motion is granted under:

    a. ☐ 11 U.S.C. § 362(d)(1)

    b. ☒ 11 U.S.C. § 362(d)(2)

    c. ☐ 11 U.S.C. § 362(d)(3)

    d. ☐ 11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

        (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

        (2) ☐ Multiple bankruptcy cases affecting the Property.

        (3) ☐ The court ☐ makes ☐ does not make ☐ cannot make a finding that the Debtor was involved in this scheme.

        (4) If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

4. ☒ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

    a. ☒ Terminated as to the Debtor and the Debtor's bankruptcy estate.

    b. ☐ Modified or conditioned as set forth in Exhibit _____ to this order.

    c. ☐ Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6. ☐ Movant must not conduct a foreclosure sale of the Property before (*date*) _____.

7. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

8. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

10. ☐ The 14-day stay as provided in FRBP 4001(a)(3) is waived.

11. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*        Page 3        **F 4001-1.RFS.RP.ORDER**

13. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

14. ☐  A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

   (a) ☐  without further notice.

   (b) ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

15. ☐  This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

16. ☐  This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

   (a) ☐  without further notice.

   (b) ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☐  This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

   (a) ☐  without further notice.

   (b) ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

18. ☐  Other (*specify*):

###

Date: October 7, 2020

Deborah J. Saltzman
United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   Page 4                              **F 4001-1.RFS.RP.ORDER**

# EXHIBIT 10

| | |
|---|---|
| **From:** | Tim Ryan |
| **To:** | David Rosen |
| **Cc:** | Andrew Mase : Nasya Chou |
| **Subject:** | RE: foreclosure sale |
| **Date:** | Thursday, October 15, 2020 11:24:47 AM |
| **Attachments:** | image002.png |
| | image003.png |
| | image004.png |

David,

My firm is not the foreclosure trustee, and this information is being provided as a courtesy only.

I urge you to contact the foreclosure trustee to confirm the date and time.

My understanding is that the date for the continued sale is 10-21, and the time is 11:00 a.m.

Here is a link to the foreclosure sale crying entity's website – again, this is only being provided as a courtesy – and we urge you to contact the foreclosure trustee to confirm this information.

https://stox.quickbase.com/db/bk42uehek?a=dr&rid=21948&rl=undefined

Thanks,

Tim

Timothy M. Ryan
The Ryan Firm, A.P.C.
2603 Main Street Suite 1225
Irvine, CA 92614
Phone (949) 263-1800
Facsimile (949) 872-2211

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**From:** David Rosen <drosen@murphyrosen.com>
**Sent:** Thursday, October 15, 2020 8:08 AM
**To:** Tim Ryan <tryan@theryanfirm.com>
**Subject:** foreclosure sale

Tim,

Has Genova set a date for its foreclosure sale of 11802 Ellice?

**David Rosen**



<u>100 Wilshire Boulevard</u>
<u>Suite 1300</u>
<u>Santa Monica, CA 90401</u>

**310.899.3300**
<u>drosen@murphyrosen.com</u>

1

**VERIFICATION**

2        I, Brigham Field, an individual, have read the foregoing Complaint and know

3    the contents thereof.  The matters stated in the complaint are true of my own

4    knowledge, except as to matters that are stated on information and belief, and as to

5    those matters, I believe they are true based on such information and belief.

6        I declare under penalty of perjury under the laws of the State of California that

7    the foregoing is true and correct.

8        Execution on October _18th_, 2020, at _Henderson, Nevada._

9

10    _____

11            Brigham Field

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300, FACSIMILE 310-399-7201

PRINTED ON RECYCLED PAPER

**VERIFICATION**

I, Colette Pelissier, an individual, have read the foregoing Complaint and know the contents thereof. The matters stated in the complaint are true of my own knowledge, except as to matters that are stated on information and belief, and as to those matters, I believe they are true based on such information and belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Execution on October _18th_, 2020, at _Henderson_, _Nevada_.

_Colette Pelissier_

Colette Pelissier

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300 / FACSIMILE 310-399-7201

PRINTED ON RECYCLED PAPER